**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA**

CASE NO. 16-62555-CIV-GAYLES

**LUCIOUS BOYD**,

       Petitioner,

v.

**JULIE L. JONES**,
Secretary, Florida Department of Corrections,

       Respondent.
_____ /

## ORDER GRANTING EVIDENTIARY HEARING

THIS CAUSE came upon the Petitioner Lucious Boyd's Petition for Writ of Habeas Corpus by a Person in State Custody ("Petition") [ECF No. 1] and Petitioner's Motion to Stay Proceedings. [ECF No. 35].   The Petitioner resides on death row at the Union Correctional Institution in Raiford, Florida, following his conviction and death sentence imposed for the first degree murder, armed kidnapping and sexual battery of Dawnia Dacosta.  *Boyd v. State*, 910 So. 2d 167, 174 (Fla. 2005).  On August 29, 2017, the State filed its Response to Petition for Writ of Habeas Corpus. [ECF No. 28].  The Petitioner filed his Reply on October 9, 2017. [ECF No. 34]. The matter is fully briefed and properly before the Court.

## I.      FACTUAL BACKGROUND

The Florida Supreme Court gave the following recitation of the pertinent facts:

The evidence presented at trial revealed the following facts. In the early morning hours of December 5, 1998, Dawnia Dacosta's car ran out of gas while she was on her way to her home in Deerfield Beach, Florida, from a midnight church service. She had just exited from Interstate 95 (I–95) onto Hillsboro Beach Boulevard and pulled onto the shoulder. She then took a red gas can she kept in

her car, walked about a block east to a nearby Texaco gas station, and bought a gallon of gas. At approximately 2 a.m., during the time she was at the gas station, Dacosta spoke with two other customers, Lisa Bell and Johnnie Mae Harris. She asked Bell for a ride back to her car, but Bell had walked to the station and so could not give Dacosta a ride. Bell and Harris then watched Dacosta speak with a black male in a van in the station's parking lot. Harris asked the man if he was going to help Dacosta, and the man nodded, indicating yes. Bell later told the police that the van she saw was greenish-blue in color, while Harris said that she thought the van was burgundy. Though somewhat unsure about the van's color, Harris was certain that she saw the word "Hope" on its side. In a photo lineup and at trial, Harris identified the man she saw in the van that night as Lucious Boyd.

Boyd spent the evening of December 4 with Geneva Lewis, his girlfriend, at her mother's home. Boyd left the house around 10 or 11 p.m., and Lewis did not see him again until the morning of December 5, at around 9 or 10 a.m. Lewis testified that on December 4 and 5, Boyd was driving a green church van with writing on its side and that the van belonged to Reverend Frank Lloyd of the Hope Outreach Ministry Church, for whom Boyd performed occasional maintenance work.

Dacosta's family began searching for her after she did not return home on December 5. They found her car at an I–95 exit and began circulating fliers with Dacosta's photograph, indicating that she was missing, throughout the area. Bell and Harris saw the fliers, recognized Dacosta as the woman with the gas can at the Texaco station on December 5, and contacted the police with their information.

On December 7, Dacosta's body was discovered in an alley behind a warehouse on 42nd Street in Deerfield Beach. The body was wrapped in a shower curtain liner, a brown, flat bed sheet, and a yellow, flat bed sheet. A purple duffel bag and two large black trash bags covered her head. It was determined that she had been dead for between thirty-six and seventy-two hours.

At trial, it was stipulated that Dacosta died due to a penetrating head wound and that the bruising on her head was consistent with but not exclusive to the face plate of a reciprocating saw. Wounds to her chest, arms, and head were consistent with but not exclusive to a Torx brand torque screwdriver, and she had defensive wounds on her arms and hands. There was bruising to her vagina that was consistent with sexual intercourse, although the medical examiner could not determine whether the intercourse was consensual or nonconsensual. Dacosta had thirty-six superficial wounds on her chest, four on the right side of her head, and twelve on her right hand, some being consistent with defensive wounds and some being consistent with bite marks. One fatal wound to the head perforated the skull and penetrated Dacosta's brain.

On March 17, 1999, while Detectives Bukata and Kaminsky of the Broward County Sheriff's Office were investigating another crime unrelated to Dacosta's

death, they saw a green van in the Hope Outreach Ministry Church parking lot. The van had burgundy writing on it that read "Here's Hope." Bell would later identify the church's van as the same van she had seen on the morning of December 5 at the Texaco station. The detectives decided to investigate, and their inquiries as to the owner of the van led them to Reverend Lloyd. When the detectives questioned Lloyd about the location of the van on the night of December 4, Lloyd's secretary, who was present at the questioning, remarked that Lucious Boyd had driven the van on that weekend. On December 4, Boyd had taken Reverend Lloyd to pick up a rental car in the church's green 1994 Ford van. Reverend Lloyd further testified that he instructed Boyd to take the van back to the church but that Boyd did not return the van until Monday, December 7. Reverend Lloyd also stated that when he left the van with Boyd, various tools owned by the church, including a set of Torx brand screwdrivers and a reciprocating saw, were in the van, as well as a purple laundry bag that the pastor used to deliver his laundry to the cleaners. When Reverend Lloyd returned on December 15, he discovered that the screwdrivers, the saw, and the laundry bag were missing.

Boyd was arrested for Dacosta's murder on March 26, 1999. Seminal fluid taken from Dacosta's inner thigh matched the DNA profile of Boyd. Tests also did not eliminate Boyd as a match for a hair found on Dacosta's chest. A DNA profile consistent with Boyd's was found in material taken from under Dacosta's fingernails. In addition, fingerprints taken from the trash bag found around the victim's head matched fingerprints of Boyd's girlfriend, Geneva Lewis, and her son, Zeffrey Lewis. Tire marks on a sheet covering the victim's body were consistent with the tires on the church van, although trial expert Terrell Kingery, a senior crime laboratory analyst for the Orlando Regional Crime Laboratory, testified that he could not say for certain that the van's tires made the marks because over 1.5 million tires could have made the tracks on the sheet. Dr. Steven Rifkin, a private dentist and a forensic odontologist with the Broward County Medical Examiner's Office, testified that bite marks on Dacosta's arm were, within a reasonable degree of certainty, made by Boyd's teeth.

On April 1, Detective Bukata obtained a warrant to search the apartment of Boyd and Lewis, which was a block east of the Texaco station. Detective Bukata arrived at the apartment and told Lewis to leave with her children for a few days so that the officers could fully search the apartment. The investigators found blood at various locations throughout the apartment. Blood found on the underside of the carpet and on the armoire matched Dacosta's DNA profile. The shower curtain rings were unsnapped, and there was no liner to the shower curtain. Carpet fibers taken from the yellow sheet in which Dacosta's body was wrapped matched characteristics of carpet samples taken from Boyd's apartment.

Lewis had previously lived with Boyd at his apartment but had moved out in October of 1998. While living with Boyd, Lewis had purchased a queen-size bed, which she left at the apartment when she moved. Lewis and her three children

moved back in with Boyd in February of 1999 and discovered that the bed was no longer at Boyd's apartment. When she asked about it, Boyd told her that he had given it away but would get it back. When she inquired about it again, Boyd told her that she would not want that bed and that he would get her another one. Lewis also identified the flat bed sheets, one brown and one a "loud yellow," that were found around Dacosta's body as similar to ones she had owned while living at Boyd's apartment but that she no longer knew where they were or if they were at Boyd's apartment or at her mother's home.

*Boyd*, 910 So. 2d at 174-76.

## II.       PROCEDURAL *BACKGROUND*

A jury convicted the Petitioner of first-degree murder, sexual battery, and armed kidnapping. *Id.* at 177. At the penalty phase proceeding, the jury unanimously recommended that the Petitioner be sentenced to death. The trial court followed the jury's recommendation and imposed a death sentence, finding two aggravating factors, one statutory mitigating factor, and five nonstatutory mitigating factors. [ECF No. 30-2 at 148-57]. On direct appeal, the Petitioner raised fifteen claims of error.[1] *Id.* at 177, n.4. The Florida Supreme Court affirmed the convictions and death sentence. *Id.* at 194. On February 14, 2007, the Petitioner filed a Motion

---

[1] The Petitioner claimed that (1) the trial court erred in refusing to make an inquiry of jurors and in denying a mistrial upon hearing testimony that jurors had discussed extrajudicial information; (2) the trial court erred in overruling the defense's request for material withheld in violation of *Brady v. Maryland*, 373 U.S. 83, 83 S. Ct. 1194, 10 L.Ed.2d 215 (1963), denying the defense's motion to strike the testimony of the fingerprint examiner, and not ordering a hearing in compliance with *Richardson v. State*, 246 So. 2d 771 (Fla. 1971); (3) the State's evidence was insufficient to support the convictions for sexual battery, first-degree murder, and armed kidnapping; (4) the trial court erred in overruling the defense's objection to evidence that the Petitioner had received a citation for failure to pay a train fare, and in overruling the defense's objection to the use of the citation in the Petitioner's cross-examination; (5) the trial court erred in overruling the objections to the State's cross-examination of the Petitioner; (6) the trial court erred in failing to consider two experts' reports and testimony as to the Petitioner's competency; (7) the trial court erred in not ordering a competency hearing at sentencing; (8) the Petitioner's waiver of mitigation did not comply with *Koon v. Dugger*, 619 So. 2d 246 (Fla. 1993); (9) the trial court erred in giving great weight to the jury's death penalty recommendation; (10) the Petitioner's presentation of mitigation was invalid because the decision of whether to call witnesses and present evidence is for counsel to make; (11) the evidence does not support the HAC and murder in the course of a felony aggravating factors, and section 921.141, Florida Statutes (1997), does not allow a death sentence when there is only one aggravating circumstance; (12) the trial court erred in overruling the objection to the introduction of photographs of the victim during penalty proceedings; (13) the trial court erred in its assessment of mitigating circumstances; (14) the Petitioner's death sentence is not proportionate; and (15) the trial court failed to comply with *Muhammad v. State*, 782 So. 2d 343 (Fla. 2001), in sentencing the Petitioner.

to Vacate Judgment of Conviction and Sentences with Special Request for Leave to Amend, pursuant to Florida Rule of Criminal Procedure 3.851. *Boyd v. State*, 200 So. 3d 685 (Fla. 2015).[2] In a sixty-two page order, dated January 2, 2013, the circuit court denied the motion. [ECF No. 33-6 at 137]. The Petitioner appealed and also petitioned the Florida Supreme Court for a writ of habeas corpus where he raised two claims of ineffective assistance of appellate counsel. *Boyd,* 200 So. 3d at 706-08. The Florida Supreme court affirmed the denial of post-conviction relief and denied state habeas relief. *Id*. The instant federal petition for writ of habeas corpus has followed. The Petitioner raises six grounds for habeas relief as set forth below.[3]

### III.    CLAIMS AND APPLICABLE STANDARDS

The Petitioner's habeas corpus petition is governed by the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. 104-132, 110 Stat. 1214 (1996) (codified at various provisions in Title 28 of the U.S. Code), which significantly changed the standards of review that federal courts apply in habeas corpus proceedings. Under the AEDPA, if a claim was adjudicated on the merits in state court, habeas corpus relief can only be granted if the state court's adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United

---

[2] He raised the following claims: (1) denial of access to public records; (2) violation of his rights of due process and equal protection by failing to apply rule 3.851; (3) counsel was ineffective by failing to adequately conduct voir dire, challenge the admissibility of forensic evidence pursuant to *Frye v. United States*, 293 F. 1013 (D.C.Cir.1923), and utilize forensic experts; (4) juror misconduct; (5) denial of adversarial testing during the sentencing phase, including counsel's ineffectiveness for failure to move for a mistrial based on inflammatory and prejudicial comments; (6) denial of rights under *Ake v. Oklahoma*, 470 U.S. 68, 105 S. Ct. 1087, 84 L.Ed.2d 53 (1985); (7) denial of the right to interview jurors; (8) cumulative error; and (9) the unconstitutionality of Florida's lethal injection statute and procedure. On May 29, 2009, the Petitioner filed an amended motion to vacate his convictions and sentences, adding claims that newly discovered evidence undermined the reliance of the forensic evidence used to convict and sentence, and that the State committed a *Brady* violation. The Petitioner subsequently filed a second amended rule 3.851 motion on March 23, 2012.

[3] On April 21, 2017, the Petitioner sought leave to amend his Petition to include a *Hurst v. Florida*, 136 S. Ct. 616 (2016) claim. [ECF No. 18]. The Court denied the motion finding that "Petitioner did not timely raise a *Hurst* claim nor does he satisfy 28 U.S.C. § 2244(d)(1) ." [ECF No. 27 at 13].

States," or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d)(1)-(2). This is an "exacting standard." *Maharaj v. Sec'y, Dep't. of Corr.,* 432 F.3d 1292, 1308 (11th Cir. 2005). Pursuant to § 2254(d)(1), a state court decision is "contrary to" Supreme Court precedent if it "arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law" or "confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at [an] [opposite] result." *Williams v. Taylor,* 529 U.S. 362, 405 (2000). In other words, the "contrary to" prong means that "the state court's decision must be substantially different from the relevant precedent of [the Supreme] Court." *Id.*

With respect to the "unreasonable application" prong of § 2254(d)(1), which applies when a state court identifies the correct legal principle but purportedly applies it incorrectly to the facts before it, a federal habeas court "should ask whether the state court's application of clearly established federal law was objectively unreasonable." *Id.* at 409. *See also Wiggins v. Smith,* 539 U.S. 510, 520-21 (2003). Significantly, an "objectively unreasonable application of federal law is different from an incorrect application of federal law." *Woodford v. Visciotti,* 537 U.S. 19, 24-25 (2002). An "unreasonable application" can also occur if a state court "unreasonably extends, or unreasonably declines to extend, a legal principle from Supreme Court case law to a new context." *Putman v. Head,* 268 F.3d 1223, 1241 (11th Cir. 2001).

As noted above, § 2254(d)(2) provides an alternative avenue for relief. Habeas relief may be granted if the state court's determination of the facts was unreasonable. "A state court's determination of the facts, however, is entitled to deference" under § 2254(e)(1). *See Maharaj,* 432 F.3d at 1309. This means that a federal habeas court must presume that findings of fact by a state court are correct; and, a habeas petitioner must rebut that presumption by clear and

convincing evidence. *See Hunter v. Sec'y, Dep't. of Corr.,* 395 F.3d 1196, 1200 (11th Cir. 2005).

Finally, where a federal court would "deny relief under a de novo review standard, relief must be denied under the much narrower AEDPA standard." *Jefferson v. Fountain,* 382 F.3d 1286, 1295 n.5 (11th Cir. 2004). Even if the Court believed the Florida Supreme Court's determination to be an incorrect one, under AEDPA deference that alone is not enough to grant habeas relief; the Court must also find that "there is no possibility fair-minded jurists could disagree that the state court's decision conflicts with [United States Supreme Court] precedents." *Harrington v. Richter*, 131 S. Ct. 770, 783 (2011). In other words, as a condition for obtaining habeas corpus relief from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was *so lacking in justification* that there was an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement. *See id.* (emphasis added).

The Petitioner asserts six bases for federal habeas relief: (1) juror misconduct; (2) ineffective assistance of counsel during the penalty phase and on direct appeal; (3) ineffective assistance of counsel during the voir dire; (4) the state court's summary denial of his post-conviction claims violated due process; (5) ineffective assistance of counsel for failing to challenge the admissibility of certain inculpatory statements admitted at trial; and (6) trial court error and denial of motion for mistrial. The Petitioner seeks an evidentiary hearing "on each of his claims pursuant to 28 U.S.C. § 2254(e)(2)." [ECF No. 1 at 7]. The Court finds that the Petitioner's first claim warrants an evidentiary hearing. As there are important distinctions between the two jurors identified as having engaged in misconduct, the Court considered each

juror separately.[4]  The Court concludes that the Petitioner is only entitled to an evidentiary hearing as to Juror Tonja Striggles.

## IV.      RELEVANT FACTUAL HISTORY

### A.      Jury Trial

On December 3, 2001, jury selection in the case of the State of Florida versus Lucious Boyd began.  [ECF No. 30-4].  As part of voir dire, the trial court had each juror complete a questionnaire.  Question #11 of the court's questionnaire asked whether a potential juror had "any friends or family previously involved in the court system."  Jurors who answered "Yes" to Question #11 were questioned directly by the court and counsel.  Below are Juror Striggles' statements regarding her prior involvement in the criminal justice system.

> MS. STRIGGLES: My name is Tonja Striggles, S-t-r-i-g-g-l-e-s. I live in Fort Lauderdale.  I don't know how to answer this. I've been here for about 30 something years off and on. I'm from everywhere. I'm a military brat. I have no occupation right now. My last job was United States Army. I am very much single. Spouse, I have no spouse. I have no children. My hobbies are basketball, singing, playing the piano, going to church and I love gardening with my mom. And No to 10. Yes to 11. No 12. No 13. No 14.

> THE COURT: Friends or family that had involvement in the system?

> MS. STRIGGLES: Me.

> THE COURT: How long ago was that?

> MS. STRIGGLES: I was a juvenile.

> THE COURT: So your involvement with the system was as a juvenile?

---

[4] The second juror at issue is Kevin Rebstock.  The record reflects that Juror Rebstock "was arrested in Broward County in November 1991 and charged with misdemeanor solicitation of prostitution; however, the presiding court withheld adjudication."  *Boyd*, 200 So. 3d at 695.  Unlike Juror Striggles, Juror Rebstock was not convicted of any crime; in particular, he was not convicted of a felony.  Given critical factual differences between Juror Striggles and Juror Rebstock, the Court does not find that the Petitioner has met the standard for an evidentiary hearing on his claim regarding Juror Rebstock.  The Court will address the merits of the claim as to Juror Rebstock in its final order on the Petitioner's 28 U.S.C. §2254 federal habeas petition.

MS. STRIGGLES: Yes, sir.

THE COURT: Was that here in Broward County?

MS. STRIGGLES: Yes, sir.

THE COURT: At least a piece of

MS. STRIGGLES: Yes.

THE COURT: Do you feel you were treated fairly by the system back then?

MS. STRIGGLES: Yes, sir, guess.

THE COURT: You're entitled to say no if your feelings are no.

MS. STRIGGLES: I wouldn't know back then. I guess I was treated fairly.

THE COURT: You got over it, would that be fair on my part?

MS. STRIGGLES: Yes, sir.

THE COURT: We're glad you are here with us today.

[ECF No. 30-5 at 29-30]. As it turns out, this was not an accurate statement of her involvement with the criminal justice system and her criminal record in both Florida and Georgia.

## B. State Court Post-conviction Proceedings

During the post-conviction discovery process in state court, the Petitioner discovered that Juror Striggles was convicted twice of "false report of a bombing and subsequently violated probation and was charged with possession of a firearm by a convicted felon and carrying a concealed firearm." [ECF No. 32-12 at 29].[5] The Petitioner further learned that, "[d]uring her statement to police for the second arrest for false report of a bomb, Ms. Striggles indicated that she is suicidal and repeatedly makes such false threats in the hope of getting herself killed. She explained that she thought the police would respond to her phone call regarding a bomb, she

---

[5] The Florida Supreme Court found that Juror Striggles was convicted of *five* felonies and one misdemeanor. *See Boyd*, 200 So. 3d at 694. (emphasis added).

would run and the police would shoot her. These statements raise concerns for her mental stability and counsel should have been aware of this information." *Id*. at 17.  The Petitioner also discovered that Juror Striggles had been "evaluat[ed] for competency in 1983; that she was committed to a program for counseling; . . . that she had received a psychological evaluation for drugs and alcohol and that the results of that evaluation indicated a diagnosis of schizoid personality disorder; and that Striggles had paid someone to take her GED for her and that she was borderline mentally retarded."  [ECF No. 33-17 at 22].

### i.      Motion to Interview Jurors

Based on this newly discovered information, the Petitioner filed a Motion to Interview Jurors.  *See* [ECF No. 32-23 at 50].  The post-conviction court heard argument on the motion. At the hearing, the Petitioner argued that the non-disclosure of a felony conviction on the part of Juror Striggles was "structural error."  [ECF No. 33-12 at 122].  In support of his request to interview jurors, the Petitioner asserted that, absent a concession from the State as to the validity of the criminal convictions, the Petitioner would need to have Juror Striggles testify that she is, in fact, the same Tonja Shalonda Striggles who was convicted of the crimes alleged by the Petitioner.  Counsel for the Petitioner further argued that she would also need to interview Juror Striggles in order to prove prejudice as to certain of the Petitioner's other post-conviction claims.[6]

Inexplicably, the State countered that counsel "mischaracterized this by representing the jurors withheld evidence of their criminal histories, they did not. If you look at the transcript,

---

[6] At the hearing, counsel argued the Petitioner need not prove prejudice as to Claim I because having an unqualified convicted felon sitting on the jury is "structural error" and would require a new trial without hearing. [ECF No. 33-12 at 122].

they did not withhold evidence of their criminal histories."[7] [ECF No. 33-12 at 137]. Moreover, the State argued, this is a legal issue not a factual one and juror interviews are not required. *Id*. at 138. Ultimately, the post-conviction court denied the motion on two grounds.

First, the court found that the defendant failed to comply with the procedural requirements of Florida Rule of Criminal Procedure 3.575 which require a motion to interview jurors to be filed within 10 days after the rendition of the verdict *unless good cause is shown*.[8] [ECF No. 32-24 at 111] (emphasis added). The court did not make an express finding on whether good cause was established. Second, the court found that the defendant now knows the subject of the jurors' non-disclosure as it was obtained through the post-conviction discovery process, citing *Johnston v. State*, 63 So. 3d 730 (Fla. 2011).[9] *Id*. at 113. Eventually, the Petitioner's post-conviction claim of juror misconduct proceeded to the merits absent any testimony from the jurors at issue.[10] *See* [ECF No. 33-14 at 18-19].

---

[7] The Petitioner was made aware after the post-conviction court denied the Motion to Interview Jurors that it had done so without having reviewed the trial record; absent certain excerpts submitted by the State in support of their response. [ECF No. 33-13 at 52]. On November 9, 2009, the matter was reassigned from the trial judge to a new judge. [ECF No. 32-21 at 196]. At the June 5, 2012, hearing on the Petitioner's Rule 3.851 motion, the court advised that "I don't know whether or not I have it [the trial record]. I just could tell you for certain I did not read it." [ECF No. 33-13 at 52]. The Motion to Interview Jurors was denied on May 30, 2012. [ECF No. 32-24 at 110].

[8] The Order denying the Motion to Interview Jurors stated "Defendant claims that he learned about the issues that subject the legal verdict to challenge during the post-conviction investigation. This is indeed true regarding the criminal history of jurors Striggles and Rebstock." [ECF No. 22-24 at 112]. This is the solitary reference to anything resembling "good cause" and it was mentioned in passing and without consequence in the Order denying the Motion to Interview Jurors.

[9] The claim at issue in *Johnston* was ineffective assistance of counsel for failing to sufficiently question a juror who was arrested during the penalty phase of a capital trial.

[10] A post-conviction evidentiary hearing was held where trial counsel testified regarding whether they would have challenged the inclusion of the juror had they known their criminal background; however, the jurors at issue here were prohibited from testifying. [ECF No. 33-14 at 19]. Counsel for the Petitioner argued to the court "[t]he difficulty I have is I've been prohibited from calling the juror. From making any contact with the juror. And I have no other way to get this information in." *Id*.

## ii.     Rule 3.851 Proceedings

In his Motion to Vacate Conviction and Sentence, the Petitioner's fourth claim for relief was "evidence of juror misconduct establishes that the outcome of Mr. Boyd's trial was unreliable and violated his due process right to be tried by a fair and impartial jury…" [ECF No. 32-12 at 27].  The Petitioner argued that Juror Striggles was a convicted felon who was "possibly mentally unstable" and the fact that she "lied to remain in the jury pool is a structural, fundamental error.  Such error requires that Mr. Boyd be granted a new trial as a matter of law." *Id*. at 30.

In response, the State asserted that "[w]hile Striggles did have felony convictions and her civil rights were not restored until April 4, 2008, after Boyd's December 2001 jury selection and 2002 trial, relief is not required as her presence on the jury did not render Boyd's trial unfair." [ECF No. 33-6 at 71].  The State further contended that "Boyd did not and cannot carry his burden of proving that an 'actually biased' juror sat on his jury."  *Id*.  In addition to the substantive arguments, the State asserted that the claim was procedurally barred because it should have been raised on direct appeal.  *Id*. at 73.

While the parties agreed on little, one item not in dispute was the prior felony convictions of Juror Striggles.  The State conceded that Juror Striggles was the same Tonja Striggles convicted of five felonies in Florida.  The State did not concede the authenticity of the Georgia conviction, but the post-conviction court admitted a certified copy of the Georgia conviction and judgment over objection.  *See* [ECF No. 33-14 at 184].

After hearing, the post-conviction court denied relief.  [ECF No. 33-6 at 172].  The court first found that this claim was procedurally barred because "it could have and should have been raised on [direct] appeal." *Id*.  However, the court also determined that even if the claim was not

procedurally barred, the Petitioner failed to meet the three prong test of *De La Rosa v. Zequeira*, 659 So. 2d 239 (Fla. 1995) (materiality, concealment, and lack of diligence are the three prongs a defendant must satisfy when a juror fails to disclose prior litigation history). *Id.* at 173. Eventually, the court concluded that the Petitioner failed to show that the juror was "actually biased or prejudiced." *Id.* at 176. The Petitioner appealed.

### iii. Appeal to the Florida Supreme Court

On appeal, the Petitioner first argued that his claim was not procedurally barred. [ECF No. 33-17 at 34]. Then, the Petitioner argued that Juror Striggles' misconduct "was two-fold: first she concealed her status as a convicted felon; second she failed to disclose material facts and circumstances regarding her convictions, as well as the convictions themselves, which would affect her ability to serve on Mr. Boyd's jury." *Id.* at 35. The Petitioner asserted that because Juror Striggles was statutorily prohibited from jury service then "prejudice is presumed."[11] *Id.* The Petitioner contended that Juror Striggles' felony convictions demonstrate an "inherent bias" which disqualifies jurors. *Id.* at 38.

The State responded that this claim is "procedurally barred and alternately meritless." [ECF No. 33-17 at 136]. Even if the claim were not procedurally barred, the State argues that the Petitioner has failed to show "actual bias" or "materiality" under state law. *Id.* at 139. The State asserts that when considering the materiality prong of a three prong test devised by state law, the Petitioner cannot establish materiality because Juror Striggles' "last conviction was in 1989, some 12 years before Boyd's trial, there was no evidence she had legal problems since

---

[11] The Petitioner argued that "because convicted felons are prohibited from service pursuant to Fla. Stat. § 40.103 prejudice is presumed in a criminal case when a juror has failed to disclose such a conviction during voir dire" and argued if no *per se* violation occurred then "inherent bias" is presumed. [ECF No. 33-17 at 36]. However, in reply, the Petitioner argued "actual bias", in the alternative, as to Juror Striggles. [ECF No. 33-17 at 234-240].

then, and she had served in the U.S. Army." *Id*. at 143. The Florida Supreme Court affirmed the denial of post-conviction relief.

To begin, the Florida Supreme Court did not address the procedural bar found by the post-conviction court. The opinion was solely a merits determination. *See Boyd*, 200 So. 3d at 685. The Florida Supreme Court adopted certain factual findings of the post-conviction court:

> Juror Striggles' criminal history consisted of the following incidents: (1) making a bomb threat and committing extortion (August 1979); (2) making a threatening phone call (December 1980); (3) twice pleading guilty to reporting false bombings (August 1983 and October 1986), and violating the probation order associated with each conviction; (4) pleading guilty to the misdemeanor of contributing to the delinquency of a minor in Georgia (March 1986); and (5) pleading guilty to one count of possession of a firearm by a convicted felon and one count of carrying a concealed firearm (March 1988). According to the record, Striggles was about nineteen years old at the time of her first false-bombing reporting in August 1983, and twenty-four at the time of her last known adjudication in March 1988. Certified records indicate that Striggles' civil rights were restored on April 4, 2008—more than six years after she served on the jury of Boyd's 2002 trial. When asked by the trial court how long ago she was involved with the criminal justice system, Striggles responded that she was a juvenile. She did not otherwise apprise the court or counsel of her series of convictions as an adult (beginning in August 1983).

*Boyd v. State*, 200 So. 3d 685, 694–95 (Fla. 2015). These facts are not in dispute here.

As to the Petitioner's *per se* statutory prejudicial argument, the Florida Supreme Court rejected this argument finding that "we do not think that it is pragmatic to promulgate a *per se* rule that one's status as a convicted felon denotes inherent bias against a criminal defendant's legal interests." *Boyd*, 200 So.3d at 697. Rather, the Florida Supreme Court "h[eld]—as have many other appellate courts throughout this nation—that a criminal defendant is not entitled to relief under such atypical circumstances absent a showing, based on legally sufficient evidence, of actual juror bias against the defendant." *Boyd*, 200 So. 3d at 697.

The court then rejected the Petitioner's bias argument. The court applied an actual bias standard to the facts from voir dire and the post-conviction evidentiary hearing and determined:

In other words, a person's disqualification from jury service by statute does not necessarily implicate a violation of a criminal defendant's constitutional rights if that person somehow served as one of said defendant's jurors. Thus, the only relevant issue presently before this Court is whether there is legally sufficient evidence that either Juror Striggles or Juror Rebstock was actually biased against Boyd.

Under the "actual bias" standard announced by this Court in *Carratelli* [*v. State*, 961 So. 2d 312 (Fla. 2007)]:

> A juror is competent if he or she "can lay aside any bias or prejudice and render his [or her] verdict solely upon the evidence presented and the instructions on the law given to him [or her] by the court." *Lusk [v. State]*, 446 So.2d [1038,] 1041 [(Fla.1984)]. Therefore, actual bias means bias-in-fact that would prevent service as an impartial juror. *See United States v. Wood*, 299 U.S. 123, 133–34, 57 S. Ct. 177, 81 L.Ed. 78 (1936) . . . . Under the actual bias standard, the defendant must demonstrate that the juror in question was not impartial—i.e., that the juror was biased against the defendant, and the evidence of bias must be plain on the face of the record. *See Carratelli [v. State]*, 915 So. 2d [1256,] 1260 [(Fla. 4th DCA 2005) ] (citing *Jenkins [v. State]*, 824 So .2d [977,] 982 [ (Fla. 4th DCA 2002)) ]; *see also Patton v. Yount*, 467 U.S. 1025, 1038–40, 104 S. Ct. 2885, 81 L.Ed.2d 847 (1984).

*Carratelli*, 961 So. 2d at 324.

Here, Boyd has not alleged actual bias, nor has he pointed to any evidence in this record indicating that Juror Striggles or Juror Rebstock likely did not deliberate the question of his guilt fairly and impartially. In fact, the record is replete with evidence demonstrating facts that support the opposite conclusion. For instance, when asked during voir dire, Striggles informed the trial court that she was treated fairly by the juvenile system as a juvenile delinquent and that she, as previously noted, had gotten over whatever negative feelings she may have developed about that experience. Striggles also told the prosecutor during voir dire that she did not have a problem recommending a sentence of death where appropriate because she expected the State to be fair in the presentation of its case against Boyd. Further, Striggles was not part of the group of venire members that expressed moral, religious, or personal beliefs that would have prevented them from returning a verdict of guilty if the State satisfied its burden of proof. She, however, was part of the group that affirmatively agreed with the prosecutor's statement that the verdict reached should be one based solely upon the evidence presented, and not any juror's personal biases or prejudices. Because this record evidence gives no indication that either Juror Striggles or Juror Rebstock harbored any bias against him, we conclude that Boyd has not shown that he is entitled to a new trial.

*Boyd*, 200 So. 3d at 698.

### C.     The Instant 28 U.S.C. § 2254 Petition

In seeking federal habeas relief, the Petitioner argues that the "Florida Supreme Court has placed a nearly insurmountable burden on Petitioner in postconviction that other appellate jurisdictions do not, specifically that the actual bias must be shown on the face of the record … on the face of the trial record, not the entire trial and postconviction record." [ECF No. 1 at 25]. The Petitioner argues that this heightened burden violates procedural due process. *Id*.

Specifically, as to Claim I, the Petitioner alleges that Juror Striggles "failed to disclose critical criminal history information during voir dire despite being asked to disclose information regarding involvement with the criminal justice system." *Id*. The Petitioner argues that "[b]ecause the State of Florida extended to Petitioner the statutory right to a jury free of convicted felons, the constitutional requirement of notice and opportunity to be heard on the denial of that statutory right were also necessarily extended." *Id*. The Petitioner argues that "[j]uror misconduct affected the outcome of Petitioner's trial and violated his due process right to a fair and impartial jury." *Id*. at 37-38. Finally, the Petitioner concludes that "[a]ny hearing probing the honesty and partiality of a juror due to concealment of a material fact at trial must necessarily include an opportunity to question the offending juror." *Id*. at 26.

The State responds that the Florida Supreme Court's ruling is "*in conformity with federal precedent*, thus Defendant has not carried his burden under AEDPA." [ECF No. 28 at 39] (emphasis added). The State further asserts that the Florida Supreme Court's decision that a felon having served on a jury was not *per se* unconstitutional "*comports with federal law*." *Id*. at 41 (emphasis added). The State asserts that, *McDonough Power Equip. Corp. v. Greenwood*, 464 U.S. 548, 556 (1984), does not apply here because it "applies only in cases where the juror's failure to disclose information was deliberate, *not merely a mistake*." *Id*. at 42 (emphasis added).

The State contends that Juror Striggles' withholding of her five prior adult felony convictions and false reporting of juvenile involvement with the criminal justice system was a "misstatement of little significance" and the "[d]efendant has presented nothing to even insinuate that her misstatement was intentional." *Id*. at 44.

In reply, the Petitioner contends that nothing in the record supports a conclusion that Juror Striggles could *forget* or *mistake* her convictions for felony offenses, crimes of dishonesty, and adjudications of guilty. [ECF No. 34 at 9] (emphasis added). The Petitioner points out that "[i]n nearly all of the cases relied upon by the Florida Supreme Court the defendants had the benefit of evidentiary development during which the offending juror was interviewed and/or testified at a hearing." *Id*. at 4-5 (citations omitted). The Petitioner argues that "[n]o such opportunity has been afforded Mr. Boyd." *Id*. at 5. Having considered both parties arguments and with the benefit of review of the entire state court record, the Court concludes that the Petitioner should be granted a limited evidentiary hearing.

## V.    ANALYSIS

### A.    Federal Constitutional Error

The Court begins its § 2254 analysis with a brief clarification. To be clear, the Petitioner is seeking federal habeas relief. Thus, the Court may only grant relief for violations of the federal constitution. Here, there are several issues of state law inextricably intertwined within this claim. Specifically implicated is a violation of a state statute for having a convicted felon serve on the jury and a violation of a state rule of criminal procedure for denying a post-conviction evidentiary hearing in state court. However, it is this Court's limited role to review the Petitioner's claim for federal constitutional error. *See Estelle v. McGuire*, 502 U.S. 62, 67-68

(1991). "It is not the province of a federal habeas court to reexamine state-court determinations on issues of state law." *See id.*

However, these two state law issues are relevant to this federal habeas claim. The felony convictions which serve as the basis of a statutory violation may be relevant because they could establish, in part, actual bias if they served as a basis for a valid cause challenge. The denial of an evidentiary hearing in state court may be relevant because the testimony of the juror who provided false or misleading information may be required in order for the Petitioner to prove his claim or for the post-conviction court to conclude whether her answers were the product of mistake or misunderstanding. Indeed, without this testimony, the findings of the state court may be unreasonable. These state law concerns are woven in the analysis of the federal constitutional right to a fair trial, one free from a biased or impartial jury, and where the defendant is afforded due process.[12] But, they do not, standing alone, serve as the basis for federal habeas relief.

Above all, this Court must determine whether or not the determination of the Florida Supreme Court "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States," or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d)(1)-(2). If so, then the Court may hold an evidentiary hearing to determine if the Petitioner is entitled to federal habeas relief.

---

[12] The Florida Supreme Court summarized the claim as the Petitioner "assert[ed] that he is entitled to a new trial because two jurors failed to disclose information pertinent to his decision to retain them for jury service, thereby denying him a fair and impartial jury." *Boyd*, 200 So. 3d at 693-94. For exhaustion purposes, the "legal basis and specific factual foundation" are the same here as was in the state courts. *See Pope v. Sec'y, Dep't of Corr.*, 680 F.3d 1271, 1286 (11th Cir. 2012).

## B.       AEDPA Standard for Evidentiary Hearings

The Court's analysis to determine the Petitioner's entitlement to an evidentiary hearing must begin with *Cullen v. Pinholster*, 131 S. Ct. 1388, 1398–1400 (2011).  In *Cullen*, the United States Supreme Court held that federal courts must first determine whether a petitioner satisfies § 2254(d) before they may consider new evidence acquired during a federal hearing.  Therefore, the Court must look at the state court record to determine, *considering only the record before the state court*, if the state court's adjudication complies with the AEDPA.  It is only if the Court makes such a determination that an evidentiary hearing can be held in federal court.  Then a *de novo* review of the claim, including the newly presented evidence, can be conducted.  A "federal court must then resolve the claim without the deference AEDPA otherwise requires." *Panetti v. Quarterman,* 551 U.S. 930, 953-54 (2007) (citations omitted).

*Cullen* explicitly states that a district court cannot use evidence presented in federal court for the first time in order to make a reasonableness determination on the state court's decision where the state court did not have such evidence before it.  *Cullen*, 131 S. Ct. at 1399.  If the facts upon which the state court based its determination are found to be unreasonable in light of the record evidence, AEDPA deference no longer applies and a *de novo* review is the applicable standard.  *Adkins v. Warden*, 710 F.3d 1241, 1250 (11th Cir. 2013) (citing *McGahee v. Ala. Dep't of Corr.*, 560 F.3d 1252, 1266 (11th Cir. 2009)).   Should the Petitioner not show that the state court's factual determinations were unreasonable; he must show that the court's interpretation of clearly established federal law resulted in an unreasonable decision in order to satisfy *Cullen*.

## C. Clearly Established Federal Law Applicable to Juror Service

"[O]ur common-law heritage, our Constitution, and our experience in applying that Constitution have committed us irrevocably to the position that the criminal trial has one well-defined purpose --to provide a fair and reliable determination of guilt." *Estes v. Texas*, 381 U.S. 532, 565 (1965) (Warren, C.J., with whom Douglas and Goldberg, JJ., joined, concurring). "[T]he right to jury trial guarantees to the criminally accused a fair trial by a panel of impartial, 'indifferent' jurors.'" *Irvin v. Dowd*, 366 U.S. 717, 722 (1961). "[D]ue process alone has long demanded that, if a jury is to be provided the defendant, regardless of whether the Sixth Amendment requires it, the jury must stand impartial and indifferent to the extent commanded by the Sixth Amendment." *Morgan v. Illinois*, 504 U.S. 719, 727 (1992) (citations omitted). "Voir dire examination serves to protect that right by exposing possible biases, both known and unknown, on the part of potential jurors." *McDonough Power Equipment Inc. v. Greenwood*, 464 U.S. 548, 554 (1984). "[T]o obtain a new trial in such a situation, a party must first demonstrate that a juror failed to answer *honestly* a material question on voir dire, and then further show that a correct response would have provided a valid basis for a challenge for *cause*." *Id*. at 556 (emphasis added).

## D. Juror Misconduct

In *McDonough*, a juror failed to respond to a question regarding whether or not "any members of your immediate family sustained any severe injury . . . whether it was an accident at home, or on the farm or at work that resulted in any disability or prolonged pain and suffering?" *Id*. at 847. After judgment, it was brought to counsel's attention that the juror's son had been injured in the explosion of a truck tire. After briefing, the District Court granted a motion to approach the juror. However, before the court was made aware of the contact with the juror, it

denied the pending motion for new trial such that the substance of the conversation with the juror was never disclosed. On appeal, the Circuit Court decided the issue based on the recollections of counsel for each party as to the conversation with the juror. The Circuit Court assumed that the juror answered in good faith but found that good faith is irrelevant to the inquiry because a new trial is required to rectify the failure to disclose the information. *Id*. at 552. The Supreme Court reversed.

The Court found that because the juror considered his son's broken leg not an injury that resulted in disability or prolonged pain and suffering that his response given during the voir dire was "mistaken though honest" as opposed to untruthful. *Id*. at 555. Therefore, the Court held "that to obtain a new trial in such a situation, a party must first demonstrate that a juror failed to answer honestly a material question on voir dire, and then further show that a correct response would have provided a valid basis for a challenge for cause. The motives for concealing information may vary, but only those reasons that affect a juror's impartiality can truly be said to affect the fairness of a trial." *Id*. at 556.

This same standard is applicable to the Petitioner's claim. A review of the decision of the Florida Supreme Court shows that it considered the facts, cited *McDonough* and other lower federal courts,[13] and acknowledged an actual bias standard as the appropriate one. *See Boyd*, 200 So. 2d at 698. Two questions remain: (1) did the Florida Supreme Court make reasonable factual determinations and (2) did the court reasonably apply clearly established federal law to those facts. *See* 28 U.S.C. § 2254 (d)(1)-(2).

---

[13] The phrase "clearly established Federal law, as determined by the Supreme Court of the United States" refers only to the holdings, not dicta, of the Supreme Court. *Hawkins v. Alabama*, 318 F.3d 1302, 1309 (11th Cir.2003) (citation omitted); *see also, Williams v. Taylor*, 529 U.S. 362, 412 (2000). Decisions of lower federal courts, however, are instructive to the extent that they demonstrate how those courts applied Supreme Court holdings. *See Hawkins*, 318 F.3d at 1309.

In affirming the denial of relief, the Florida Supreme Court applied two key factual findings. First, that Juror Striggles was a convicted felon. Second, that the record was "replete" with evidence supporting the conclusion that Juror Striggles deliberated fairly and impartially. The first finding was reasonable based on the state court record; the second finding is unreasonable as a factual finding pursuant to 28 U.S.C. § 2254(d)(2).

E.      Factual Determinations Under 28 U.S.C. § 2254(d)(2)

Habeas corpus relief can only be granted if the state court's adjudication "resulted in a decision that was based on an unreasonable determination of the facts *in light of the evidence presented in the state court proceeding*." 28 U.S.C. § 2254(d)(2) (emphasis added). The Florida Supreme Court made certain factual determinations to support its conclusion that Juror Striggles did not "harbor[] any bias against" the Petitioner. *Boyd*, 200 So. 3d at 685. The source of information identified by the court as having been used to make these factual determinations was the very limited testimony[14] given during the voir dire by Juror Striggles. The court found the record "replete with evidence" demonstrating that she was fair and impartial based solely on her answers to the questions posed during voir dire. *Boyd*, 200 So. 3d at 698. Considering only the record before the state court, this determination was unreasonable.[15]

The record clearly shows, and the parties agree, that Juror Striggles was a convicted felon; indeed, she was convicted of five felonies and one misdemeanor as an adult. She omitted this fact during questioning in voir dire. Moreover, she *volunteered* that her involvement in the

---

[14] For the most part, the relevant voir dire consisted of Juror Striggles simply responding in either the affirmative or negative to questions posed to a larger group of jurors on certain topics. *See* [ECF No. 30-5 at 94, 107].

[15] The post-conviction court did not have the benefit of having observed Juror Striggles to assess her credibility during voir dire as two different judges presided over the Petitioner's trial and post-conviction proceedings. The trial judge was the Honorable Ronald Rothschild; the post-conviction judge was the Honorable Andrew L. Siegel. *Compare Boyd v. State*, 910 So.2d 167 (Fla. 2005) & *Boyd v. State*, 200 So.3d 685 (Fla. 2015).

criminal justice system was when she was a juvenile. This was false. Reasonable jurists would question her credibility. Although bias may not simply be assumed where a juror has been dishonest, "[a] juror's dishonesty is a strong indication of bias." *United States v. Carpa*, 271 F.3d 962, 967 (11th Cir. 2001) (citing *United States v. Perkins,* 748 F.2d 1519, 1532 (11th Cir. 1984)). The prudence of using her sworn testimony during voir dire as the sole basis for a factual determination of this magnitude is troubling.

Moreover, the state courts presumed that when Juror Striggles responded during voir dire that she had some involvement with the criminal justice system as a juvenile that she was referencing the adult criminal convictions at issue here. Perhaps, these convictions are not what she was referencing at all. Since she was never interviewed post-trial, it is possible that she meant an entirely different and separate juvenile involvement with the criminal justice system unknown to the Petitioner.[16] More importantly, the relevant factual determination for the Court pursuant to *McDonough* is not whether Juror Striggles "deliberated the question of guilt fairly and impartially" but whether she "failed to answer honestly a material question on voir dire." *See McDonough*, 464 U.S. at 554. To be sure, if Juror Striggles would have been called to explain the discrepancy between her testimony during voir dire and her actual criminal record these relevant questions may have been answered. To date, this information remains unknown.

The Petitioner has been sentenced to death by a jury that included a five-time convicted felon in direct violation of state law (relevant to a cause challenge). The state court's failure to hold a hearing, where the Petitioner could question the jurors, deprived him of the opportunity to garner the facts necessary to prove his state post-conviction and federal habeas corpus claim (relevant to the juror's intent when answering questions on voir dire). Neither the post-

---

[16] In Florida, information obtained regarding the assessment or treatment of a juvenile can be maintained as confidential and exempted from a public records search. *See generally* FLA. STAT. § 985.04.

conviction court nor the Florida Supreme Court had the relevant information before them when they made factual determinations in this case. Sitting as a federal habeas court, the Court must take the record as it was before the state court and determine whether the decision of the state court was reasonable based solely on the information that the state court was privy to at the time it rendered its decision. Having done so, the Court finds the factual determinations of the Florida Supreme Court to be unreasonable.

The Court understands that the AEDPA unreasonableness is a high standard to meet.

'If this standard is difficult to meet'—and it is—'that is because it was meant to be.' *Id.*, at ——, 131 S. Ct., at 786. We will not lightly conclude that a State's criminal justice system has experienced the 'extreme malfunctio[n]' for which federal habeas relief is the remedy. *Id.*, at ——, 131 S.Ct., at 786 (internal quotation marks omitted))."

*Burt v. Titlow*, 134 S. Ct. 10, 16 (2013).

Nonetheless, the Court finds that this is such a case where the state court's ruling was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011). The Petitioner has "establish[ed] that no fairminded jurist" would have reached the Florida court's conclusion. *See Richter*, 562 U.S. at 102–03; *Holsey v. Warden, Ga. Diagnostic Prison*, 694 F.3d 1230, 1257–58 (11th Cir. 2012). The Petitioner has satisfied 28 U.S.C. § 2254(d)(2).

F.      Application of Clearly Established Law 28 U.S.C. § 2254(d)(1)

Even if the Petitioner had not satisfied (d)(2), habeas corpus relief can be granted if the state court's adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States." While the Court found that factual determination that Juror Striggles was

a convicted felon to be reasonable, the Court likewise finds that when the state court applied that fact to clearly established federal law, its application was unreasonable.

In *Boyd*, the Florida Supreme Court's opinion is largely a primer on Florida law[17] and the law in multiple other jurisdictions (Oregon, Michigan,[18] Washington, Maryland, California, and federal appellate courts in the Eleventh Circuit,[19] Eighth Circuit,[20] D.C. Circuit,[21] and First Circuit) regarding the seating of jurors with biases. *Boyd*, 200 So. 3d at 694-98. While the opinion cites the clearly established federal law of *McDonough*, it analyzes the facts of the Petitioner's claim under the actual bias standard of *Carratelli v. State*, 961 So. 2d 312 (Fla. 2007). The actual bias standard of *Carratelli* does not comport with the actual bias standard of *McDonough* which is why the decision in *Boyd* resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law.

Clearly established federal law is not the law of the lower federal courts. Instead, in the habeas context, clearly established federal law "refers to the holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state court decision." *Putman v. Head*, 268 F.3d 1223, 1241 (11th Cir. 2001) (alteration in original) (quoting *Williams*, 529 U.S.

---

[17] *See Lebron v. State*, 135 So. 3d 1040 (Fla. 2014) (claim of ineffective assistance of counsel not juror misconduct); *Smithers v. State*, 18 So. 3d 460 (Fla. 2009) (claim of ineffective assistance of counsel not juror misconduct).

[18] Prior to making an actual prejudice determination, the court held an evidentiary hearing where the juror testified. *Michigan v. Miller*, 482 Mich. 540 (Mich. 2008).

[19] The trial court conducted an investigation, including the questioning of a juror, prior to making an actual bias determination. *United States v. Carpa*, 271 F.3d 962 (11th Cir. 2001).

[20] Once a motion for new trial was filed alleging statutory disqualification of a juror, the District Court held a hearing at which the juror testified. *United States v. Humphreys*, 982 F.2d 254 (8th Cir. 1992).

[21] The Court remanded the matter back to the District Court for an evidentiary hearing to determine if the concealment of the felony conviction resulted in actual bias. *United States v. Boney*, 977 F.2d 624 (D.D.C. 1992).

at 362, 120 S. Ct. 1495). Accordingly, the Court's § 2254(d)(1) analysis is limited to the holdings of United States Supreme Court precedent prior to the decision of the Florida Supreme Court in *Boyd*. A comparison of *McDonough* and *Carratelli* illustrates how the Petitioner's claim resulted in an unreasonable application of clearly established federal law.

To establish actual bias the Petitioner must show two things: (1) failure to answer a material question honestly during voir dire and (2) a correct response would have provided a valid basis for challenge for cause. *McDonough*, 464 U.S. at 555. In *McDonough*, the District Court held an evidentiary hearing to ascertain whether or not the error in the juror's answer was *mistaken or deliberate*. Conversely, in *Carratelli*, a case not about a Sixth Amendment violation for juror misconduct but for *ineffective assistance of trial counsel* in failing to preserve an objection to the denial of for-cause challenges to prospective jurors, the court held that the Petitioner must demonstrate that the juror was not impartial and the evidence of such bias must be *plain on the face of the record*. *Id*. at 324 (emphasis added). *Carratelli* expressly distinguished its holding regarding the actual bias standard in post-conviction from its prior holding in *Singer v. State*, 109 So. 2d 7, 22 (Fla. 1959)[22] which applied an "any reasonable doubt" about juror's impartiality standard on direct appeal. Although *Singer* has a factual scenario more akin to the instant claim, the Florida Supreme Court applied *Carratelli* to the

---

[22] We agree that while the *Singer* standard may be appropriate for direct appeals, it is not appropriate as a postconviction standard. Under *Strickland*, to demonstrate prejudice a defendant must show that there is a reasonable probability-one sufficient to undermine confidence in the outcome-that, but for counsel's unprofessional errors, the result of the proceeding would have been different. 466 U.S. at 694, 104 S. Ct. 2052. In the context of the denial of challenges for cause, such prejudice can be shown only where one who was actually biased against the defendant sat as a juror. We therefore hold that where a postconviction motion alleges that trial counsel was ineffective for failing to raise or preserve a cause challenge, the defendant must demonstrate that a juror was actually biased.

*Carratelli v. State*, 961 So. 2d 312, 324 (Fla. 2007).

Petitioner's case. Applying *Carratelli*, the court required the Petitioner to show on "the plain face of the record" that Juror Striggles did not deliberate fairly and impartially.

According to clearly established federal law, the Petitioner does not have to show that Juror Striggles did not deliberate fairly or impartially if he can show that she failed to answer a material voir dire question honestly and that her response would have been a valid basis for a cause challenge. *See McDonough*, 464 U.S. at 556. Regardless of the applicable actual bias standard, establishing Juror Striggles' veracity, or lack thereof, was a virtual impossibility absent a hearing. The Petitioner would be able to inquire of the juror and present any evidence to support his claim. The heightened burden, requiring proof on the plain face of the record, applied by the Florida Supreme Court is more than simply incorrect; it is unreasonable. "[T]he most important point is that an *unreasonable* application of federal law is different from an *incorrect* application of federal law." *Williams v. Taylor*, 529 U.S. 362, 410 (2000) (emphasis in original).

It was unreasonable for the Florida Supreme Court to apply *Carratelli* to the Petitioner's case. *Carratelli* "explain[s] the standard that courts should apply [in Florida] in deciding whether a trial counsel's failure to preserve a challenge to a potential juror constitutes ineffective assistance of counsel." *Carratelli*, 961 So. 2d at 315. *Carratelli* explicitly states that "this case requires us to address only the requirements for establishing prejudice under *Strickland* on a postconviction claim that counsel was ineffective for failing to preserve or raise a cause challenge before a jury is sworn." *Id*. at 327. *Carratelli* is entirely different standard than *McDonough*. It is understandable that a court would review an ineffective assistance of counsel claim based on the *face of the record*. Counsel cannot be deficient for failing to challenge or preserve a challenge to the seating of a juror with information not *in the record* at the time the

juror served.  *See Strickland v. Washington*, 466 U.S. 668 (1984).  However, it is axiomatic that juror misconduct revelations that come to light *after* trial logically cannot apply a "plain on the face of the record standard" absent a hearing to determine actual bias.  Particularly, in this case, where the only record with relevant information was the trial record and there were no juror interviews conducted after trial.  Simply, *Boyd* cannot be reconciled with *McDonough*.

### G.      Applying the McDonough Standard to the Petitioner's Case

Juror Striggles is a convicted felon.  *See Boyd,* 200 So. 3d at 694.  At the time of the Petitioner's trial, a felony conviction disqualified a person from jury service in Florida.  *See* FLA. STAT. § 40.013.  This undoubtedly would serve as "a valid basis for a challenge for cause."  *See McDonough*, 464 U.S. at 554. "It is undisputed that a question about prior felony convictions is material to jury service and that an honest answer from this juror would have provided a basis to challenge her for cause." *Jackson v. State of Alabama State Tenure Comm'n,* 405 F.3d 1276, 1288 (11th Cir. 2005) (citing *United States v. Carpa,* 271 F.3d 962, 967 n.5 (11th Cir. 2001) (per curiam) ("A pending or final felony conviction is a valid basis for challenge for cause.")).  Here, it is unknown if counsel would have asserted a cause challenge[23] but the question is not whether a cause challenge would have been made but if there was a *basis* for one to have been made.  *See McDonough*, 464 U.S. at 544.

Juror Striggles failed to honestly answer a material question on voir dire.  *Id*. at 555. Whether her answers were deliberately false or simply mistaken are questions that have yet to be answered but the question was material and the answer as given was not accurate.  While the

---

[23] At the post-conviction evidentiary hearing trial counsel testified that "[m]y position is in general that people who've had run-ins with the law or the prosecutor are not people who I need to worry about holding a grudge against the defendant." [ECF No. 33-14 at 48].  However, trial counsel also testified that had he known that Juror Striggles had not had her civil rights restored, it would have indicated that he "ought to do some voir dire." *Id*. at 47.

State of Florida has speculated why Juror Striggles' answers may have been "merely a mistake" or "misinformation" or "human error" or the product of a "faulty memory", the Court cannot presume to know her intentions. [ECF No. 28 at 42, 43]. It may be that Juror Striggles' answers were the product of a mistake rather than a purposeful falsehood but there is nothing in the record to indicate that.

When applying these facts to clearly established federal law, it was an unreasonable application to not find that Juror Striggles' five felony convictions would serve as the basis for a cause challenge; one element of a *McDonough* actual bias analysis. Further, because the court applied an incorrect bias standard and the juror was never questioned, there has been no factual analysis on whether Juror Striggles' answers during voir dire were dishonest or simply mistaken; a second element of *McDonough*.

## H.    28 U.S.C. § 2254(e)(2)

Further, the record shows that the Petitioner made a reasonable attempt to pursue an evidentiary hearing in state court and his request was refused. Further, such a hearing would assist in the resolution of his claim, so § 2254(e)(2) does not bar the Court from holding an evidentiary hearing. *See Breedlove v. Moore*, 279 F.3d 952, 960 (11th Cir. 2002); *Williams v. Taylor*, 529 U.S. 420, 430 (2000) ("By the terms of its opening clause the statute applies only to prisoners who have 'failed to develop the factual basis of a claim in State court proceedings.'") Moreover, the Court finds that the evidence that was proffered, if true, may entitle him to relief. While Court is unable to conclusively find that the Petitioner is entitled to habeas relief until he proves the allegations in his habeas petition, his contentions are such that he is entitled to a hearing to establish their truth. *See Pope v. Sec'y, Dep't. of Corr.*, 680 F.3d 1271, 1294 (11th Cir. 2012) ("However, we do not know the veracity of his claims because Pope has never been

afforded an opportunity to develop their factual basis in the crucible of an evidentiary hearing—nor, just as importantly, has the State had the opportunity to challenge them in an adversarial hearing.").

## VI.     CONCLUSION

Having found the decision of the Florida Supreme Court unreasonable as defined by 28 U.S.C. § 2254(d), the Court may undertake a *de novo* review of the claim.  *See McGahee v. Ala. Dep't of Corr.*, 560 F.3d 1252, 1266 (11th Cir.2009) ("Where we have determined that a state court decision is an unreasonable application of federal law under 28 U.S.C. § 2254(d), we are unconstrained by § 2254's deference and must undertake a de novo review of the record.").  At this stage of the proceedings, the proper remedy for any constitutional violation must begin with the Court holding a federal evidentiary hearing.  *See Smith v. Phillips*, 455 U.S. 209, 215 (1982) ("This Court has long held that the remedy for allegations of juror partiality is a hearing in which the defendant has an opportunity to prove actual bias").

As the Petitioner has established a prima facie case of juror misconduct, the Court finds that an evidentiary hearing is necessary in order to conduct an appropriate *McDonough* actual bias analysis.  *See Madison v. Comm., Ala. Dep't. of Corr.*, 761 F.3d 1240, 1249 (11th Cir. 2014).  "In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." *Schriro v. Landrigan*, 550 U.S. 465, 474 (2007) (citations omitted).  The Petitioner has established an entitlement to a federal evidentiary hearing, as he has shown that: (1) the federal claim was adjudicated on the merits in state court; (2) there is a determination based only on the state court record that the petitioner has cleared the § 2254(d) hurdle; and (3) the habeas petitioner tried, but was not given

the opportunity to develop the factual bases of the claim in state court within the meaning of 28 U.S.C. § 2254(e)(2).  *See Madison*, 761 F.3d at 1249.

Accordingly, after due consideration, it is

**ORDERED AND ADJUDGED** that Petitioner, Lucious Boyd's Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 [ECF No. 1] is **GRANTED**, in part, as to his request for an evidentiary hearing on Claim I, Juror Misconduct (Juror Striggles).  A status conference is scheduled for August 10, 2018, at 1:30 p.m. in Courtroom 11-1 at the Wilkie D. Ferguson, Jr. United States Courthouse.  The parties should be prepared to discuss available dates for setting the evidentiary hearing, potential witnesses, and the length of time required for Claim I, Juror Misconduct (Juror Striggles) to be heard.

Petitioner's Motion to Stay Proceedings [ECF No. 35] is **DENIED**.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 3rd day of July, 2018.

_____
DARRIN P. GAYLES
UNITED STATES DISTRICT JUDGE