UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

**LUCIOUS BOYD,**

      Petitioner,                             CASE NO. 16-cv-62555-DPG

v.
**JULIE JONES,
SECRETARY, FLORIDA DEP'T.
OF CORRECTIONS, et al.,**

      **Respondents.**
_____/

### PEITIONER'S POSTHEARING MEMORANDUM OF LAW IN SUPPORT OF PETITION FOR WRIT OF HABEAS CORPUS

**COMES NOW THE PETITIONER, LUCIOUS BOYD,** by and though the undersigned counsel, and herein submits this Memorandum of Law in support of federal habeas corpus relief. No claim or argument not explicitly addressed herein is waived or abandoned.

### BRIEF PROCEDURAL HISTORY

This memorandum of law in support of granting federal habeas corpus relief follows this Court's July 3, 2018 Order Granting Evidentiary Hearing on Ground I of his Petition for Writ of Habeas Corpus (DE 37). This Court's Order granted evidentiary development to undertake a *de novo* review of Mr. Boyd's claim of juror misconduct and to conduct an appropriate *McDonough* [*Power Equip. Corp. v. Greenwood*, 464 U.S. 548, 556 (1984)] bias analysis. (DE 37 at 30). Mr. Boyd now submits this memorandum of law as directed by the Court's *ore tenus* order at the close of the evidentiary hearing held on September 20, 2018 instructing counsel for both parties to submit simultaneous closing arguments within 45 days.

## ARGUMENT IN SUPPORT OF GROUND I

Clearly established federal law establishes that a juror's concealment of information that should have been disclosed entitles a defendant to a new trial where the juror's "failure to disclose the information denied the defendant of their right to an impartial jury." *McDonough Power Equip. Corp. v. Greenwood*, 464 U.S. 548, 549 (1984). In order to obtain relief and a new trial from juror concealment of background information two requirements must be met: 1) the moving party must demonstrate that a juror failed to answer a material question during *voir dire* honestly, and 2) that a correct response would have been a valid basis for a cause challenge. *Id.* at 556. Although bias may not be simply assumed where a juror has been dishonest, "[a] juror's dishonesty is strong indication of bias." *United States v. Carpa*, 271 F.3d 962, 967 (11th Cir. 2001) (citing *United States v. Perkins*, 748 F.2d 1519, 1532 (11th Cir. 1984)." Moreover, "[l]ying about a factor as important (and easy to verify through public records) as felon status raises at least the inference that the juror had an undue desire to participate in a specific case, perhaps because of partiality." *United States v. Boney*, 977 F.2d 624, 635 (D. C. Cir. 1992). A juror's failure to disclose their status as a convicted felon during *voir dire* examination raises substantial questions about a juror's possible bias. *Id.* at 634. That specter of bias is even greater when the information that goes undisclosed by the juror would lead to their disqualification. *Id.* at 635. Most significantly, in reviewing for potential bias courts have looked to whether the representation was deliberate as well as the nature of the juror's criminal history. *Froede v. Holland Ladder & Mfg, Co.*, 523 N.W. 849 (1994); *see also People v. Miller*, 759 N.W. 2d 85, 857 (2008).

It is undisputed that Juror Striggles is a convicted felon who at the time of Mr. Boyd's trial was disqualified from jury service in Florida. *See* Fla. Stat. § 40.013. In granting Mr. Boyd an evidentiary hearing on his claim of juror misconduct this Court recognized a felony conviction,

disqualifying a person from jury service in Florida, would serve as a valid basis for a cause challenge and acknowledged that "the question is not whether a cause challenge **would have** been made but if there was *a basis for one to have been made*." (DE 37 at 28)(emphasis added). Finding that the answers Juror Striggles gave during *voir dire* were material and not accurate, the Court further recognized the proper inquiry for *de novo* review centered not on whether, under the first element of *McDonough*, her answers during *voir dire* were deliberate or simply mistaken. (DE 37 at 29). Thus, the focus of this Court's review of the evidentiary hearing should rest on its determination as to the credibility of Juror Striggles' testimony about her reason for failing to disclose material information regarding her prior criminal history which statutorily disqualified her from juror service. Striggles' testimony at the evidentiary hearing and her answers provided during *voir dire* at trial, fail to support any finding other than her failure to disclose her extensive criminal history was deliberate.

Striggles testimony at the evidentiary hearing regarding her criminal record was misleading and untruthful. Her answers varied throughout and she was less than credible on a number of points. Despite her confusion at times during the evidentiary hearing and her lack of memory, the deliberateness of Striggles failure to disclose the information about her prior criminal history was demonstrated by Striggles' testimony at the evidentiary hearing. To be clear, Ms. Striggles was not confused when she was questioned during *voir dire* at Mr. Boyd's trial. Even after admitting she was "stoned" for most of the trial, it did not cause her to misunderstand the trial court's questions. (T. 38)[1]. Striggles plainly stated that she did not think the medications she was taking affected her answers to the *voir dire* questions. (T. 38).

---

[1] For reference purposes, citations to the transcript of the evidentiary hearing will be designated as "(T. )."

3

At the evidentiary hearing, Striggles was asked many times why she did not disclose her adult convictions during *voir dire* and while her responses varied, ultimately she "just didn't do it." When initially asked about her involvement with the criminal justice system, Striggles stated that it was "when I was kid" and that her involvement had begun when she was a teenager. (T. 13). When asked more directly, Striggles testified that she recalled being arrested for reporting a false bomb threat in 1979 when she was fifteen years old and accurately recalled she had made the false report because she "was trying to get out of school." (T. 14). Striggles likewise confirmed that she had also been arrested for making threatening phone calls in 1980. (T. 14). When asked about her conviction in 1983 for making another false bomb report, Striggles denied the conviction and testified she believed that by that time she was in prison because she had violated probation and been sentenced by the judge in her case to a two-year sentence at a women's correctional institute. (T. 14-15). Striggles then added, "Then I went to some prison out in God knows where and then I got out." (T. 15).  While Striggles stated that the prison sentence she received in 1988 "stood for her juvenile conviction," this is belied by the fact that she knew she went to a women's correctional facility and then years later an adult prison. In fact, Striggles' criminal court records reflect that Striggles was sentenced in 1983 to Stepping Stones, a working half-way house for ***women***. (DE 33-7 at 54, 58). Although Striggles could not recall at the evidentiary hearing, her criminal court records reflect there was no revocation of community control or violation of probation on her 1979 or 1980 juvenile cases, as they had been resolved. *Id*. In 1988, as the result of new charges, Striggles probation on the 1983 and intervening 1986 case was violated and she was sentenced to 30 months in Florida State Prison. (DE 33-7 at 156, 199; DE 33-8 at 19). Having been committed to a women's rehabilitation facility and later prison, it stretches logic that one actually believed that resulted from juvenile charges.

Striggles' testimony regarding her recollection of her prior felony convictions strains credulity. In *Jackson v. State of Alabama State Tenure Com'n*, the Eleventh Circuit addressed a factual scenario similar to that which is present here:

> In some circumstances a juror may have forgotten about a conviction or, more likely, not realized that her conviction was covered by the question. That is not a reasonable possibility here. This juror had been convicted in 1986 for murdering her child and sentenced to fifteen years in an Alabama prison. She served three years in prison and five years on probation. She could not have forgotten that…Having spent three years in prison for murder, there is no reasonable possibility that this juror could have honestly doubted that she was covered by the question."

405 F.3d 1276, 1289 (2005). Similar to the juror in *Jackson*, Striggles was sentenced to and served time in an adult correctional facility. Striggles testified at the hearing that she had once been incarcerated at an adult correctional facility for a "couple of months." (T. 20).[2] She offered that information at the evidentiary hearing on her own accord and without prompting. Questionably, however, when asked about her prior criminal history at trial during *voir dire* she failed to disclose that same information to the court and the attorneys. Given that she had spent time in prison, there is no reasonable basis to conclude that she honestly doubted that she was charged, convicted and sentenced as an adult and that those charges were likewise covered by the question posed by the trial court.

Striggles' statements that she did not understand the difference between her juvenile cases and her adult cases is further undermined by her contradictory explanation in this regard to the

---

[2] Strangely, she stated that her incarceration had ended when her "mom got [her] out." (T. 20). Asked what she meant by that statement Striggles confusingly testified that her mother "got her out" because she "wasn't involved with the gun part. It was—the gun wasn't mine. My sister ended up telling my mom the truth and my mom believed her because I [was] (sic) innocent the whole time. I got violated because of a gun that belonged to my sister." (T. 20). No further explanation was forthcoming from Striggles.

5

Court. When asked to explain what she meant by her statement that her felony convictions "stemmed from that or stood from that" (T. 39), Striggles replied:

> Stuff I did as a juvenile, I continued to do it because I wasn't getting in much trouble but then when they sentenced me to prison, I stopped.

Striggles' explanation indicates that she engaged in the same behaviors even as an adult, recognizing a point where she was no longer a juvenile, but did the same behaviors anyway because she was not getting in trouble. When asked during *voir dire* when she was involved with the criminal justice system, Striggles responded "As a juvenile." (DE 30-5 at 29) She did not respond that she was a kid or that she was young, as most who are unfamiliar with the system might. The trial court confirmed "[s]o your involvement with the system was as a juvenile?" *Id*. To which she affirmed. Yet, she did not reside in a women's half-way house as a juvenile and she was not sentenced to 30 months in prison as a juvenile; that simply is not something you are mistaken about. For Striggles to say that at the time of trial she did not understand the difference between her juvenile convictions and her adult felony convictions, is simply not credible. Also, the fact remains Striggles failed to accurately report ***any*** of her involvement with the criminal justice system during *voir dire* merely acquiescing to the trial court's questions and "guess[ing]" she had gotten over it. *Id*. at 29-30.

Following her review of the transcripts from *voir dire*, Striggles indicated that she likewise told the trial court that her experience had been as a juvenile. (T. 19). She further confirmed that she even recalled the trial court had clarified with her whether that involvement was in fact when she was only a juvenile. (T. 19). However, when next questioned as to her age during her adult felony convictions in 1983, 1986 and 1988, and asked whether there was a reason why she had not informed the trial court about the adult convictions, Striggles' flatly responded "No, probably

6

because I didn't think about." (T. 19). She agreed that she only felt it necessary to inform the court of her juvenile convictions and could not provide any reason as to why she did not disclose her adult felony convictions. (T. 19-20). Again, Striggles was not completely forthcoming about during *voir dire* about her juvenile convictions either.

  Striggles was also asked by this Court as to why she failed to disclose her prior criminal history. Twice Striggles answered "No reason. I just didn't" and "I just didn't bring it up." (T. 38-39). Although Striggles indicated to the Court that she did not "intentionally lie," when given the chance to explain that she perhaps misunderstood, she clearly replied "I just didn't bring it up." (T. 39). Although Striggles protested "Nobody brought it up. I didn't bring it up. They didn't bring it up, so I didn't say anything about it" (T. 40), "they" did bring it up when she was asked about her involvement with the criminal justice system. Furthermore, Striggles assertion that "they didn't bring it up" would indicate she was aware at the time of being questioned that there was information she was not disclosing. Striggles responses to the Court confirm that the reasoning behind her failure to disclose that information was not the result of her being mistaken about what she was being asked or uncertainty of what the question covered; it was because she ***chose not to***. That testimony establishes that Striggles failure to disclose the full extent of her criminal history was indisputably a deliberate decision on her behalf. Further, her deliberate misrepresentation of her criminal history without any countervailing evidence satisfactorily explaining her reasoning for the omissions supports the conclusion that it was knowing and intentional.

  Striggles' answers establish that her failure to disclose the full extent of her prior criminal history was not inadvertent or a scenario where she had been "mistaken but honest." *McDonough*, 464 U.S at 548. Her answers to this Court's questions were telling and strike directly at the heart of the credibility of her entire evidentiary hearing testimony. Striggles failed to disclose the extent

of her criminal history during *voir dire* despite understanding the question posed to her regarding her involvement with the criminal justice system. And rather than provide a reason for the non-disclosure, Striggles made inconsistent statements that her adult charges "stood for her juvenile conviction" (T. 16), that she "didn't think about it," but agreeing that she "only felt it necessary to talk about her juvenile convictions" (T. 19) or explaining "[n]o reason, I just didn't." (T. 38). Further, Striggles understood she was being asked at *voir dire* to provide "***any*** affiliations with the criminal justice system" (T. 38) yet, she claimed she didn't bring up her adult convictions because "they didn't bring it up." (T. 40). In a most telling moment, Striggles responded to the State that even if she had been aware that her felony convictions would relieve her of jury duty, she still would not have told the judge. (T. 40). The evidence demonstrating Striggles knew her prior criminal history was relevant at *voir dire*, in conjunction with the numerous inconsistencies in her testimony at the evidentiary hearing, all point to deliberate concealment. *See English v. Berghuis*, 900 F. 3d 804, 817-18 (6th Cir. 2018) (evidence that juror would have known that her past history of sexual abuse was relevant at *voir dire* and striking inconsistencies in her account at the evidentiary hearing with respect to the non-disclosure all point to deliberate concealment). Given her deliberate and intentional failure to disclose material information related to felony convictions which served as a valid basis for her disqualification for cause, her inclusion on Mr. Boyd's jury denied him his right to a fair and impartial jury under the Sixth Amendment. *See McDonough*, 464 U.S. at 556.

During cross examination the State also questioned Striggles as to whether she deliberated fairly, rendering an impartial verdict based on the facts presented at trial. (T. 35-36). The State asked Striggles whether her convictions in 1983, 1986, and 1988 had any effect on her ability to be fair and impartial. Striggles responded that it hadn't. (T. 36). While Striggles agreed with the

State that she deliberated fairly and impartially (T. 35-36), this is not a relevant consideration under clearly established law. Rather, Mr. Boyd does not have to show that Striggles did not deliberate fairly and impartially if he can show that she failed to answer a material question honestly and that her response would have been a valid basis for a cause challenge. *See* McDonough, 464 U.S. at 556. This Court acknowledged the same in its order granting the evidentiary hearing. (DE 37 at 27). The issue before this Court is not whether Striggles' prior criminal felony convictions prevented her from rendering an impartial verdict. Furthermore, "[a] finding of 'sincerity' is not the same as a finding that the juror was unbiased. A juror may not conceal material facts disqualifying h[er] simply because [s]he sincerely believes [s]he can be fair in spite of them." *English v. Berghuis*, 900 F.3d 804, 815–16 (6th Cir. 2018)(internal citations omitted); *see also In re Hitchings*, 6 Cal. 4th 97, 120, 860 P.2d 466, 479 (1993)(when a juror conceals material information on *voir dire*, "that information establish[es] substantial grounds for inferring that [the juror] was biased ... despite ... protestations to the contrary.").

   To the extent the State presented Dr. Ongley, one of the two trial attorneys for Mr. Boyd, his testimony as to strategy and whether he in fact would have raised a cause challenge to Striggles was irrelevant. To be certain, the question pursuant to *McDonough* is not whether a cause challenge would have been made, but whether there is a valid basis for a cause challenge. It has already been determined by this Court that a juror who is a convicted felon is disqualified from jury service, therefore a valid basis for a cause challenge exists.  As undersigned counsel noted in her objection to this Court prior to his testimony, Dr. Ongley's testimony was not relevant or material to the issue for which this Court had granted an evidentiary hearing. Nonetheless, Dr. Ongly confirmed that a convicted felon is statutorily disqualified from jury service and that status would be a valid

9

basis for cause. (T. 58). Dr. Ongley even believed that a defense attorney would "probably have an ethical obligation to notify the Court." (T. 65).

Yet another critical factor in considering Striggles' failure to disclose her prior criminal history is the nature of the crimes for which she was convicted. *See Froede v. Holland Ladder & Mfg. Co.*, 523 N.W. 2d 849 (1994) (Michigan Court of Appeals finding that defendant had established actual prejudice where juror at issue had deliberately misrepresented her criminal history and had been previously convicted of hiring an assassin to kill a drug informant who had agreed to testify against the juror's notorious ex-husband drug kingpin). Here, Striggles deliberate misrepresentation, considered along with the basis for her felony convictions, two of which were felonies for crimes of dishonesty for making false bomb reports, must be taken into account.[3] The juror disqualification statute itself specifically delineates crimes of dishonesty, mentioning by name bribery, forgery, perjury and larceny. *Fla. Stat. Ann*. § 40.013 (West). Additionally, this was not simply a one-time event that was quickly resolved. Striggles' history is quite extensive, involving undergoing psychological evaluation, being admitted to treatment programs and ultimately being sentenced to a prison term. Her criminal record spans almost ten years, and involves convictions in two states. Given the nature of her convictions, coupled with both the statutory prohibition on felons convicted of crimes of dishonesty from serving on a jury and the fact that she lied during *voir dire*, there is ample evidence in the record challenging Striggles capacity to render a fair and impartial verdict and follow the instructions and law as provided by the court. Striggles' repeated felony convictions for crimes of dishonesty raise serious and substantial questions about her credibility. Striggles' service on Petitioner's jury, in light of the fact of her statutory disqualification from service and the nature of her crimes of dishonesty,

---

[3] It should be noted that Striggles 1979 adjudication was also for false report of a bomb.

considered with the deliberateness of her concealment, establish bias and undermine confidence in the reliability of his capital trial.

This is also not an instance where the record can support a finding that Striggles believed to be acting in good faith because she believed her civil rights had been restored. Cf. *United States v. Humphreys*, 982 F.2d 254, 261 (8th Cir. 1992). The records presented in postconviction establish that Striggles did not have her civil rights restored until 2008, roughly 6 years after her jury service. Moreover, when asked at the evidentiary hearing about whether she had sought to have her civil rights restored at any time since her felony convictions, Striggles was able to promptly reply that she had not done so until 2008. (T. 33). Her testimony at the evidentiary hearing made it clear she was well aware of the impact which her felony convictions had on her loss of civil rights, the time period in which they had been lost, and the significance of having those rights restored. Thus, any suggestion that her failure to disclose her prior felony convictions could have been a result of a misunderstanding as to the status of her civil rights is refuted by the record.

Striggles testimony at the evidentiary hearing also establishes that she failed to disclose additional material information during *voir dire*. These untruthful answers matter for purposes of this Court's review not only because they strengthen the fact that her failure to disclose her entire criminal history was deliberate, but because they strike directly at the heart of her credibility. Significantly, Striggles initially revealed: "[F]irst of all, I should have never been picked. It's like I told them, my cousin is married to her brother."[4] (T. 11). But Striggles never told anyone during

---

[4] With respect to Striggles' testimony at the evidentiary hearing regarding her previously undisclosed familial relations to the Boyd family, along with other additional previously undisclosed information which she provided, Mr. Boyd does not raise arguments as to any independent and/or additional claim(s) for juror misconduct in this memorandum of law as it is not the issue upon which this Court granted evidentiary development. However, by not doing so Mr. Boyd is neither waiving nor abandoning any such claim(s).

11

*voir dire* that she had a familial connection to the Boyd family. Striggles also never told anyone that after the *voir dire* proceedings began, she spoke to her mother about the case, learning that Lucious Boyd was James Boyd's son and Striggles' cousin is married to Mr. Boyd's brother and they live in Atlanta. (T. 31).

Furthermore, when asked about her answers during *voir dire* regarding her prior knowledge of the case Striggles again gave answers which were both evasive and untruthful. Initially, Striggles testified that she believed her answers during *voir dire* would have been that she didn't know anything about the case because she had learned about it until she got to court. (T. 28). Yet, when confronted with the fact that the record from *voir dire* reflected she had indicated prior knowledge of the case, Striggles' responses changed. Striggles testified that she and her family knew of the Boyd family and talked about them back at the time of trial as well as even still currently. (T. 28). After reviewing the portion of the transcript where she had indicated her prior knowledge of the case, Striggles' stated, "Okay. So, I heard about it. I mean everybody heard about it. Even my neighbors heard about it. They found the body in Oakland Park. I didn't know it was related to the guy I was on the jury for." (T. 29-30). Striggles further testified that the crime had even occurred right by her house at the time. (T. 30). None of these facts were disclosed by Striggles when asked during *voir dire*. Further evidence of her dishonesty, substantiates her deliberateness in failing to honestly answer the question regarding her involvement with the criminal justice system.

During *voir dire* when asked about where she lived, Striggles indicated that despite living in Fort Lauderdale on and off for thirty years, she was a "military brat" and was "from everywhere." (DE 30-5 at 29). Initially, she also reiterated the same response at the evidentiary hearing. (T. 23). However, when asked about the various locations where she had actually lived

12

and how long she had resided there, she once again prevaricated and was evasive. Striggles testified that she had been to Paris, Philadelphia, Germany, Georgia, and New York. (T. 23-24). Pressed with the question of whether she had *actually lived* at any of those places, Striggles testified "Sometimes. Sometimes we just took vacation and he just took us on bases." (T. 26). When then asked if she understood the difference between going on vacation to somewhere as opposed to moving there to live, i.e. "being a military brat", Striggles testified, "I know the difference between vacation and being a military brat. I know the difference." (T. 26). Her answers during *voir dire* and at the evidentiary hearing are misleading and contradicted by her criminal court records. In fact, her father reported her residential history as having been born and raised in Fort Lauderdale, Florida and having resided at the same address with her parents at least until 1983. (DE 33-7 at 125) When asked about the contradiction, she agreed she resided at two addresses in Broward County (T. 25) and responded to the Court that she attended school exclusively in Broward County (T. 26). Her failure to acknowledge this point further reflects yet another instance in which her inability to be truthful, even in the face of acknowledging she understood the difference, raises serious doubts as to her credibility and as to her honesty during *voir dire*.

   The extent to which Striggles' testimony at the evidentiary hearing lacked credibility is most evident in one exchange between her and the State during cross examination:

> State: Ms. Striggles, if somebody had told you you don't have to serve on Lucious Boyd's case if all you have to do is tell the Court you have been convicted of a felony, would you tell the judge?
>
> Striggles: No

(T. 40). Striggles bizarre response to the State's question was prototypical of the abrupt and dismissive answers she provided throughout both *voir dire* and at the evidentiary hearing. Most significantly, it demonstrated that she would even testify to her own detriment if the alternative

13

meant having to truthfully answer to the Court she was a convicted felon. In sum, it was emblematic of the majority of her responses throughout the evidentiary hearing during which she repeatedly failed to provide any kind of straight answers.

Even in the most favorable light, Striggles testimony is baffling. Her answers were often contradictory, elusively vague, and at other times disengaged. Repeatedly when pressed for answers on particulars as to her criminal history, Striggles vacillated between being able to recall detailed specifics such as judges names, time periods, and charges, to other instances in which she not only denied having been convicted of an offense but also failed to remember whether she was either a juvenile or adult when they occurred. In certain instances, which she was provided evidence of dates and times delineating facts as to her age and the time period at which she was convicted of certain offenses, she merely responded "Ok" with nothing more. Her failure to either engage with the questions posed by defense counsel or acknowledge the facts established in the certified court records renders her testimony entirely incredible.

Above all, the purpose of this Court's granting evidentiary development was to determine one central question: whether Juror Striggles deliberately provided untruthful answers during *voir dire* about her prior criminal history of felony convictions. When juxtaposing her inconsistent answers provided during the evidentiary hearing with those given during *voir dire* at trial, her answers were untruthful and her failure to disclose the extent of her felony convictions was deliberate and intentional. Striggles made a deliberate choice to withhold her multiple adult felony convictions and minimizing her juvenile involvement with the criminal justice system upon questioning by the court. In short, she didn't disclose the information because, as she testified at the evidentiary hearing, she "just didn't do it." Given that fact, the only outcome which this Court can reach is that her deliberate failure to disclose information which resulted in the inclusion of a

statutorily disqualified felon juror on Mr. Boyd's jury was a structural error which biased Mr. Boyd and rendered his capital trial fundamentally unfair.

## CONCLUSION

For the above stated reasons, and the reasons set forth in Petitioner's Petition for Writ of Habeas Corpus and Reply to Respondents' Answer to Petition for Writ Of Habeas Corpus, the Petitioner, Lucious Boyd, moves the Court to issue a writ of habeas corpus granting relief in this case.

Respectfully submitted,

*/s/ Suzanne Keffer*
SUZANNE KEFFER
Chief Assistant CCRC-South
Florida Bar No. 0150177

*/s/ Scott Gavin*
SCOTT GAVIN
Staff Attorney
Florida Bar No. 0058651

Office of the Capital Collateral Regional Counsel-South
1 East Broward Boulevard, Suite 444
Fort Lauderdale, Florida 33301
Tel. (954) 713-1284
keffers@ccsr.state.fl.us
gavins@ccsr.state.fl.us

COUNSEL FOR MR. BOYD

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 5th day of November, 2018, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to counsel for the Respondent.

*/s/ Suzanne Keffer*
Suzanne Keffer
Counsel for Mr. Boyd