## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

LUCIOUS BOYD,

Petitioner,

v.                                CASE NO.  16-cv-62555-GAYLES

JULIE L. JONES., Secretary,
  Fla. Dept. of Corrections,

Respondent.

_____/

### RESPONDENT'S POST-HEARING MEMORANDUM

COMES NOW Respondent, Julie L. Jones, Secretary, Florida Department of Corrections, by and through counsel, and hereby files a Post-Hearing Memorandum on the September 20, 2018 hearing. Federal Habeas relief should be denied and as grounds states:

### PRELIMINARY STATEMENT

On October 28, 2016, Petitioner, Lucious Boyd ("Boyd"), filed his petition for writ of habeas corpus (DE#1) under section 28 U.S.C. §2254(d) as amended by the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"). There he challenged the decisions of the Florida Supreme Court in his direct appeal *Boyd v. State*, 910 So. 2d 167 (Fla. 2005) (*Boyd I*) and postconviction litigation. *Boyd v. State*, 200 So. 3d 685 (Fla. 2015)(*Boyd II*). In Ground I, Boyd asserted the mere presence of an unqualified juror, a convicted felon whose civil rights had not been restored, was a

1

denial of his constitutional right to a fair and impartial jury. Further, he asserted the Florida Supreme Court erred in discounting Juror Tonja Striggles' ("Striggles") misrepresentations regarding her criminal history, thus, entitling him to relief.  This Court found the Florida Supreme Court's opinion in *Boyd II* misapplied *McDonough* and that an evidentiary hearing was necessary for Boyd to attempt to carry his burden under *McDonough*. (DE#37 31)

Following the evidentiary hearing, Boyd is not entitled to habeas relief.  First, there is no United States Supreme Court case holding that a criminal defendant is entitled to a "felon-free" jury.  The rejection of the claim by the Florida Supreme Court is not contrary to or an unreasonable application of Supreme Court precedent as Boyd has failed to show he was not tried by a fair and impartial jury.  Second, even after evidentiary development, Boyd has not carried his burden under *McDonough;* he has not shown Striggles lied intentionally and that she was actually biased.

### THERE IS NO UNITED STATES SUPREME COURT CASE REQUIRING A DEFENDANT HAVE A FELON-FREE JURY

What a criminal defendant is entitled to under the United States Constitution is an impartial and unbiased jury. *See Morgan v. Illinois*, 504 U.S. 719, 727 (1992).  The mere fact that a convicted felon whose civil rights had not been restored sat on the jury does not establish a structural error necessitating federal habeas relief.  The Supreme Court has noted that "structural

2

errors" are limited to those stating:

> …that trigger automatic reversal because they undermine the fairness of a criminal proceeding as a whole. … Errors of this kind include denial of counsel of choice, denial of self-representation, denial of a public trial, and failure to convey to a jury that guilt must be proved beyond a reasonable doubt.

*United States v. Davila*, 569 U.S. 597, 610–11 (2013). A felon-free jury is not one of those enumerated structural errors.

No Supreme Court case has held that the seating of a convicted felon on the jury is a *per se* constitutional violation. *See Hanna v. Ishee*, 694 F.3d 596, 616 (6th Cir. 2012) (noting "the Sixth Amendment 'does not require an absolute bar on felon jurors,' because a juror's felon status is not necessarily indicative of a bias against the defendant (or, for that matter, against the prosecution)") (citation omitted); *United States v. Boney*, 977 F.2d 624, 633 (D.C. Cir. 1992) (holding that because convicted felons are not necessarily biased, a verdict is not invalidated simply because a convicted felon was on the jury); *United States v. Bishop*, 264 F.3d 535, 555 (5th Cir. 2001) ("once the trial is complete, a felon's serving as a juror is not an automatic basis for a new trial. The defendant must demonstrate that the juror was actually biased or fundamentally incompetent.")(*citing United States v. Soto-Silva*, 129 F.3d 340, 343 (5th Cir. 1997); *Ford v. United States*, 201 F.2d 300, 301 (5th Cir. 1953)[1] (holding "[w]here

---

[1] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.

3

the objection to a juror relates, not to actual prejudice or other fundamental incompetence, but to a statutory disqualification only, such disqualification is ordinarily waived by failure to assert it until after verdict, even though the facts which constitute the disqualification were not previously known to the defendants. The objection based upon the previous felony convictions comes too late after verdict, no actual bias or prejudice being shown.") The Fifth Circuit Court of Appeals has affirmed the district court's conclusion that "a juror disqualification 'defect is not fundamental as affecting the substantial rights of the accused and the verdict is not void for want of power to render it.'" *Hogue v. Scott*, 874 F.Supp. 1486, 1529 (N.D. Tex. 1994), *aff'd*, 131 F.3d 466 (5th Cir. 1997), *cert. denied*, 523 U.S. 1014 (1998) (*quoting Kohl v. Lehlback*, 160 U.S. 293, 302 (1895))

Review of habeas claims post-AEDPA is governed by *Williams v. Taylor*, 529 U.S. 362 (2000); *Williams v. Taylor*, 529 U.S. 420 (2000); *Lindh v. Murphy*, 521 U.S. 320 (1997). As provided by *Harrington v. Richter*, 131 S.Ct. 770, 786 (2011), when a state court's determination that the claim is without merit, federal habeas courts must deny habeas relief where fair-minded jurists could disagree on the correctness of the state court's decision. *See Parker v. Secretary for the Department of Corrections*, 331 F.3d

1981) (*en banc*), the Eleventh Circuit Court of Appeals adopted as binding precedent all of the decisions of the former Fifth Circuit

764, 768 (11th Cir. 2003).  Only where the state courts' rejection of the claim was contrary to, or an unreasonable application of, clearly established Supreme Court precedent may relief be granted. *Id. See Brown v. Payton*, 544 U.S. 133 (2005); *Rutherford v. Crosby*, 385 F.3d 1300, 1306-07 (11th Cir 2004) (recognizing "§2254(d)(1) imposes a 'highly deferential standard for evaluating state-court rulings,' … a standard 'which demands that state-court decisions be given the benefit of the doubt'"); *Haliburton v. Secretary, Florida Department of Corrections*, 342 F.3d 1233 (11th Cir. 2003) (noting habeas "review is greatly circumscribed and is highly deferential to the state courts" under AEDPA).

The state court trial record established that Striggles disclosed her juvenile contacts with the judicial system, some of which was adjudicated in Broward County and indicated she had gotten over those problems and had served time in the Army. (DE#31-5 Ex.A 113-14). Neither the trial court or parties inquired whether the juvenile contact was the extent of her criminal history.

In state postconviction, it was discovered Striggles had felony convictions between the ages of 19 and 24, however, she had no further contacts with the criminal judicial system for the 13 or so years before Boyd's trial.  The evidentiary hearing record reveals that Striggles was an African-American woman who had not had any criminal difficulties for some 13-18 years before Boyd's

---

handed down prior to the close of business on September 30, 1981.

trial. (DE#33-14 Ex.C PCR.31 5554, 5569).  Dr. Ongley, Boyd's counsel, admitted that several *State v. Slappy*, 522 So.2d 18 (Fla. 1988)/*State v. Neil*, 457 So.2d 481 (Fla. 1984) *Neil-Slappy* challenges were made when the State sought to strike African-American jurors. (DE#33-14 Ex.C PCR.31 5684-85). Mr. Laswell recognized that Striggles admitted to having a juvenile history, although her criminal history dated from the time she was in her 20's.  Following that, she served in the Army.  Mr. Laswell, Boyd's other counsel, reiterated that he did not question Striggles about her history because he believed she would be biased against the state based on that history.  This decision was based on his 40 years of legal experience. (DE#33-14 Ex.C PCR.31 5628-32).  In fact, Mr. Laswell admitted he would take his chances with a convicted felon on the jury. (DE#33-14 Ex.C PCR.31 5682).  While Mr. Laswell admitted that had he known of Striggles' felony record he would have questioned her, he noted she had "gotten over it" and would have kept her on the jury recognizing people change over time. (DE#33-15 Ex.C PCR.31 5633).

Over the State's hearsay objection, Striggles' case files from her Florida and Georgia charges were admitted into evidence. (DE#33-7 Ex.C PCR.24 4461- DE#33-8 Ex. C PCR.25 4668; Defense Ex 2-4). Mr. Laswell stated he was unaware of the materials contained in Striggles' case files requesting a mental health evaluation, possible suicidal thoughts, and possible intelligence deficiencies.

(DE#33-14 Ex.C PCR.31 5595-5602). However, no records were presented indicating any criminal troubles in Florida after 1988, 13 years before Boyd's trial. The Broward records indicated the Georgia charge was rejected as a basis for revoking probation as Striggles did not have counsel for that charge. (DE#33-7 Ex.C PCR.24 4461- DE#33-8 Ex.C PCR.25 4668). Even after being confronted with this new information, Mr. Laswell was unwilling to say he would have stricken Striggles. He saw no documents to change his mind about her. (DE#33-14 Ex.C PCR.31 5629, 5650)

As the Florida Supreme Court found, the *voir dire* record revealed Striggles averred she could be impartial, follow the instruction, and render a decision based on the trial evidence. Further, it found she was not under active prosecution, thus, there was no evidence of bias. *Boyd II*, 200 So.3d at 694-96. The Supreme Court has not held that the seating of a convicted felon on the jury is unconstitutional, thus, the state court's denial of relief is not contrary to Supreme Court precedent. *See Williams v. Taylor*, 529 U.S. at 407-12. The Eleventh Circuit discussed AEDPA:

> A state court's decision rises to the level of an unreasonable application of federal law only where the ruling is objectively unreasonable, not merely wrong; even clear error will not suffice. This standard is meant to be a difficult one to meet. AEDPA thus imposes a highly deferential standard for evaluating state-court rulings and demands the state-court decisions be given the benefit of the doubt. Pursuant to AEDPA, we must only grant relief where the state court's ruling contained an error so clear that fair-minded people could not disagree about it.

*Rimmer v. Secretary, Florida Department of Corrections*, 876 F.3d 1039, 1053 (11th Cir. 2017) (citations, quotations omitted).  Relief should not be granted.

## BOYD HAS FAILED TO CARRY HIS BURDEN UNDER *MCDONOUGH* FOLLOWING AN EVIDENTIARY HEARING

This Court granted an evidentiary hearing to allow Boyd to prove entitlement to relief under *McDonough Power Equip. Corp v. Greenwood*, 464 U.S. 548, 556 (1984) arising from Striggles' representation of her criminal history during voir dire.  Even assuming this issue necessitated an evidentiary hearing, Boyd has not met either prong of *McDonough* as Striggles was not shown to have lied intentionally; she was not aware until the federal hearing that her convictions after she turned 19 years old were different than her juvenile dispositions. Hence, Striggles was not untruthful intentionally about a material fact.  Also, it is clear from the record that Striggles was not actually biased.  Habeas relief should be denied.

During voir dire, Striggles was asked for friend/family "involvement in the system." (DE#31 Ex A ROA.6 113) During the federal evidentiary hearing, she admitted she had a criminal history and maintained it stemmed from her actions as a juvenile; she was not trying to hide her history. (DE#47 T 12, 33).[2]  In fact, Striggles told this Court that she did not know that her

---

[2] Referencing the transcript of the Federal evidentiary hearing.

1983-1988 cases were not juvenile cases. (DE#47 T 38)

It is also most telling that in her 1986 police interview, some 15 years before Boyd's trial and voir dire, Striggles told the detective that her criminal history went back to when she was a juvenile. (DE#47 T 34) That is how Striggles understood her contact with the criminal system, saw herself, and characterized her history. Striggles' understanding of the questions posed in *voir dire* regarding criminal history, "Friends or family that had involvement in the system?" (DE#31-5 Ex.A ROA.6 113), did not trigger in her the necessity of disclosing more than how she viewed her criminal history as that of a juvenile.

Boyd has not met the first prong of *McDonough,* namely that Striggles lied intentionally about a material fact, thus, this inquiry should end.  Striggles viewed her criminal history as all stemming from her juvenile dispositions; in her mind she was disclosing her history. Striggles told this Court that she did not lie intentionally to the state court or make any misstatements to the state court or parties; she just did not bring up that history and only now understands that the 1979-1980 cases are different from those committed in her 20's. (DE#47 38-39). Striggles' understanding of criminal law and her perception of herself and unique way of offering herself to others does not establish a constitutional infirmity here.  As this Court will recall from the record, Striggles was not asked to elaborate on her criminal

9

history, nor was she asked specific questions seeking a more complete disclosure. This Court should find Striggles did not prevaricate intentionally and that she did not have a nefarious reason to hide her criminal history.[3] Boyd has not carried his burden under *McDonough*.

During the instant hearing, Striggles admitted her first contact with the criminal system was in 1979 when she was 15-years old and called in a false bomb report because she wanted to get out of school. (DE#47 T 13-14). She also disclosed a 1980 juvenile disposition. Although her memory appeared somewhat faulty given her seeming confusion regarding when she had a Violation of Probation ("VOP") and before whom she was adjudicated, Striggles admitted to three adult convictions from 1983, 1986, and 1988. (DE#47 T 14-17). As this Court will note, it has been some 39 years since Striggles first contact with the justice system and 30 years since her last contact.

Some leeway should be given for some faulty recollections, however, clearly the juvenile contact made the greatest impression on her as she maintains that her criminal history stemmed from those juvenile problems. Further, while admitting to being given a 30-month sentence for possession of a gun by a felon for the 1988 charge, she explained she was released from prison after just a

---

[3] It would seem her criminal history and extended family relationships inured to Boyd's benefit and against the State.

10

couple of months as the gun was her sisters.[4] (DE#47 T 15-16, 18-20).  Such fact may have confused Striggles about the status of the case.  It must be clear to this Court that Striggles is not well versed in the law. The fact she received a 30-month sentence should not give this Court pause or a basis to believe Striggles would comprehend that the sentence meant a felony conviction especially given that she was released after just two months as she was innocent based on her sister's confession to possessing the gun.

Striggles' additional reason for not volunteering all of her convictions was she did not think of it.  More important here, she harbored no basis not to tell the trial judge and would have discussed all her cases had she been asked; "I would have told you all that." (DE#47 T 19, 32, 40). It was Striggles' testimony she did not recall being told she could talk to the judge/parties in private about her situation. She was not asked specific questions about her criminal history and only now realizes the 1983-1988 were not juvenile adjudications. (DE#47 T 38) (DE#47 T 23, 32). In response to this Court's inquiry as to why she did not mention her adult crimes, Striggles stated she "wasn't asked anything about it, so I didn't bring it up."[5] (DE#47 T36). She believed she understood the questions asked in *voir dire;* answered to the best of her

_____

[4] Each was handled by the Broward State Attorney and Public Defenders offices. (DE#47 T 34-35)
[5] Striggles did not feel that the medication she was taking affected her voir dire answers or her understanding of the quests posed. (DE#47 T38)

11

ability; and did not try to hide anything. (DE#47 41).  From the foregoing, this Court should find that Striggles did not lie intentionally about a material fact.  Although her understanding and discussion of her criminal history was not accurate legally, it has not been proven by Boyd that Striggles comprehended fully her criminal history and the import of the questions.  As noted by the Supreme Court, "jurors are not necessarily experts in English usage" *McDonough*, 464 U.S. at 555.  Such observation would be even more accurate when it comes to understanding the legal system. To invalidate Boyd's conviction and sentence based on Striggles' mistaken understanding of her criminal history, would be "to insist on something closer to perfection that our judicial system can be expected to give." *McDonough*, 464 U.S. at 555; *Ford*, 201 F.2d at 301 (differentiating "actual bias" from a statutory disqualification such as a prior felony conviction).  Striggles' role and answers in *voir dire* do not rise to the level of a *McDonough* error and do not support a constitutional violation here.

Should this Court reach the second prong of *McDonough*, Boyd has not shown that Striggles *voir dire* disclosures resulted in "actual bias."  Boyd may assert that his proof that Striggles was inaccurate in her recitation of her criminal history suffices to establish relief under the first prong of *McDonough* and no further inquiry is needed because a convicted felon whose civil rights have not been restored would establish a statutory disqualification and

12

an excusal for cause.  Boyd may point to *United States v. Carpa*, 271 F.3d 962 (11th Cir. 2001) and *Jackson v. State of Alabama State Tenure Com'n*, 405 F.3e 1276 (2005)[6] for support.  However, as noted above, the Supreme Court has not held that a verdict rendered by a jury containing a convicted felon demands relief[7] and *McDonough* does not permit the inquiry to end absent a showing the juror's impartiality was affected and affected the fairness of the trial.

*McDonough* provides that a party seeking a new trial based on a juror not disclosing information:

> A party must first demonstrate that a juror failed to answer honestly a material question on *voir dire*, and then further show that a correct response would have provided a valid basis for a challenge for cause. **The motives for concealing information may vary, but only those reasons that affect a juror's impartiality can truly be said to affect the fairness of a trial**.

---

[6] In *Carpa*, the district court concluded, that an *ex parte McDonough* investigation using hearsay evidence that the juror did not have a felony conviction was insufficient.  Those infirmities required the case was remanded for consideration of the significance of the juror's reduction in his sentence for a third-degree felony (adjudication withheld) and for consideration of dishonesty and bias.  *Capra*, 271 F.3d 967-68.  In *Jackson*, the Eleventh Circuit let stand a decision where the trial court granted a new trial merely because a juror was shown to be statutorily disqualified based on her murder conviction, three years in prison, five years probation, and failure to answer multiple and specific question designed to uncover the information. Jackson, 405 F.3d at 1287-88.

[7] *See Hanna v. Ishee*, 694 F.3d 596, 616 (6th Cir. 2012); *United States v. Boney*, 977 F.2d 624, 633 (D.C. Cir. 1992); *United States v. Bishop*, 264 F.3d 535, 555 (5th Cir. 2001)(*citing United States v. Soto-Silva*, 129 F.3d 340, 343 (5th Cir. 1997); *Ford v. United States*, 201 F.2d 300, 301 (5th Cir. 1953).

*McDonough*, 464 U.S. at 556 (emphasis added).  The Sixth Amendment guarantees a criminal defendant the right to an impartial jury, *Morgan v. Illinois*, 504 U.S. 719 (1992), but it does not bar convicted felons from jury service. *Boney*, 977 F.2d at 633; *Coleman v. Calderon*, 150 F.3d 1105, 1117 (9th Cir.1998), *rev'd on other grounds*, 525 U.S. 141.  As such a statutory disqualification "defect is not fundamental as affecting the substantial rights of the accused, and the verdict is not void for want of power to render it." *Kohl v. Lehlback*, 160 U.S. 293, 302, (1895). Defendants do not have the constitutional right to a jury free of convicted felons, and the fact one sits on a jury is not so fundamental as to affect the defendant's substantial rights *Id*.

    *McDonough*, as it seems to have been interpreted in *Carpa* and *Jackson*, does not stand for an automatic granting of a new trial upon the mere showing a juror withheld her criminal history.  Under *Kohl; Morgan;* and *McDonough*, the juror must be shown to have intentionally lied and to be actually biased to the point of affecting the fairness of the trial.  *See Coughlin v. Tailhook Ass'n*, 112 F.3d 1052,1059 (9th Cir. 1997)(agreeing with *Boney*, 977 F.2dat 624 and noting "participation of a felon-juror can be the basis for a new trial if the juror's participation in the case resulted in 'actual bias' to one or more parties and noting no evidence the prior conviction "created actual bias or prejudice affecting [juror's] ability to analyze this case in an impartial

fashion"); *Bank Atlantic v. Blythe Eastman Paine Webber, Inc*., 955 F.2d 1467, 1473 (11th Cir. 1992)(stating second prong of *McDonough,* i.e., that a correct response "would have provided a valid basis for a challenge for cause, requires a showing of actual bias."); *United States v. Perkins*, 748 F.2d 1519, 1532 (11th Cir. 1984) stating "actual bias" "may be shown by express admission or by proof of specific facts showing such a close connection to the circumstances at hand that bias must be presumed.")   Were the inquiry to stop before consideration and required proof of actual bias, Boyd would be obtaining relief not contemplated by the Supreme Court.  *McDonough* was not demanding a perfect trial, only one tried by an impartial trier of fact, meaning "a jury capable and willing to decide the case solely on the evidence before it." *McDonough*, 464 U.S. at 554.

It is clear from Striggles' testimony that she did not want to be on Boyd's jury.[8] (DE#47 T 32-33).  She was forthright when reporting she had heard of Boyd's case and his connection with the Boyd Funeral Home, meaning she heard about the crime (DE#47 T 28; DE#31 **Ex.A** ROA 58-59).  As she did at trial, Striggles averred that she based her decision on the evidence presented in court and did

---

[8] What is unclear is at what point she learned that her cousin was married to Boyd's brother.  While she claimed it was during trial (DE#47 T 30) and that she tried to tell the parties this, the record does not support that recollection.  Even so, that issue is unexhausted as a ground for relief and had it been preserved, such would inure to the defendant's benefit.

not know Boyd was in trouble previously. (T 28-31; ROA. 58-59). In fact, Striggles does not know the "Boyds" that well (DE#47 T 31). She recalled feeling she would be fair to Boyd and base her decision solely on the trial evidence. (DE#47 35).   Striggles told this Court that her decision in Boyd's case "was not based on anything, but what was facts[9] that was given to me" "in the courtroom. I know nothing else about it.  All I know is that what was given to me in the courtroom and me and the other jurors, we based our decision on that." (DE#47 T35-36). Striggles' explained she did not enter the courtroom with the intent to convict Boyd; again, she did not know Boyd.[10] (DE#47 T 36). Striggles' felony convictions from 1983-1988 have not been shown to have affected her ability to be fair and impartial.

Boyd has not shown that his counsel would have stricken Striggles or Striggles harbored any bias toward Boyd.  She met the

---

[9] This Court will recall that the evidence against Boyd was overwhelming, including that he was seen picking the victim up from a gas station, her DNA was in his home, his DNA was under her nails in a hair on her body, and in the semen found in and on her body, Boyd's bitemarks were left on the victim's body, Boyd discarded a new bed and bed linens similar to those in which the victim's body was wrapped, fiber from a rug in the home was found on the victim, he possessed the van used to pick up the victim and tools used to torture and kill her, and a tire tread similar to a tire on the church van was found at the scene where the victim's body was dumped. (DE#31 Ex.A-R.9 486, 519-22; 528; 538; 548-55, 561; R.10 682-85, 689-90, 700-02, 706, 711-13, 764-69; R.11 808-11, 813-18, 823-24; R 1555-56, 1564 1629-31, 1844-45; DE#33 Ex.C PCR.23 4410-11). *See Boyd I*, 910 So.2d at 174-77.

[10] If anything, the familial connection between Striggles and Boyd, like her criminal history, would be more detrimental to the State than to the defense.

criteria the defense was seeking for Boyd's jury and even knowing she was a convicted felon, defense counsel would have "taken his chances" with her on the panel (DE#33-7 Ex.C PCR.24 4461- DE#33-8 Ex.C PCR.25 4668; DE#33-14 Ex.C PCR.31 5554, 5569, 5682, 5628-33, 5640, 5684-85; DE#33-15 Ex.C PCR.31 5633; DE#47 T 50-53, 57). Furthermore, even had Striggles' status been disclosed, Dr. Ongely would not have moved to strike her without first investigating whether he had an ethical obligation to take any particular action. (DE#47 64-65). Furthermore, Boyd was actively engaged in *voir dire* and wanted Striggles on his jury. (DE#47 T 48-49; State's Exs. A-E)

With respect to whether the trial court would have had an obligation to *sua sponte* strike Striggles had the true nature of her criminal history been revealed requires this Court to assume Striggles would have been asked about her civil rights restoration and that she comprehended that her civil rights had been removed or had not been restored. Even had she been asked and answered correctly, relief is not required in this AEDPA case. First, as noted above and incorporated here, the Supreme Court has not held that the mere fact that a convicted felon has been seated on a criminal jury requires a new trial. Second, there is no express admission of "actual bias;" Striggles' impartiality has not been shown to have been affected to the point the fairness of Boyd's trial was affected. Granting relief here would be elevating a technical deficiency to a structural error, which is not required

17

by Supreme Court precedent. *See Davila*, 569 U.S. at 610–11 (identifying structural errors); *Ford*, 201 F.2d at 301 (differentiating "actual bias" from a statutory disqualification such as a prior felony conviction) *See also Hanna*, 694 F.3d at 616 (noting "Sixth Amendment 'does not require an absolute bar on felon jurors,' because a juror's felon status is not necessarily indicative of a bias against the defendant") (citation omitted); *Boney*, 977 F.2d at 633 (holding that because convicted felons are not necessarily biased, a verdict is not invalidated simply because a convicted felon was on the jury); *Bishop*, 264 F.3d at 555 ("once the trial is complete, a felon's serving as a juror is not an automatic basis for a new trial. The defendant must demonstrate that the juror was actually biased or fundamentally incompetent."); *Rogers v. McMullen*, 673 F.2d 1185, 1190 (11th Cir. 1982) (agreeing that merely being unqualified to sit as a juror does not render defendant's case constitutionally infirm).   As such, in this situation, more must be shown than that Striggles could have been stricken, proof of actual bias is required.

The evidence shows that Striggles' was an impartial juror and harbored no bias against Boyd.  This is established from the facts her criminal punishment was complete; she was not under any active prosecution or threat of a VOP, thus, she had no basis to favor the State in hopes of obtaining a reduced sentence.  She also served in the military and was granted an honorable discharge establishing

additional proof she overcame any effects from her juvenile and criminal history.  Merely because restoration of her civil rights occurred in 2008 does not prove she could not have obtained them following her military discharge or before Boyd's trial.[11]  Again, this technical defect should not be a basis for overturning a final criminal conviction.

This Court heard Striggles' testimony and the parties were permitted to cross examine her.  The record supports that she was not clear regarding the significance between the 1979-1980 convictions and the 1983-1988 convictions.  She answered to the best of her ability, would have explained further had she been asked, and made her decision based on the evidence presented at trial.  In *United States v. Perkins*, 748 F.2d 1519 (11th Cir. 1984), the connections the juror had to the defendant and the multiple areas where he chose to withhold information that would have shown his bias and lead to a strike were clear.  That is not the case here; Striggles merely was not cognizant of the significance of her criminal history which she saw as stemming from her juvenile acts and was not asked questions with the specificity of those in

---

[11] This Court may take judicial notice that the November 6, 2018 ballot contains a question addressed to changing the Florida Constitution to provide for immediate restoration of a felon's civil rights upon completion of her sentence with the exception of certain violent crimes not at issue here.  Had the amendment been in effect at the time of Boyd's trial, Striggles would have been qualified statutorily.

*Jackson*.[12]  Striggles' short-comings in disclosure should be excused in large part due to her misunderstandings and the lack of specificity in the initial *voir dire* inquiry. As *McDonough* provided, "only those reasons [for lying] that affect a juror's impartiality can truly be said to affect the fairness of a trial." Id at 464 U.S. at 556.  Striggles has not been shown to have lied intentionally and her reasons/misunderstanding for not making the appropriate disclosure does not undermine in the least her ability to be impartial and testimony that she overcame her criminal history and decided the case based solely on the trial evidence. Striggles history shows no commonality with Boyd's case nor does it suggest she could not set aside her history and decide the case on the evidence presented.  She has not been shown to be biased. Boyd's constitutional right to a fair and impartial jury has not been violated and habeas relief must be denied.

WHEREFORE Respondent requests respectfully that this Court DENY habeas relief.

---

[12] The *Jackson* jurors were asked: "Are there any of you who have ever been convicted of a state offense in state court, or a federal offense in federal court, of a crime punishable by imprisonment for more than one year, and who have not had your civil rights restored?" *Jackson*, 405 F.3d at 1288.  The *Jackson* juror was found to be intentionally untruthful given the number and specificity of the quests asked and the fact she had spent three years in prison followed by five years on probation for her 15 years sentence for murder of her child.  There was no reasonable possibility she could have forgotten that or misunderstood the questions.

Respectfully submitted,

PAMELA JO BONDI
Attorney General
__/S/ Leslie T. Campbell_____
Leslie T. Campbell
Assistant Attorney General
Florida Bar No. 0066631
1515 North Flagler Drive, Ste. 900
West Palm Beach, FL 33401
Office: (561) 837-5000
Facsimile: (561) 837-5108
Primary E-mail:
CapApp@myfloridalegal.com
Secondary E-mail:
Leslie.Campbell@myfloridalegal.com

Counsel for Respondent

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on November 5, 2018, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served on November 5, 2018, on Suzanne Keffer, Esq., Capital Collateral Regional Counsel - South, 100 East Broward Boulevard, Suite 444, Fort Lauderdale, FL 33301 either via transmissions of notices of electronic filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically notices of electronic filing.

_/S/ Leslie T. Campbell___
LESLIE T. CAMPBELL
Assistant Attorney General

21