## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO. 16-62555-CIV-GAYLES

**LUCIOUS BOYD**,

     Petitioner,

vs.

**MARK S. INCH**,[1]
Secretary, Florida Department of Corrections,

     Respondent.

_____ /

## ORDER ON PETITION FOR WRIT OF HABEAS CORPUS

THIS CAUSE came upon Petitioner Lucious Boyd's Petition for Writ of Habeas Corpus by a Person in State Custody ("Petition"). [ECF No. 1]. The Petitioner resides on death row at the Union Correctional Institution in Raiford, Florida, following his conviction and death sentence imposed for the first degree murder, armed kidnapping, and sexual battery of Dawnia Dacosta. *Boyd v. State*, 910 So. 2d 167, 174 (Fla. 2005). On August 29, 2017, the State filed its Response to Petition for Writ of Habeas Corpus. [ECF No. 28]. The Petitioner filed his reply on October 9, 2017. [ECF No. 34]. On July 3, 2018, the Court granted a limited evidentiary hearing as to Claim I, Juror Misconduct (Juror Tonja Striggles). [ECF No. 37]. On September 20, 2018, the Court held the hearing. Following the transcription of the testimony, both parties filed post-hearing memoranda. [ECF Nos. 48 & 49]. The matter is fully briefed and properly before the Court. After

---

[1] Julie L. Jones is no longer the Secretary of the Department of Corrections. Mark S. Inch is now the proper respondent in this proceeding. Inch should, therefore, "automatically" be substituted as a party under Federal Rule of Civil Procedure 25(d)(1). The Clerk is directed to docket and change the designation of the Respondent.

careful review of the record from the state courts and the testimony given at the September 20, 2018, evidentiary hearing, the Court finds as follows:

# I. FACTUAL BACKGROUND

The Florida Supreme Court gave the following recitation of the pertinent facts:

The evidence presented at trial revealed the following facts. In the early morning hours of December 5, 1998, Dawnia Dacosta's car ran out of gas while she was on her way to her home in Deerfield Beach, Florida, from a midnight church service. She had just exited from Interstate 95 (I–95) onto Hillsboro Beach Boulevard and pulled onto the shoulder. She then took a red gas can she kept in her car, walked about a block east to a nearby Texaco gas station, and bought a gallon of gas. At approximately 2 a.m., during the time she was at the gas station, Dacosta spoke with two other customers, Lisa Bell and Johnnie Mae Harris. She asked Bell for a ride back to her car, but Bell had walked to the station and so could not give Dacosta a ride. Bell and Harris then watched Dacosta speak with a black male in a van in the station's parking lot. Harris asked the man if he was going to help Dacosta, and the man nodded, indicating yes. Bell later told the police that the van she saw was greenish-blue in color, while Harris said that she thought the van was burgundy. Though somewhat unsure about the van's color, Harris was certain that she saw the word "Hope" on its side. In a photo lineup and at trial, Harris identified the man she saw in the van that night as Lucious Boyd.

Boyd spent the evening of December 4 with Geneva Lewis, his girlfriend, at her mother's home. Boyd left the house around 10 or 11 p.m., and Lewis did not see him again until the morning of December 5, at around 9 or 10 a.m. Lewis testified that on December 4 and 5, Boyd was driving a green church van with writing on its side and that the van belonged to Reverend Frank Lloyd of the Hope Outreach Ministry Church, for whom Boyd performed occasional maintenance work.

Dacosta's family began searching for her after she did not return home on December 5. They found her car at an I–95 exit and began circulating fliers with Dacosta's photograph, indicating that she was missing, throughout the area. Bell and Harris saw the fliers, recognized Dacosta as the woman with the gas can at the Texaco station on December 5, and contacted the police with their information.

On December 7, Dacosta's body was discovered in an alley behind a warehouse on 42nd Street in Deerfield Beach. The body was wrapped in a shower curtain liner, a brown, flat bed sheet, and a yellow, flat bed sheet. A purple duffel bag and two large black trash bags covered her head. It was determined that she had been dead for between thirty-six and seventy-two hours.

At trial, it was stipulated that Dacosta died due to a penetrating head wound and that the bruising on her head was consistent with but not exclusive to the face plate of a reciprocating saw. Wounds to her chest, arms, and head were consistent with but not exclusive to a Torx brand torque screwdriver, and she had defensive wounds on her arms and hands. There was bruising to her vagina that was consistent with sexual intercourse, although the medical examiner could not determine whether the intercourse was consensual or nonconsensual. Dacosta had thirty-six superficial wounds on her chest, four on the right side of her head, and twelve on her right hand, some being consistent with defensive wounds and some being consistent with bite marks. One fatal wound to the head perforated the skull and penetrated Dacosta's brain.

On March 17, 1999, while Detectives Bukata and Kaminsky of the Broward County Sheriff's Office were investigating another crime unrelated to Dacosta's death, they saw a green van in the Hope Outreach Ministry Church parking lot. The van had burgundy writing on it that read "Here's Hope." Bell would later identify the church's van as the same van she had seen on the morning of December 5 at the Texaco station. The detectives decided to investigate, and their inquiries as to the owner of the van led them to Reverend Lloyd. When the detectives questioned Lloyd about the location of the van on the night of December 4, Lloyd's secretary, who was present at the questioning, remarked that Lucious Boyd had driven the van on that weekend. On December 4, Boyd had taken Reverend Lloyd to pick up a rental car in the church's green 1994 Ford van. Reverend Lloyd further testified that he instructed Boyd to take the van back to the church but that Boyd did not return the van until Monday, December 7. Reverend Lloyd also stated that when he left the van with Boyd, various tools owned by the church, including a set of Torx brand screwdrivers and a reciprocating saw, were in the van, as well as a purple laundry bag that the pastor used to deliver his laundry to the cleaners. When Reverend Lloyd returned on December 15, he discovered that the screwdrivers, the saw, and the laundry bag were missing.

Boyd was arrested for Dacosta's murder on March 26, 1999. Seminal fluid taken from Dacosta's inner thigh matched the DNA profile of Boyd. Tests also did not eliminate Boyd as a match for a hair found on Dacosta's chest. A DNA profile consistent with Boyd's was found in material taken from under Dacosta's fingernails. In addition, fingerprints taken from the trash bag found around the victim's head matched fingerprints of Boyd's girlfriend, Geneva Lewis, and her son, Zeffrey Lewis. Tire marks on a sheet covering the victim's body were consistent with the tires on the church van, although trial expert Terrell Kingery, a senior crime laboratory analyst for the Orlando Regional Crime Laboratory, testified that he could not say for certain that the van's tires made the marks because over 1.5 million tires could have made the tracks on the sheet. Dr. Steven Rifkin, a private dentist and a forensic odontologist with the Broward County Medical Examiner's Office, testified that bite marks on Dacosta's arm were, within a reasonable degree of certainty, made by Boyd's teeth.

On April 1, Detective Bukata obtained a warrant to search the apartment of Boyd and Lewis, which was a block east of the Texaco station. Detective Bukata arrived at the apartment and told Lewis to leave with her children for a few days so that the officers could fully search the apartment. The investigators found blood at various locations throughout the apartment. Blood found on the underside of the carpet and on the armoire matched Dacosta's DNA profile. The shower curtain rings were unsnapped, and there was no liner to the shower curtain. Carpet fibers taken from the yellow sheet in which Dacosta's body was wrapped matched characteristics of carpet samples taken from Boyd's apartment.

Lewis had previously lived with Boyd at his apartment but had moved out in October of 1998. While living with Boyd, Lewis had purchased a queen-size bed, which she left at the apartment when she moved. Lewis and her three children moved back in with Boyd in February of 1999 and discovered that the bed was no longer at Boyd's apartment. When she asked about it, Boyd told her that he had given it away but would get it back. When she inquired about it again, Boyd told her that she would not want that bed and that he would get her another one. Lewis also identified the flat bed sheets, one brown and one a "loud yellow," that were found around Dacosta's body as similar to ones she had owned while living at Boyd's apartment but that she no longer knew where they were or if they were at Boyd's apartment or at her mother's home.

*Boyd*, 910 So. 2d at 174-76.

## II.     PROCEDURAL HISTORY

A jury convicted Boyd of first-degree murder, sexual battery, and armed kidnapping. *Id.* at 177. The trial court subsequently conducted a penalty phase proceeding, during which both sides presented evidence. The jury unanimously recommended that Boyd be sentenced to death. The trial court followed the jury's recommendation and imposed a death sentence, finding and weighing two aggravating factors, one statutory mitigating factor, and five nonstatutory mitigating factors. *State v. Boyd*, No. 99–5809 (Fla. 17th Cir. Ct. Order filed June 21, 2002) (sentencing order). The trial court also sentenced Boyd to fifteen years' imprisonment for the sexual battery and life imprisonment for the armed kidnapping charges. On direct appeal, the Petitioner raised

fifteen claims of error.[2]  *Boyd*, 910 So. 2d. at 177, n.4.  Ultimately, the Florida Supreme Court

affirmed the convictions and death sentence.  *Id*. at 194.  On February 14, 2007, the Petitioner filed

a Motion to Vacate Judgment of Conviction and Sentences with Special Request for Leave to

Amend, pursuant to Florida Rule of Criminal Procedure 3.851.  *Boyd v. State*, 200 So. 3d 685

(2015).  He raised the following claims: (1) denial of access to public records; (2) violation of his

rights of due process and equal protection by failing to apply rule 3.851; (3) counsel was ineffective

by failing to adequately conduct voir dire, challenge the admissibility of forensic evidence

pursuant to *Frye v. United States*, 293 F. 1013 (D.C. Cir. 1923), and utilize forensic experts; (4)

juror misconduct; (5) denial of adversarial testing during the sentencing phase, including counsel's

ineffectiveness for failure to move for a mistrial based on inflammatory and prejudicial comments;

(6) denial of rights under *Ake v. Oklahoma*, 470 U.S. 68, 105 S. Ct. 1087, 84 L. Ed. 2d 53 (1985);

(7) denial of the right to interview jurors; (8) cumulative error; and (9) the unconstitutionality of

Florida's lethal injection statute and procedure.  On May 29, 2009, the Petitioner filed an amended

motion to vacate his convictions and sentences, adding claims that newly discovered evidence

undermined the reliance of the forensic evidence used to convict and sentence, and that the State

---

[2] The Petitioner claimed that (1) the trial court erred in refusing to make an inquiry of jurors and in denying a mistrial upon hearing testimony that jurors had discussed extrajudicial information; (2) the trial court erred in overruling the defense's request for material withheld in violation of *Brady v. Maryland*, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963), denying the defense's motion to strike the testimony of the fingerprint examiner, and not ordering a hearing in compliance with *Richardson v. State*, 246 So. 2d 771 (Fla.1971); (3) the State's evidence was insufficient to support the convictions for sexual battery, first-degree murder, and armed kidnapping; (4) the trial court erred in overruling the defense's objection to evidence that the Petitioner had received a citation for failure to pay a train fare, and in overruling the defense's objection to the use of the citation in the Petitioner's cross-examination; (5) the trial court erred in overruling the objections to the State's cross-examination of the Petitioner; (6) the trial court erred in failing to consider two experts' reports and testimony as to the Petitioner's competency; (7) the trial court erred in not ordering a competency hearing at sentencing; (8) the Petitioner's waiver of mitigation did not comply with *Koon v. Dugger*, 619 So. 2d 246 (Fla.1993); (9) the trial court erred in giving great weight to the jury's death penalty recommendation; (10) the Petitioner's presentation of mitigation was invalid because the decision of whether to call witnesses and present evidence is for counsel to make; (11) the evidence does not support the HAC and murder in the course of a felony aggravating factors, and section 921.141, Florida Statutes (1997), does not allow a death sentence when there is only one aggravating circumstance; (12) the trial court erred in overruling the objection to the introduction of photographs of the victim during penalty proceedings; (13) the trial court erred in its assessment of mitigating circumstances; (14) the Petitioner's death sentence is not proportionate; and (15) the trial court failed to comply with *Muhammad v. State*, 782 So. 2d 343 (Fla.2001), in sentencing the Petitioner.

5

committed a *Brady* violation. The Petitioner subsequently filed a second amended rule 3.851 motion on March 23, 2012. On June 5, 2012, the circuit court granted an evidentiary hearing on some of the Petitioner's claims. On August 28 and 29, 2012, the circuit court held an evidentiary hearing on the Petitioner's claims of ineffective assistance of counsel for failure to conduct adequate voir dire concerning jurors' prior criminal histories, juror misconduct, and ineffective assistance of penalty phase counsel for failure to move for a mistrial based on inflammatory and prejudicial comments. In a sixty-two (62) page order, dated January 2, 2013, the circuit court denied these three claims and summarily denied the Petitioner's remaining claims. The Petitioner appealed the lower court's order denying post-conviction relief to the Florida Supreme Court and also petitioned the state court for a writ of habeas corpus where he raised two claims of ineffective assistance of appellate counsel. *Id*. at 706-08. The denial of the post-conviction motion was affirmed, and the state habeas petition was denied. The instant federal petition for writ of habeas corpus has followed. The Petitioner raises five grounds for habeas relief.[3]

### III.      APPLICABLE STANDARDS

The Petitioner's habeas corpus petition is governed by the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. 104-132, 110 Stat. 1214 (1996) (codified at various provisions in Title 28 of the U.S. Code), which significantly changed the standards of review that federal courts apply in habeas corpus proceedings. Under AEDPA, if a claim was adjudicated on the merits in state court, habeas corpus relief can only be granted if the state court's adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States," or

---

[3] On April 21, 2017, the Petitioner sought leave to amend his Petition to include a *Hurst v. Florida*, 136 S. Ct. 616 (2016) claim. [ECF No. 18]. The Court denied the motion finding that "Petitioner did not timely raise a *Hurst* claim nor does he satisfy 28 U.S.C. § 2244(d)(1)(D)." [ECF No. 27] at 13.

"resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d)(1)-(2). This is an "exacting standard." *Maharaj v. Sec'y, Dep't of Corr.,* 432 F.3d 1292, 1308 (11th Cir. 2005). Pursuant to § 2254(d)(1), a state court decision is "contrary to" Supreme Court precedent if it "arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law" or "confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at [an] [opposite] result." *Williams v. Taylor,* 529 U.S. 362, 405 (2000). In other words, the "contrary to" prong means that "the state court's decision must be substantially different from the relevant precedent of [the Supreme] Court." *Id.*

With respect to the "unreasonable application" prong of § 2254(d)(1), which applies when a state court identifies the correct legal principle but purportedly applies it incorrectly to the facts before it, a federal habeas court "should ask whether the state court's application of clearly established federal law was objectively unreasonable." *Id.* at 409. *See also Wiggins v. Smith,* 539 U.S. 510, 520-21 (2003). Significantly, an "objectively unreasonable application of federal law is different from an incorrect application of federal law." *Woodford v. Visciotti,* 537 U.S. 19, 24-25 (2002). An "unreasonable application" can also occur if a state court "unreasonably extends, or unreasonably declines to extend, a legal principle from Supreme Court case law to a new context." *Putman v. Head,* 268 F.3d 1223, 1241 (11th Cir. 2001).

As noted above, § 2254(d)(2) provides an alternative avenue for relief. Habeas relief may be granted if the state court's determination of the facts was unreasonable. "A state court's determination of the facts, however, is entitled to deference" under § 2254(e)(1). *See Maharaj,* 432 F.3d at 1309. This means that a federal habeas court must presume that findings of fact by a

state court are correct; and, a habeas petitioner must rebut that presumption by clear and convincing evidence. *See Hunter v. Sec'y, Dep't of Corr.,* 395 F.3d 1196, 1200 (11th Cir. 2005).

Finally, where a federal court would "deny relief under a *de novo* review standard, relief must be denied under the much narrower AEDPA standard." *Jefferson v. Fountain,* 382 F.3d 1286, 1295 n.5 (11th Cir. 2004). Even if the Court believed the Florida Supreme Court's determination was incorrect, under AEDPA deference that is insufficient to grant habeas relief; the Court must also find that "there is no possibility fair-minded jurists could disagree that the state court's decision conflicts with [United States Supreme Court] precedents." *Harrington v. Richter*, 131 S. Ct. 770, 783 (2011). In other words, as a condition for obtaining habeas corpus relief from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was *so lacking in justification* that there was an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement. *See id.* (emphasis added). Here, the Petitioner has failed to meet this difficult burden.

## IV.       STATUTE OF LIMITATIONS

AEDPA imposed a one-year limitations period for the filing of an application for relief under § 2254. Accordingly, 28 U.S.C. § 2244(d) provides:

(1)       A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of State court. The limitation period shall run from the latest of -

(A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

(2)     The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

In most cases, including the present case, the limitation period begins to run pursuant to §2244(d)(1)(A). The Eleventh Circuit has decided that the judgment becomes "final" within the meaning of § 2244(d)(1)(A) as follows: (1) "if the prisoner files a timely petition for certiorari, the judgment becomes 'final' on the date on which the Supreme Court issues a decision on the merits or denies certiorari, or (2) the judgment becomes 'final' on the date on which the defendant's time for filing such a petition expires." *Bond v. Moore*, 309 F.3d 770, 773-74 (11th Cir. 2002). The State has not argued that the petition is time-barred. *See* [ECF No. 28] at 20. The Court proceeds to the merits.

## V.     ANALYSIS

The Petitioner asserts six bases for federal habeas relief: (1) juror misconduct; (2) ineffective assistance of counsel during the penalty phase and on direct appeal; (3) ineffective assistance of counsel during the voir dire; (4) the state court's summary denial of his post-conviction claims violated due process; (5) ineffective assistance of counsel for failing to challenge the admissibility of certain inculpatory statements admitted at trial, and (6) trial court error and denial of motion for mistrial.

## A.    Claim I: Juror Misconduct

The Petitioner's first claim for federal habeas relief is that he was denied a fair and impartial jury due to juror misconduct.  [ECF No. 1] at 17.  Specifically, the Petitioner alleges that jurors, Tonja Shalonda Striggles and Kevin James Rebstock "failed to disclose critical criminal history information during *voir dire* despite being asked to disclose information regarding involvement with the criminal justice system."  *Id.*  Petitioner contends that he was denied a fair and impartial jury "because not only one juror was statutorily disqualified for service [Juror Striggles], but a second juror [Juror Rebstock] concealed material criminal history." *Id.*  However, the Petitioner asserts that "the constitutional right to a fair trial, one free from a biased or impartial jury, is not the only constitutional right implicated here." *Id.* at 23.  The Petitioner argues that "[b]ecause the State of Florida extended to Petitioner the statutory right to a jury free of convicted felons, the constitutional requirement of notice and opportunity to be heard on the denial of that statutory right were also necessarily extended." *Id.*  Further, the Petitioner contends that the prohibition in Florida from questioning jurors "creates a violation of due process." *Id.* at 27.  Before considering the legal arguments made by the parties, the Court considers the facts as they relate to each juror.

### 1.    Juror Tonja Striggles

On December 3, 2001, jury selection in the case of the State of Florida versus Lucious Boyd began.  [ECF No. 30-4].  As part of voir dire, the trial court had each juror complete a questionnaire.  Question #11 of the court's questionnaire asked whether a potential juror had "any friends or family previously involved in the court system."  Jurors who answered "Yes" to Question #11 were questioned directly by the court and counsel.  Below are Juror Striggles' statements regarding her prior involvement in the criminal justice system.

> MS. STRIGGLES: My name is Tonja Striggles, S-t-r-i-g-g-l-e-s. I live in Fort Lauderdale.  I don't know how to answer this. I've been here for about 30

something years off and on. I'm from everywhere. I'm a military brat. I have no occupation right now. My last job was United States Army. I am very much single. Spouse, I have no spouse. I have no children. My hobbies are basketball, singing, playing the piano, going to church and I love gardening with my mom. And No to 10. Yes to 11. No 12. No 13. No 14.

THE COURT: Friends or family that had involvement in the system?

MS. STRIGGLES: Me.

THE COURT: How long ago was that?

MS. STRIGGLES: I was a juvenile.

THE COURT: So, your involvement with the system was as a juvenile?

MS. STRIGGLES: Yes, sir.

THE COURT: Was that here in Broward County?

MS. STRIGGLES: Yes, sir.

THE COURT: At least a piece of

MS. STRIGGLES: Yes.

THE COURT: Do you feel you were treated fairly by the system back then?

MS. STRIGGLES: Yes, sir, guess.

THE COURT: You're entitled to say no if your feelings are no.

MS. STRIGGLES: I wouldn't know back then. I guess I was treated fairly.

THE COURT: You got over it, would that be fair on my part?

MS. STRIGGLES: Yes, sir.

THE COURT: We're glad you are here with us today.

[ECF No. 30-5 at 29-30]. As it turns out, this was not an accurate statement of her involvement with the criminal justice system and her criminal record in both Florida and Georgia.

### a.     State Court Post-Conviction Proceedings

During the post-conviction discovery process in state court, the Petitioner discovered that Juror Striggles was convicted twice of "false report of a bombing and subsequently violated probation and was charged with possession of a firearm by a convicted felon and carrying a concealed firearm." [ECF No. 32-12] at 29.[4]  The Petitioner further learned that, "[d]uring her statement to police for the second arrest for false report of a bomb, Ms. Striggles indicated that she is suicidal and repeatedly makes such false threats in the hope of getting herself killed. She explained that she thought the police would respond to her phone call regarding a bomb, she would run and the police would shoot her. These statements raise concerns for her mental stability and counsel should have been aware of this information." *Id*.  The Petitioner also discovered that Juror Striggles had been "evaluat[ed] for competency in 1983; that she was committed to a program for counseling; . . . that she had received a psychological evaluation for drugs and alcohol and that the results of that evaluation indicated a diagnosis of schizoid personality disorder; and that Striggles had paid someone to take her GED for her and that she was borderline mentally retarded."  [ECF No. 33-17] at 22.

### i.      Motion to Interview Jurors

Based on this newly discovered information, the Petitioner filed a Motion to Interview Jurors.  *See* [ECF No. 32-23] at 50.  The post-conviction court heard argument on the motion.  At the hearing, the Petitioner argued that the non-disclosure of a felony conviction on the part of Juror Striggles was "structural error."  [ECF No. 33-12] at 122.  In support of his request to interview jurors, the Petitioner asserted that, absent a concession from the State as to the validity of the criminal convictions, the Petitioner would need to have Juror Striggles testify that she is, in fact,

---

[4] The Florida Supreme Court found that Juror Striggles was convicted of *five* felonies and one misdemeanor. *See Boyd*, 200 So. 3d at 694. (emphasis added).

the same Tonja Shalonda Striggles who was convicted of the crimes alleged by the Petitioner. Counsel for the Petitioner further argued that she would also need to interview Juror Striggles in order to prove prejudice as to certain of the Petitioner's other post-conviction claims.[5]

Inexplicably, the State countered that counsel "mischaracterized this by representing the jurors withheld evidence of their criminal histories, they did not. If you look at the transcript, they did not withhold evidence of their criminal histories."[6] [ECF No. 33-12] at 137. Moreover, the State argued, this is a legal issue not a factual one and juror interviews are not required. *Id*. at 138. Ultimately, the post-conviction court denied the motion on two grounds.

First, the court found that the Petitioner failed to comply with the procedural requirements of Florida Rule of Criminal Procedure 3.575 which require a motion to interview jurors to be filed within 10 days after the rendition of the verdict *unless good cause is shown*.[7] [ECF No. 32-24] at 111 (emphasis added). The court did not make an express finding on whether good cause was established. Second, the court found that the defendant now knows the subject of the jurors' non-disclosure as it was obtained through the post-conviction discovery process, citing *Johnston v.*

---

[5] At the hearing, counsel argued the Petitioner need not prove prejudice as to Claim I because having an unqualified convicted felon sitting on the jury is "structural error" and would require a new trial without hearing. [ECF No. 33-12] at 122.

[6] The Petitioner was made aware after the post-conviction court denied the Motion to Interview Jurors that it had done so without having reviewed the trial record; absent certain excerpts submitted by the State in support of their response. [ECF No. 33-13] at 52. On November 9, 2009, the matter was reassigned from the trial judge to a new judge. [ECF No. 32-21] at 196. At the June 5, 2012, hearing on the Petitioner's Rule 3.851 motion, the court advised that "I don't know whether or not I have it [the trial record]. I just could tell you for certain I did not read it." [ECF No. 33-13] at 52. The Motion to Interview Jurors was denied on May 30, 2012. [ECF No. 32-24] at 110.

[7] The Order denying the Motion to Interview Jurors stated "Defendant claims that he learned about the issues that subject the legal verdict to challenge during the post-conviction investigation. This is indeed true regarding the criminal history of jurors Striggles and Rebstock." [ECF No. 22-24] at 112. This is the solitary reference to anything resembling "good cause" and it was mentioned in passing and without consequence in the Order denying the Motion to Interview Jurors.

*State*, 63 So. 3d 730 (Fla. 2011).[8] *Id.* at 113.  Eventually, the Petitioner's post-conviction claim of juror misconduct proceeded to the merits absent any testimony from the jurors at issue.[9]  *See* [ECF No. 33-14] at 18-19.

## ii.        Rule 3.851 Proceedings

In his initial Motion to Vacate Conviction and Sentence, the Petitioner's fourth claim for relief asserted that "evidence of juror misconduct establishes that the outcome of Mr. Boyd's trial was unreliable and violated his due process right to be tried by a fair and impartial jury…" [ECF No. 32-12] at 27.  The Petitioner argued that Juror Striggles was a convicted felon who was "possibly mentally unstable" and the fact that she "lied to remain in the jury pool is a structural, fundamental error.  Such error requires that Mr. Boyd be granted a new trial as a matter of law." *Id.* at 30.

In response, the State asserted that "[w]hile Striggles did have felony convictions and her civil rights were not restored until April 4, 2008, after Boyd's December 2001 jury selection and 2002 trial, relief is not required as her presence on the jury did not render Boyd's trial unfair." [ECF No. 33-6 at 71].  The State further contended that "Boyd did not and cannot carry his burden of proving that an 'actually biased' juror sat on his jury."  *Id.*  In addition to the substantive arguments, the State asserted that the claim was procedurally barred because it should have been raised on direct appeal.  *Id.* at 73.

---

[8]  The claim at issue in *Johnston* was ineffective assistance of counsel for failing to sufficiently question a juror who was arrested during the penalty phase of a capital trial.

[9]  A post-conviction evidentiary hearing was held where the Petitioner's trial counsel testified regarding whether the defense would have challenged the inclusion of jurors had they known their criminal backgrounds; however, the jurors at issue here were prohibited from testifying.  [ECF No. 33-14] at 19. Post-conviction counsel argued to the court "[t]he difficulty I have is I've been prohibited from calling the juror. From making any contact with the juror. And I have no other way to get this information in." *Id.*

While the parties agreed on little, one item not in dispute was the prior felony convictions of Juror Striggles. The State conceded that Juror Striggles was the same Tonja Striggles convicted of five felonies in Florida. The State did not concede the authenticity of the Georgia conviction, but the post-conviction court admitted a certified copy of the Georgia conviction and judgment over objection. *See* [ECF No. 33-14] at 184.

After hearing, the post-conviction court denied relief. [ECF No. 33-6] at 172. The court first found that this claim was procedurally barred because "it could have and should have been raised on [direct] appeal." *Id.* However, the court also determined that even if the claim was not procedurally barred, the Petitioner failed to meet the three-prong test of *De La Rosa v. Zequeira*, 659 So. 2d 239 (Fla. 1995) (materiality, concealment, and lack of diligence are the three prongs a defendant must satisfy when a juror fails to disclose prior litigation history). *Id.* at 173. Eventually, the court concluded that the Petitioner failed to show that the juror was "actually biased or prejudiced." *Id.* at 176. The Petitioner appealed.

### iii. <u>Appeal to the Florida Supreme Court</u>

On appeal, the Petitioner first argued that his claim was not procedurally barred. [ECF No. 33-17] at 34. Then, the Petitioner argued that Juror Striggles' misconduct "was two-fold: first she concealed her status as a convicted felon; second, she failed to disclose material facts and circumstances regarding her convictions, as well as the convictions themselves, which would affect her ability to serve on Mr. Boyd's jury." *Id.* at 35. The Petitioner asserted that because Juror Striggles was statutorily prohibited from jury service then "prejudice is presumed."[10] *Id.*

---

[10] The Petitioner argued that "because convicted felons are prohibited from service pursuant to Fla. Stat. § 40.103 prejudice is presumed in a criminal case when a juror has failed to disclose such a conviction during voir dire" and argued that if no *per se* violation occurred then "inherent bias" is presumed. [ECF No. 33-17] at 36. However, in reply, the Petitioner also argued "actual bias" as to Juror Striggles. [ECF No. 33-17] at 234-240.

The Petitioner contended that Juror Striggles' felony convictions demonstrate an "inherent bias" which disqualifies jurors. *Id.* at 38.

The State responded that this claim is "procedurally barred and alternately meritless." [ECF No. 33-17 at 136]. Even if the claim was not procedurally barred, the State argues that the Petitioner has failed to show "actual bias" or "materiality" under state law. *Id.* at 139. The State asserts that when considering the materiality prong of a three-prong test devised by state law, the Petitioner cannot establish materiality because Juror Striggles' "last conviction was in 1989, some 12 years before Boyd's trial, there was no evidence she had legal problems since then, and she had served in the U.S. Army." *Id.* at 143. The Florida Supreme Court affirmed the denial of post-conviction relief.

To begin, the Florida Supreme Court did not address the procedural bar found by the post-conviction court. The opinion was solely a merits determination. *See Boyd*, 200 So. 3d at 685. The Florida Supreme Court adopted certain factual findings of the post-conviction court:

> Juror Striggles' criminal history consisted of the following incidents: (1) making a bomb threat and committing extortion (August 1979); (2) making a threatening phone call (December 1980); (3) twice pleading guilty to reporting false bombings (August 1983 and October 1986), and violating the probation order associated with each conviction; (4) pleading guilty to the misdemeanor of contributing to the delinquency of a minor in Georgia (March 1986); and (5) pleading guilty to one count of possession of a firearm by a convicted felon and one count of carrying a concealed firearm (March 1988). According to the record, Striggles was about nineteen years old at the time of her first false-bombing reporting in August 1983, and twenty-four at the time of her last known adjudication in March 1988. Certified records indicate that Striggles' civil rights were restored on April 4, 2008—more than six years after she served on the jury of Boyd's 2002 trial. When asked by the trial court how long ago she was involved with the criminal justice system, Striggles responded that she was a juvenile. She did not otherwise apprise the court or counsel of her series of convictions as an adult (beginning in August 1983).

*Boyd*, 200 So. 3d at 694–95. These facts are not in dispute here.

As to the Petitioner's *per se* statutory "prejudice" argument, the Florida Supreme Court rejected this argument finding that "we do not think that it is pragmatic to promulgate a *per se* rule that one's status as a convicted felon denotes inherent bias against a criminal defendant's legal interests." *Boyd*, 200 So. 3d at 697. Rather, the Florida Supreme Court "h[eld]—as have many other appellate courts throughout this nation—that a criminal defendant is not entitled to relief under such atypical circumstances absent a showing, based on legally sufficient evidence, of actual juror bias against the defendant." *Id*.

The court then rejected the Petitioner's inherent bias argument. The court applied an actual bias standard to the facts from voir dire and the post-conviction evidentiary hearing and determined:

> In other words, a person's disqualification from jury service by statute does not necessarily implicate a violation of a criminal defendant's constitutional rights if that person somehow served as one of said defendant's jurors. Thus, the only relevant issue presently before this Court is whether there is legally sufficient evidence that either Juror Striggles or Juror Rebstock was actually biased against Boyd.

> Under the "actual bias" standard announced by this Court in *Carratelli* [*v. State*, 961 So. 2d 312 (Fla. 2007)]:

>> A juror is competent if he or she "can lay aside any bias or prejudice and render his [or her] verdict solely upon the evidence presented and the instructions on the law given to him [or her] by the court." *Lusk [v. State]*, 446 So.2d [1038,] 1041 [(Fla.1984)]. Therefore, actual bias means bias-in-fact that would prevent service as an impartial juror. *See United States v. Wood*, 299 U.S. 123, 133–34, 57 S. Ct. 177, 81 L.Ed. 78 (1936).... Under the actual bias standard, the defendant must demonstrate that the juror in question was not impartial—i.e., that the juror was biased against the defendant, and the evidence of bias must be plain on the face of the record. *See Carratelli [v. State]*, 915 So. 2d [1256,] 1260 [(Fla. 4th DCA 2005)] (citing *Jenkins [v. State]*, 824 So. 2d [977,] 982 [(Fla. 4th DCA 2002)]); *see also Patton v. Yount*, 467 U.S. 1025, 1038–40, 104 S. Ct. 2885, 81 L.Ed.2d 847 (1984).

> *Carratelli*, 961 So. 2d at 324.

Here, Boyd has not alleged actual bias, nor has he pointed to any evidence in this record indicating that Juror Striggles or Juror Rebstock likely did not deliberate the question of his guilt fairly and impartially. In fact, the record is replete with evidence demonstrating facts that support the opposite conclusion. For instance, when asked during voir dire, Striggles informed the trial court that she was treated fairly by the juvenile system as a juvenile delinquent and that she, as previously noted, had gotten over whatever negative feelings she may have developed about that experience. Striggles also told the prosecutor during voir dire that she did not have a problem recommending a sentence of death where appropriate because she expected the State to be fair in the presentation of its case against Boyd. Further, Striggles was not part of the group of venire members that expressed moral, religious, or personal beliefs that would have prevented them from returning a verdict of guilty if the State satisfied its burden of proof. She, however, was part of the group that affirmatively agreed with the prosecutor's statement that the verdict reached should be one based solely upon the evidence presented, and not any juror's personal biases or prejudices. Because this record evidence gives no indication that either Juror Striggles or Juror Rebstock harbored any bias against him, we conclude that Boyd has not shown that he is entitled to a new trial.

*Boyd*, 200 So. 3d at 698.

### b.      <u>The Instant 28 U.S.C. § 2254 Petition</u>

In seeking federal habeas relief, the Petitioner argues that the "Florida Supreme Court has placed a nearly insurmountable burden on Petitioner in post-conviction that other appellate jurisdictions do not, specifically that the actual bias must be shown on the face of the record … on the face of the trial record, not the entire trial and post-conviction record." [ECF No. 1] at 25. The Petitioner argues that this heightened burden violates procedural due process. *Id.*

Specifically, as to Claim A(1), the Petitioner alleges that Juror Striggles "failed to disclose critical criminal history information during voir dire despite being asked to disclose information regarding involvement with the criminal justice system." *Id.* The Petitioner argues that "[b]ecause the State of Florida extended to Petitioner the statutory right to a jury free of convicted felons, the constitutional requirement of notice and opportunity to be heard on the denial of that statutory right were also necessarily extended." *Id.* The Petitioner asserts that "[j]uror misconduct affected the outcome of Petitioner's trial and violated his due process right to a fair and impartial jury." *Id.* at

37-38. Finally, the Petitioner concludes that "[a]ny hearing probing the honesty and partiality of a juror due to concealment of a material fact at trial must necessarily include an opportunity to question the offending juror." *Id*. at 26.

The State responds that the Florida Supreme Court's ruling is "*in conformity with federal precedent*, thus Defendant has not carried his burden under AEDPA." [ECF No. 28] at 39. (emphasis added). The State further asserts that the Florida Supreme Court's decision that a felon having served on a jury was not *per se* unconstitutional "*comports with federal law*." *Id*. at 41 (emphasis added). The State asserts that, *McDonough Power Equip. Corp. v. Greenwood,* 464 U.S. 548, 556 (1984), does not apply here because it "applies only in cases where the juror's failure to disclose information was deliberate, *not merely a mistake*." *Id*. at 42 (emphasis added). The State contends that Juror Striggles' withholding of her five prior adult felony convictions and false reporting of juvenile involvement with the criminal justice system was a "misstatement of little significance" and the "[d]efendant has presented nothing to even insinuate that her misstatement was intentional." *Id*. at 44.

In reply, the Petitioner contends that nothing in the record supports a conclusion that Juror Striggles could *forget* or *mistake* her convictions for felony offenses, crimes of dishonesty, and adjudications of guilty. [ECF No. 34] at 9 (emphasis added). The Petitioner points out that "[i]n nearly all of the cases relied upon by the Florida Supreme Court the defendants had the benefit of evidentiary development during which the offending juror was interviewed and/or testified at a hearing." *Id*. at 4-5 (citations omitted). The Petitioner argues that "[n]o such opportunity has been afforded Mr. Boyd." *Id*. at 5.

After considering both parties arguments and with the benefit of review of the entire state court record, this Court found that a federal constitutional error had occurred and that the Petitioner

met the AEDPA standard for an evidentiary hearing. Ultimately, the Court concluded that the Petitioner should be granted a limited evidentiary hearing. [ECF No. 37] at 30. The rationale for the Court's granting the Petitioner an evidentiary hearing follows.

i.    <u>**Analysis of Evidentiary Hearing Eligibility**</u>

The Court began its §2254 analysis with a brief clarification. [ECF No. 37] at 17. "To be clear, the Petitioner is seeking federal habeas relief." *Id.* Thus, the Court may only grant relief for violations of the federal constitution. Here, there are several issues of state law inextricably intertwined within this claim. Specifically, implicated is a violation of a state statute for having a convicted felon serve on the jury and a violation of a state rule of criminal procedure for denying a post-conviction evidentiary hearing in state court. However, it is this Court's limited role to review the Petitioner's claim for federal constitutional error. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). "It is not the province of a federal habeas court to reexamine state-court determinations on issues of state law." *Id.*

However, these two state law issues are relevant to this federal habeas claim. The felony convictions which serve as the basis of a statutory violation may be relevant because they could establish, in part, actual bias if they served as a basis for a valid cause challenge. The denial of an evidentiary hearing in state court may be relevant because the testimony of the juror who provided false or misleading information may be required in order for the Petitioner to prove his claim or for the post-conviction court to conclude whether her answers were the product of mistake or misunderstanding. Indeed, without this testimony, the findings of the state court may be unreasonable. These state law concerns are woven in the analysis of the federal constitutional

right to a fair trial, one free from a biased or impartial jury, and where the defendant is afforded due process.[11] But, they do not, standing alone, serve as the basis for federal habeas relief.

Above all, this Court had to determine whether or not the determination of the Florida Supreme Court "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States," or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d)(1)-(2). If so, then the Court could hold an evidentiary hearing to determine if the Petitioner is entitled to federal habeas relief.

### ii.     AEDPA Standard for Evidentiary Hearings

This Court's analysis to determine the Petitioner's entitlement to an evidentiary hearing began with *Cullen v. Pinholster*, 131 S. Ct. 1388, 1398–1400 (2011). In *Cullen*, the United States Supreme Court held that federal courts must first determine whether a petitioner satisfies § 2254(d) before they may consider new evidence acquired during a federal hearing. [ECF No. 37] at 19. Therefore, the Court must look at the state court record to determine, *considering only the record before the state court*, if the state court's adjudication complies with AEDPA. It is only if the Court makes such a determination that an evidentiary hearing can be held in federal court. Then a *de novo* review of the claim, including the newly presented evidence, can be conducted. A "federal court must then resolve the claim without the deference AEDPA otherwise requires." *Panetti v. Quarterman,* 551 U.S. 930, 953-54 (2007) (citations omitted).

---

[11] The Florida Supreme Court summarized the claim as the Petitioner "assert[ed] that he is entitled to a new trial because two jurors failed to disclose information pertinent to his decision to retain them for jury service, thereby denying him a fair and impartial jury." *Boyd*, 200 So. 3d at 693-94. For exhaustion purposes, the "legal basis and specific factual foundation" are the same here as was in the state courts. *See Pope v. Sec'y, Dep't of Corr.*, 680 F.3d 1271, 1286 (11th Cir. 2012).

*Cullen* explicitly states that a district court cannot use evidence presented in federal court for the first time in order to make a reasonableness determination on the state court's decision where the state court did not have such evidence before it. *Cullen*, 131 S. Ct. at 1399. If the facts upon which the state court based its determination are found to be unreasonable in light of the record evidence, AEDPA deference no longer applies and a *de novo* review is the applicable standard. *Adkins v. Warden*, 710 F.3d 1241, 1250 (11th Cir. 2013) (citing *McGahee v. Ala. Dep't of Corr.*, 560 F.3d 1252, 1266 (11th Cir. 2009)). If the Petitioner fails to show that the state court's factual determinations were unreasonable, he must show that the court's interpretation of clearly established federal law resulted in an unreasonable decision in order to satisfy *Cullen*.

### iii.    Clearly Established Federal Law Applicable to Juror Service

"[O]ur common-law heritage, our Constitution, and our experience in applying that Constitution have committed us irrevocably to the position that the criminal trial has one well-defined purpose –to provide a fair and reliable determination of guilt." *Estes v. Texas*, 381 U.S. 532, 565 (1965) (Warren, C.J., with whom Douglas and Goldberg, JJ., joined, concurring). "[T]he right to jury trial guarantees to the criminally accused a fair trial by a panel of impartial, 'indifferent' jurors.'" *Irvin v. Dowd*, 366 U.S. 717, 722 (1961). "[D]ue process alone has long demanded that, if a jury is to be provided the defendant, regardless of whether the Sixth Amendment requires it, the jury must stand impartial and indifferent to the extent commanded by the Sixth Amendment." *Morgan v. Illinois*, 504 U.S. 719, 727 (1992) (citations omitted). "Voir dire examination serves to protect that right by exposing possible biases, both known and unknown, on the part of potential jurors." *McDonough Power Equipment Inc. v. Greenwood*, 464 U.S. 548, 554 (1984). "[T]o obtain a new trial in such a situation, a party must first demonstrate that a juror failed to answer *honestly* a material question on voir dire, and then further show that a

correct response would have provided a valid basis for a challenge for *cause*." *Id*. at 556 (emphasis added).

### iv.     <u>Juror Misconduct</u>

In *McDonough*, a juror failed to respond to a question regarding whether or not "any members of your immediate family sustained any severe injury…whether it was an accident at home, or on the farm or at work that resulted in any disability or prolonged pain and suffering?" *McDonough,* 464 U.S. at 550.  After judgment, it was brought to counsel's attention that the juror's son had been injured in the explosion of a truck tire.  After briefing, the District Court granted a motion to approach the juror.  However, before the court was made aware of the contact with the juror, it denied the pending motion for new trial such that the substance of the conversation with the juror was never disclosed.  On appeal, the Circuit Court decided the issue based on the recollections of counsel for each party as to the conversation with the juror.  The Circuit Court assumed that the juror answered in good faith but found that good faith is irrelevant to the inquiry because a new trial is required to rectify the failure to disclose the information.  *Id*. at 552.   The United States Supreme Court reversed.

The Court found that, because the juror considered his son's broken leg not an injury that resulted in disability or prolonged pain and suffering, his response given during voir dire was "mistaken though honest" as opposed to untruthful.  *Id*. at 555.  Therefore, the Court held "that to obtain a new trial in such a situation, a party must first demonstrate that a juror failed to answer honestly a material question on voir dire, and then further show that a correct response would have provided a valid basis for a challenge for cause. The motives for concealing information may vary, but only those reasons that affect a juror's impartiality can truly be said to affect the fairness of a trial." *Id*. at 556.

This same standard is applicable to the Petitioner's claim. A review of the decision of the Florida Supreme Court shows that it considered the facts, cited *McDonough* and other lower federal courts,[12] and acknowledged an actual bias standard as the appropriate one. *See Boyd*, 200 So. 2d at 698. Two questions remained: (1) did the Florida Supreme Court make reasonable factual determinations and (2) did the court reasonably apply clearly established federal law to those facts. *See* 28 U.S.C. § 2254 (d)(1)-(2).

In affirming the denial of relief, the Florida Supreme Court applied two key factual findings. First, that Juror Striggles was a convicted felon. Second that the record was "replete" with evidence supporting the conclusion that Juror Striggles deliberated fairly and impartially. This Court determined that the first finding was reasonable based on the state court record, but the second finding was unreasonable as a factual finding pursuant to 28 U.S.C. § 2254(d)(2). [ECF No. 37] at 22.

## v. Factual Determinations Under 28 U.S.C. § 2254(d)(2)

Habeas corpus relief can only be granted if the state court's adjudication "resulted in a decision that was based on an unreasonable determination of the facts *in light of the evidence presented in the state court proceeding*." 28 U.S.C. § 2254(d)(2) (emphasis added). The Florida Supreme Court made certain factual determinations to support its conclusion that Juror Striggles did not "harbor[] any bias against" the Petitioner. *Boyd*, 200 So. 3d at 685. The source of information identified by the court as having been used to make these factual determinations was

---

[12] The phrase "clearly established Federal law, as determined by the Supreme Court of the United States" refers only to the holdings, not dicta, of the Supreme Court. *Hawkins v. Alabama*, 318 F.3d 1302, 1309 (11th Cir. 2003) (citation omitted); *see also Williams v. Taylor*, 529 U.S. 362, 412 (2000). Decisions of lower federal courts, however, are instructive to the extent that they demonstrate how those courts applied Supreme Court holdings. *See Hawkins*, 318 F.3d at 1309.

the very limited testimony[13] given during the voir dire by Juror Striggles. The Florida Supreme Court found the record "replete with evidence" demonstrating that she was fair and impartial based solely on her answers to the questions posed during voir dire. *Boyd*, 200 So. 3d at 698. Considering only the record before the state court, this Court determined that this finding was unreasonable.[14]

The record clearly showed and the parties agreed that Juror Striggles was a convicted felon; indeed, she was convicted of five felonies and one misdemeanor as an adult. She omitted this fact during questioning in voir dire. Moreover, she *volunteered* that her involvement in the criminal justice system was when she was a juvenile. This was false. Reasonable jurists would question her credibility. Although bias may not simply be assumed where a juror has been dishonest, "[a] juror's dishonesty is a strong indication of bias." *United States v. Carpa*, 271 F.3d 962, 967 (11th Cir. 2001) (citing *United States v. Perkins,* 748 F.2d 1519, 1532 (11th Cir. 1984)). Once her undisclosed criminal record was admitted in evidence, the prudence of using her sworn testimony during voir dire as the sole basis for a factual determination of this magnitude is troubling.

Moreover, the state courts presumed that when Juror Striggles responded during voir dire that she had some involvement with the criminal justice system as a juvenile that she was referencing the adult criminal convictions at issue here. Perhaps, these convictions are not what she was referencing at all. Since she was never interviewed post-trial, it is possible that she meant an entirely different and separate juvenile involvement with the criminal justice system unknown

---

[13] For the most part, the relevant voir dire consisted of Juror Striggles simply responding in either the affirmative or negative to questions posed to a larger group of jurors on certain topics. *See* [ECF No. 30-5] at 94, 107.

[14] The post-conviction court did not have the benefit of having observed Juror Striggles to assess her credibility during voir dire as two different judges presided over the Petitioner's trial and post-conviction proceedings. The trial judge was the Honorable Ronald Rothschild; the post-conviction judge was the Honorable Andrew L. Siegel. *Compare Boyd v. State,* 910 So.2d 167 (Fla. 2005) & *Boyd v. State,* 200 So. 3d 685 (Fla. 2015).

to the Petitioner.[15]  More importantly, the relevant factual determination for the Court pursuant to *McDonough* was not whether Juror Striggles "deliberated the question of guilt fairly and impartially" but whether she "failed to answer honestly a material question on voir dire." *See McDonough*, 464 U.S. at 554.  To be sure, if Juror Striggles would have been called to explain the discrepancy between her testimony during voir dire and her actual criminal record these relevant questions may have been answered.  Until the evidentiary hearing granted by this Court, this information was unknown.

The Petitioner has been sentenced to death by a jury that included a five-time convicted felon in direct violation of state law (relevant to a cause challenge).  The state court's failure to hold a hearing, where the Petitioner could question the jurors, deprived him of the opportunity to garner the facts necessary to prove his state post-conviction and federal habeas corpus claims (relevant to the juror's intent when answering questions on voir dire).  Neither the post-conviction court nor the Florida Supreme Court had the relevant information before them when they made factual determinations in this case.  Sitting as a federal habeas court, this Court must take the record as it was before the state court and determine whether the decision of the state court was reasonable based solely on the information that the state court was privy to at the time it rendered its decision.  Having done so, the Court found the factual determinations of the Florida Supreme Court to be unreasonable.  [ECF No. 37] at 24.  Clearly, the Court understood that AEDPA unreasonableness is a high standard to meet.

> "If this standard is difficult to meet"—and it is—"that is because it was meant to be." *Id*., at ——, 131 S. Ct., at 786. We will not lightly conclude that a State's criminal justice system has experienced the "extreme malfunctio[n]" for which federal habeas relief is the remedy. *Id*., at ——, 131 S. Ct., at 786 (internal quotation marks omitted)).

---

[15]  In Florida, information obtained regarding the assessment or treatment of a juvenile can be maintained as confidential and exempted from a public records search.  *See generally* Fla. Stat. § 985.04.

*Burt v. Titlow*, 134 S. Ct. 10, 16 (2013).

Nonetheless, the Court found that this is such a case where the state court's ruling was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011). The Petitioner "establish[ed] that no fairminded jurist" would have reached the Florida court's conclusion. *See Richter*, 562 U.S. at 102–03; *Holsey v. Warden, Ga. Diagnostic Prison*, 694 F.3d 1230, 1257–58 (11th Cir. 2012). The Court concluded that the Petitioner satisfied 28 U.S.C. §2254(d)(2). [ECF No. 37] at 24.

### vi. Application of Clearly Established Law 28 U.S.C. § 2254(d)(1)

Even if the Petitioner had not satisfied Section 2254(d)(2), habeas corpus relief can be granted if the state court's adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). While the Court found the factual determination that Juror Striggles was a convicted felon to be reasonable, the Court likewise found that when the state court applied that fact to clearly established federal law, its application was unreasonable.

In *Boyd*, the Florida Supreme Court's opinion was largely a primer on Florida law[16] and the law in multiple other jurisdictions (Oregon, Michigan,[17] Washington, Maryland, California,

---

[16] *See Lebron v. State*, 135 So. 3d 1040 (Fla. 2014) (claim of ineffective assistance of counsel not juror misconduct); *Smithers v. State*, 18 So. 3d 460 (Fla. 2009) (claim of ineffective assistance of counsel not juror misconduct).

[17] Prior to making an actual prejudice determination, the court held an evidentiary hearing where the juror testified. *Michigan v. Miller*, 482 Mich. 540 (Mich. 2008).

and federal appellate courts in the Eleventh Circuit,[18] Eighth Circuit,[19] D.C. Circuit,[20] and First Circuit) regarding the seating of jurors with biases. *Boyd*, 200 So. 3d at 694-98. While the opinion cited the clearly established federal law of *McDonough*, it analyzed the facts of the Petitioner's claim under the actual bias standard of *Carratelli v. State*, 961 So. 2d 312 (Fla. 2007). The actual bias standard of *Carratelli* does not comport with the actual bias standard of *McDonough* which is why the decision in *Boyd* resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law.

Clearly established federal law is not the law of the lower federal courts. Instead, in the habeas context, clearly established federal law "refers to the holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state court decision." *Putman v. Head*, 268 F.3d 1223, 1241 (11th Cir. 2001) (alteration in original) (quoting *Williams*, 529 U.S. at 362, 120 S. Ct. 1495). Accordingly, the Court's § 2254(d)(1) analysis is limited to the holdings of United States Supreme Court precedent prior to the decision of the Florida Supreme Court in *Boyd*. A comparison of *McDonough* and *Carratelli* illustrates how the denial of Petitioner's claim resulted in an unreasonable application of clearly established federal law.

To establish actual bias, the Petitioner must show two things: (1) failure to answer a material question honestly during voir dire and (2) a correct response would have provided a valid basis for challenge for cause. *McDonough*, 464 U.S. at 555. In *McDonough*, the District Court

---

[18] The trial court investigated, including the questioning of a juror, prior to making an actual bias determination. *United States v. Carpa*, 271 F.3d 962 (11th Cir. 2001).

[19] Once a motion for new trial was filed alleging statutory disqualification of a juror, the District Court held a hearing at which the juror testified. *United States v. Humphreys*, 982 F.2d 254 (8th Cir. 1992).

[20] The Court remanded the matter back to the District Court for an evidentiary hearing to determine if the concealment of the felony conviction resulted in actual bias. *United States v. Boney*, 977 F.2d 624 (D.D.C. 1992).

held an evidentiary hearing to ascertain whether or not the error in the juror's answer was *mistaken or deliberate*. Conversely, in *Carratelli*, a case not about a Sixth Amendment violation for juror misconduct but for *ineffective assistance of trial counsel* in failing to preserve an objection to the denial of for-cause challenges to prospective jurors, the court held that the Petitioner must demonstrate that the juror was not impartial and the evidence of such bias must be *plain on the face of the record*. *Id*. at 324. (emphasis added). *Carratelli* expressly distinguished its holding regarding the actual bias standard in post-conviction from its prior holding in *Singer v. State*, 109 So. 2d 7, 22 (Fla. 1959)[21] which applied an "any reasonable doubt" about juror's impartiality standard on direct appeal. Although *Singer* has a factual scenario more akin to the instant claim, the Florida Supreme Court applied *Carratelli* to the Petitioner's case. Applying *Carratelli*, the court required the Petitioner to show on "the plain face of the record" that Juror Striggles did not deliberate fairly and impartially.

According to clearly established federal law, the Petitioner does not have to show that Juror Striggles did not deliberate fairly or impartially if he can show that she failed to answer a material voir dire question honestly and that her response would have been a valid basis for a cause challenge. *See McDonough*, 464 U.S. at 556. Regardless of the applicable actual bias standard, the Court found that establishing Juror Striggles' veracity, or lack thereof, was a virtual

---

[21] We agree that while the *Singer* standard may be appropriate for direct appeals, it is not appropriate as a postconviction standard. Under *Strickland*, to demonstrate prejudice a defendant must show that there is a reasonable probability-one sufficient to undermine confidence in the outcome-that, but for counsel's unprofessional errors, the result of the proceeding would have been different. 466 U.S. at 694, 104 S. Ct. 2052. In the context of the denial of challenges for cause, such prejudice can be shown only where one who was actually biased against the defendant sat as a juror. We therefore hold that where a postconviction motion alleges that trial counsel was ineffective for failing to raise or preserve a cause challenge, the defendant must demonstrate that a juror was actually biased.

*Carratelli v. State*, 961 So. 2d 312, 324 (Fla. 2007).

impossibility absent a hearing. [ECF No. 37] at 26. The Petitioner should be able to inquire of the juror and present evidence to support his claim. The heightened burden, requiring proof on the plain face of the record, applied by the Florida Supreme Court is more than simply incorrect; it is unreasonable. "[T]he most important point is that an *unreasonable* application of federal law is different from an *incorrect* application of federal law." *Williams v. Taylor*, 529 U.S. 362, 410 (2000) (emphasis in original).

It was unreasonable for the Florida Supreme Court to apply *Carratelli* to the Petitioner's case. *Carratelli* "explain[s] the standard that courts should apply [in Florida] in deciding whether a trial counsel's failure to preserve a challenge to a potential juror constitutes ineffective assistance of counsel." *Carratelli*, 961 So. 2d at 315. *Carratelli* explicitly states that "this case requires us to address only the requirements for establishing prejudice under *Strickland* on a post-conviction claim that counsel was ineffective for failing to preserve or raise a cause challenge before a jury is sworn." *Id*. at 327. *Carratelli* is entirely different standard than *McDonough*. It is understandable that a court would review an ineffective assistance of counsel claim based on the *face of the record*. Counsel cannot be deficient for failing to challenge or preserve a challenge to the seating of a juror with information not *in the record* at the time the juror served. *See Strickland v. Washington*, 466 U.S. 668 (1984). It is axiomatic that juror misconduct revelations that come to light *after* trial logically cannot apply a "plain on the face of the record standard" absent a hearing to determine actual bias. In this case, the only record with relevant information was the trial record and there were no juror interviews conducted after trial. Simply, the Court found that *Boyd* cannot be reconciled with *McDonough*. [ECF No. 37] at 28.

### vii.    Applying the *McDonough* Standard to the Petitioner's Case

Juror Striggles is a convicted felon. *See Boyd,* 200 So. 3d at 694. At the time of the Petitioner's trial, a felony conviction disqualified a person from jury service in Florida. *See* FLA. STAT. § 40.013. This undoubtedly would serve as "a valid basis for a challenge for cause." *See McDonough*, 464 U.S. at 554. "It is undisputed that a question about prior felony convictions is material to jury service and that an honest answer from this juror would have provided a basis to challenge her for cause. *United States v. Carpa,* 271 F.3d 962, 967 n. 5 (11th Cir. 2001) (per curiam) ('A pending or final felony conviction is a valid basis for challenge for cause.')." *Jackson v. Ala. State Tenure Comm'n,* 405 F.3d 1276, 1288 (11th Cir. 2005). Here, it is unknown if counsel would have asserted a cause challenge,[22] but the question is not whether a cause challenge would have been made but if there was a *basis* for one to have been made. *See McDonough*, 464 U.S. at 544.

Juror Striggles failed to honestly answer a material question on voir dire. *Id.* at 555. Whether her answers were deliberately false or simply mistaken are questions that had yet to be answered. While the State of Florida speculated why Juror Striggles' answers may have been "merely a mistake" or "misinformation" or "human error" or the product of a "faulty memory", the Court did not presume to know her intentions. [ECF No. 28] at 42, 43. The Court found that it may be that Juror Striggles' answers were the product of a mistake rather than a purposeful falsehood but there was nothing in the record to indicate that.

---

[22] At the post-conviction evidentiary hearing trial counsel testified that "[m]y position is in general that people who've had run-ins with the law or the prosecutor are not people who I need to worry about holding a grudge against the defendant." [ECF No. 33-14] at 48. However, trial counsel also testified that had he known that Juror Striggles had not had her civil rights restored, it would have indicated that he "ought to do some voir dire." *Id.* at 47.

When applying these facts to clearly established federal law, the Court concluded that it was an unreasonable application to not find that Juror Striggles' five felony convictions would serve as the basis for a cause challenge; one element of a *McDonough* actual bias analysis. Further, because the state court applied an incorrect bias standard and the juror was never questioned, there had been no factual analysis on whether Juror Striggles' answers during voir dire were dishonest or simply mistaken; a second element of *McDonough*. Therefore, the Court granted the request for an evidentiary hearing.

### viii.    28 U.S.C. § 2254(d)(2)

The record showed that the Petitioner made a reasonable attempt to pursue an evidentiary hearing in state court and his request was refused. Such a hearing would assist in the resolution of his claim, so § 2254(d)(2) did not bar the Court from holding an evidentiary hearing. *See Breedlove v. Moore*, 279 F.3d 952, 960 (11th Cir. 2002); *Williams v. Taylor*, 529 U.S. 420, 430 (2000) ("By the terms of its opening clause the statute applies only to prisoners who have 'failed to develop the factual basis of a claim in State court proceedings.'"). Moreover, the Court found that the evidence that was proffered, if true, may entitle the Petitioner to relief. While Court was unable to conclusively find that the Petitioner was entitled to habeas relief until he proved the allegations in his habeas petition, it could determine that his contentions are such that he was entitled to a hearing to establish their truth. *See Pope v. Sec'y, Dep't of Corr.*, 680 F.3d 1271, 1294 (11th Cir. 2012) ("However, we do not know the veracity of his claims because Pope has never been afforded an opportunity to develop their factual basis in the crucible of an evidentiary hearing—nor, just as importantly, has the State had the opportunity to challenge them in an adversarial hearing.").

Having found the decision of the Florida Supreme Court unreasonable as defined by 28 U.S.C. § 2254(d), the Court must undertake a *de novo* review of the claim. *See McGahee v. Ala. Dep't of Corr.*, 560 F.3d 1252, 1266 (11th Cir. 2009) ("Where we have determined that a state court decision is an unreasonable application of federal law under 28 U.S.C. § 2254(d), we are unconstrained by § 2254's deference and must undertake a *de novo* review of the record."). At this stage of the proceedings, the proper remedy for any constitutional violation was for the Court to first hold an evidentiary hearing. *See Smith v. Phillips*, 455 U.S. 209, 215 (1982) ("This Court has long held that the remedy for allegations of juror partiality is a hearing in which the defendant has an opportunity to prove actual bias.").

As the Petitioner established a prima facie case of juror misconduct, the Court held an evidentiary hearing in order to conduct an appropriate *McDonough* actual bias analysis. *See Madison v. Comm., Ala. Dep't of Corr.*, 761 F.3d 1240, 1249 (11th Cir. 2014). "In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." *Schriro v. Landrigan*, 550 U.S. 465, 474 (2007) (citations omitted). The Petitioner established an entitlement to a federal evidentiary hearing, as he showed that: (1) the federal claim was adjudicated on the merits in state court; (2) there was a determination based only on the state court record that the petitioner has cleared the § 2254(d) hurdle; and (3) the habeas petitioner tried, but was not given the opportunity to develop the factual bases of the claim in state court within the meaning of 28 U.S.C. § 2254(d)(2). *See Madison*, 761 F.3d at 1249.

### c. §2254 Evidentiary Hearing

On September 20, 2018, the Court held an evidentiary hearing on this limited issue. [ECF No. 47]. The Petitioner called Juror Tonja Striggles to testify. The State called Dr. James Ongley,

Esq. (trial/penalty phase counsel) to testify. The relevant testimony[23] of Juror Striggles during the

Petitioner's direct examination is as follows:

Q. Okay. I want to talk a little bit, though, about also –you were asked – as the judge mentioned, you were asked some questions about your involvement with the Criminal Justice System. Do you recall that?

A. Not really.

Q. Well, do you recall that – do you have involvement with the Criminal Justice System?

A. When I was a kid.

Q. When you say when you were a kid, how old were you?

A. The first time I got in trouble or up until I got in trouble the last time?

Q. Well, you can start with the first time.

A. I was a teenager, I think, or maybe not even a teenager.

\* \* \*

Q. How old were you when you went to prison?

A. I don't remember.

Q. If your court records reflect that that occurred in 1988 after another conviction for carrying a concealed firearm by a convicted felon and then you were sentenced to 30 months prison, does that sound correct?

A. Okay.

Q. And in 1988 you were 24 years old?

A. Okay.

Q. I mean, I did the math. You were born -- what–s your birth date?

A. '64.

Q. So, in 1988, doing the math, you'd be 20 years old?

A. Okay.

Q. And that certainly is not as a juvenile; it's not a juvenile conviction?

---

[23] While Juror Striggles was asked a variety of additional questions, the most relevant issue before the Court, aside from her general demeanor and credibility, was whether withholding the facts of her criminal convictions was deliberate rather than mistaken. *See McDonough*, 464 U.S. at 555.

A. *But it stood for my juvenile conviction.*

Q. I'm sorry, say that again.

A. Never mind.

Q. No, I am trying to understand so -- I know– this is a long time ago but you said it stemmed from your juvenile conviction?
A. Uh-huh.

Q. Okay.

\* \* \*

Q. So in 1983 you were 19 years old? Again, doing the math, you were born in 1964 --

A. Yes.

Q. -- to 1–3, you would have been 19 years old?

A. Yes.

Q. And that would not be considered a juvenile conviction?

A. I went to juvenile court.

[ECF No. 47] at 15-16. (emphasis added).  As the hearing continued, it became clear that Juror Striggles considered her criminal convictions as a juvenile to be responsive to broader questions regarding her "involvement in the Criminal Justice System."

Q. Did that refresh your recollection as to being asked about your involvement in the Criminal Justice System?
A. Yes.

Q. Did it refresh your recollection as to what your answer was?

A. The same that I told you.

Q. So what was your answer?

A. *As a juvenile*.

Q. And then do you recall, did the judge also clarify again with you that your involvement with the Criminal Justice System was as a juvenile?

A. Yes.

Q. Okay. However, you have a conviction in 1983 when you were 19 years old. You also have a conviction in 1986 and another in 1988. Is there a reason you didn't tell the Court about the adult convictions?

A. No, probably because I didn't think about it.

*Id.* at 19.

On cross-examination, Juror Striggles testified that she wasn't "trying to hide anything about [her] criminal history." *Id*. at 33. Rather, after counsel pointed out that no one during the voir dire made any further inquiries regarding her juvenile convictions, Juror Striggles testified that she was "just answering the questions that [she] was asked" and she "ha[s] nothing to hide." *Id*. Counsel for the State then asked a serious of questions regarding the similarities between her juvenile and adult convictions (*i.e.*: that she was represented by the Public Defender's Office on each case and appeared in Broward County courtrooms). Again, Juror Striggles testified that she believed that "all of this stuff, the criminal history stems from when [she] was a juvenile." *Id*. at 34.

For further clarity, the Court directly questioned Juror Striggles.

THE COURT: I have some questions and you all will have a chance to follow up, ask follow-up questions. Ms. Striggles, you said earlier that you didn't mention the convictions that happened when you were an adult because you didn't think about it. What do you mean by that?

THE WITNESS: I wasn't asked anything about it, so I didn't bring it up.

\* \* \*

THE COURT: And just so I am clear, when the judge asked -- when–you were asked either in the questionnaire or by the judge or the attorneys if you had any ties to the Criminal Justice System and you mentioned as a juvenile, I mean, did you understand the question that was being asked?

THE WITNESS: I thought I did.

THE COURT: What did you understand the question to be asking you.

THE WITNESS: That if I had any affiliations with the criminal system.

THE COURT: So, why didn't you mention the ones that occurred after you were a juvenile?

THE WITNESS: No reason. I just didn't.

THE COURT: Were you aware that those were not juvenile cases, the ones that happened in your 20s?

THE WITNESS: Now I do.

THE COURT: Okay. But did you understand that back then?

THE WITNESS: No.

* * *

THE COURT: Did you intentionally lie to the Court or make any misstatements to the Court or the attorneys in jury selection regarding your criminal history?

THE WITNESS: No.

THE COURT: Was it your failure to mention the cases that occurred after you were a juvenile, when you were in your 20s, did you mention them because -- did –you misunderstand the question or the fact that you weren't questioned? I am still trying to understand why you didn't.

THE WITNESS: I just didn't bring it up.

THE COURT: Okay. You didn't bring it up or the attorneys?

THE WITNESS: Nobody brought it up. I didn't bring it up. They didn't bring it up, so I didn't say anything about it.

*Id*. at 36-40.  It is on this record that the Court must conduct its *de novo* review of Claim A(1).

### i.      **Application of *McDonough***

Following the evidentiary hearing, the Court allowed both parties to file post-hearing memorandum. The Petitioner asserts that this Court should focus its review on Juror Striggles' testimony regarding her prior criminal history while assessing her credibility. [ECF No. 48] at 3. The Petitioner asserts that Juror Striggles' testimony fails to support "any finding other than her failure to disclose her extensive criminal history was deliberate." *Id.* at 3. The Petitioner argues that her testimony "at the evidentiary hearing regarding her criminal record was misleading and untruthful." *Id.* In support of this argument , the Petitioner cites to the fact that Juror Striggles served time in an adult prison facility and infers that since she was in an adult facility she should have known that she was not there pursuant to a juvenile conviction; rather, that she must have known that she was there due to an entirely separate and distinct adult conviction. The Petitioner also contends Juror Striggles' response that she "just didn't bring it up" when questioned why she did not mention her adult convictions during *voir dire* is proof that she "chose not to" disclose. *Id.* at 7.

The Petitioner further argued that he "does not have to show that Striggles did not deliberate fairly and impartially if he can show she failed to answer a material question honestly and that her response would have been a valid basis for a cause challenge." *Id.* at 9. The Petitioner asserts that, even if the juror believed that she could be fair despite her felony convictions, she cannot "conceal material facts" that would disqualify her. He contends that Juror Striggles made a deliberate misrepresentation.

The Petitioner challenges her credibility based on other demographical misstatements made during voir dire regarding where she grew up and attended school. *Id.* at 13. The one consistent argument throughout the Petitioner's memorandum is that Juror Striggles' lack of

disclosure of her adult criminal history and involvement in the criminal justice system was "deliberate" and resulted in "structural error." *Id*. at 14.

Unsurprisingly, the State has taken a different position.[24]  First, it argues that there is no Supreme Court precedent which requires a jury free of felons, in other words there is nothing to establish that Juror Striggles' inclusion in the jury was structural error.  [ECF No. 49] at 2.  Second, the State asserts that the Petitioner has failed to meet either prong of *McDonough:* failure to answer honestly a material question on voir dire and a correct response would have provided a valid basis for a challenge for cause.  Finally, the State contends that the Petitioner has not shown "actual bias." *Id*. at 8.

While the Court finds no merit to the State's first and third arguments, further discussion is not warranted because the Court concludes that the State is correct in its assertion that the Petitioner has failed to satisfy the materiality prong of *McDonough*.  Failure to satisfy this threshold issue precludes Section 2254 federal habeas relief.

## ii.    *McDonough* Analysis

First, the Court again notes that it is conducting a *de novo* review of this claim.  *See* [ECF No. 37] at 30.  Second, the Court held an evidentiary hearing wherein it could hear the witnesses' testimony and observe their demeanor as part of its credibility determination.  Having done so, the Court concludes that Juror Striggles did not deliberately or maliciously mislead the state court during voir dire.  The Court determines that she answered the single question at issue to the best of her intellectual abilities and limited understanding of the criminal justice system.

---

[24]  In addition to the arguments summarized herein, the State continues to argue that the Petitioner cannot show bias because there is no evidence that his lawyer would have moved to strike Juror Striggles even if he knew then what he knows now.  The State further argues that Juror Striggles previously disclosed and reaffirmed at the hearing that she could be impartial.  However, as previously stated by this Court, these are not the dispositive issues.  [ECF No. 37] at 11, n.10.

As Juror Striggles testified, it became clear to the Court that her answers during voir dire were the product of confusion of her own creation. At times, her testimony before the Court baffled and lacked a certain logic but this appeared to be due to a failure to fully comprehend her own criminal history or simply a failure to comprehend the nature and scope of the questions. In her testimony, she indicated that she believed the disclosure of her juvenile criminal history was responsive to the questions asked during voir dire. As her personal involvement in the criminal justice system stemmed from her initial juvenile convictions, she believed providing that basic information was responsive to the broader question. After her initial disclosure, *and without any follow-up by the State or the defense*, she did not offer further details of any adult convictions. According to her, she just didn't think about it. *See* [ECF No. 47] at 39. While that may "stretch[] logic" and indicate "untruthful[ness]" to those trained and conversant in the law, to a lay person, it is certainly plausible. It is entirely reasonable for a lay person to think that if any additional information was important or relevant, someone (the trial judge, the State, or defense counsel) might have asked her about it. Moreover, even if she failed to disclose it for another reason, there has been no evidence presented to show that she did so for a misleading or deliberate purpose. Without more, the Petitioner cannot prevail on his claim of juror misconduct.

In *United States v. Perkins*, 748 F.2d 1519 (11th Cir. 1984), the Court said it best. "[T]he first prong of the *McDonough* test requires a determination of whether [the] juror['s] answers were honest, that is, whether *he was aware of the fact that his answers were false*." (emphasis added). Based on this record, the Court cannot find that Juror Striggles was aware that the non-disclosure of her adult convictions when she did disclose her juvenile convictions rendered her answer false. *See Dyer v. Calderon*, 151 F.3d 970 (9th Cir. 1998) (jurors must answer truthfully but "we must be tolerant, as jurors may forget incidents long buried in their minds, misunderstand a question or

bend the truth a bit to avoid embarrassment"). In other words, an incorrect or inaccurate answer is not the same a materially false or dishonest answer. Habeas relief is DENIED.

## 2.    <u>Juror Kevin Rebstock</u>

A second juror who provided incomplete or misleading answers during voir dire was Kevin James Rebstock. When questioned at voir dire regarding his answers to the court's juror questionnaire, Juror Rebstock stated:

> MR. REBSTOCK : My name is Kevin Rebstock, R-e b-s-t-o-c-k --live in Lauderdale Lakes and I've lived in Florida since 1970. I'm originally from New York. I work at Plantation Nissan Volvo. I'm an automobile technician. I'm single. I have no children. And my hobbies are maintaining a classic car and bowling and bicycling.
>
> Yes, I served on a jury once before on a civil trial about five years ago. Number 11 is no. Number 12 is no. Number 13, my sister is a court reporter in the Jacksonville area. Number 14 is no.
>
> THE COURT: Now, if I were to advise you the rules in civil court are very much different than the rules criminal court, will you discount anything you remember from that experience five years ago and use the criminal rules that am going to ask you to employ if you are selected in this case?
>
> MR. REBSTOCK: Yes.
>
> THE COURT: Thank you. We welcome you back.

[ECF No. 30-5] at 13-14. Question #11 of the court's juror questionnaire asked whether the potential juror had "any friends or family previously involved in the court system." Juror Rebstock answered "no." However, in post-conviction, the Petitioner discovered that Juror Rebstock was personally involved with the criminal justice system.

> The record also reflects that Juror Rebstock was arrested in Broward County in November 1991 and charged with misdemeanor solicitation of prostitution; however, the presiding court withheld adjudication. During voir dire in the present case, Rebstock reported on the voir dire questionnaire form that he did not have any family or friends involved in the legal system. He did not report his own

encounter with law enforcement, and no further inquiries were made by the trial
judge or counsel for either party concerning Rebstock's answer to this question.

*Boyd v. State*, 200 So.3d 685, 695 (Fla. 2015).

The Petitioner provided the post-conviction court with a "purge report from Broward
County Clerk of Court confirming [Juror] Rebstock's misdemeanor solicitation charge for which
adjudication was withheld in January 1992. [ECF No. 1 at 20]. He argues that the material facts
of Juror Rebstock's "conviction would likewise have provided grounds to challenge Rebstock for
cause." *Id*. at 25, n. 4.

The State contends that "his misdemeanor solicitation adjudication was withheld, and
therefore, was not even a conviction. Further, it occurred more than a decade prior to Defendant's
trial. Defendant has presented nothing to suggest that he intentionally misled the court, which is
of particular significance since even a conviction of a misdemeanor is not disqualifying under
Florida law." [ECF No. 28] at 44.

The record reflects that Juror Rebstock "was arrested in Broward County in November
1991 and charged with misdemeanor solicitation of prostitution; however, the presiding court
withheld adjudication." *Boyd*, 200 So. 3d at 695. Unlike Juror Striggles, Juror Rebstock was not
convicted of any crime; in particular, he was not convicted of a felony. Given critical factual
differences between Juror Striggles and Juror Rebstock, the Court did not find that the Petitioner
has met the standard for an evidentiary hearing on his claim regarding Juror Rebstock. *See* [ECF
No. 37] at 8, n.4. As the Petitioner argued this claim on appeal to the Florida Supreme Court, an
AEDPA analysis of this claim is due. The Court finds this claim to be without merit.

While the court conducted the same erroneous *Carratelli* analysis for both juror
misconduct claims, this Court did not find that the Petitioner met the standard for an evidentiary
hearing. The Florida Supreme Court was not unreasonable in its assessment that "[b]ecause this

record evidence gives no indication that either Juror Striggles or Juror Rebstock harbored any bias against him, we conclude that Boyd has not shown that he is entitled to a new trial." *Boyd*, 200 So. 3d at 698. This finding is one that could be made by the court even though its *McDonough* analysis was otherwise flawed because there is no evidence to suggest that Juror Rebsotck's nolle prossed misdemeanor would not have survived a cause challenge; whereas Juror Striggles' felony convictions provided a clear statutory basis to dismiss for cause. Applying *McDonough* to the facts present here, there is nothing to suggest that Juror Rebstock would have been dismissed for cause. "To obtain a new trial based on juror misconduct during voir dire, a party must "demonstrate that a juror failed to answer honestly a material question on voir dire " and "further show that a correct response *would have provided* a valid basis for a challenge for cause." *McDonough*, 464 U.S. at 556 (emphasis added).

### B.     Claim II: Ineffective Assistance of Counsel for Failure to Object

The Petitioner's second claim for federal habeas relief is that his trial *and* appellate counsel were ineffective for failing to challenge an improper and prejudicial comment made during the penalty phase. [ECF No. 1] at 39. As these two claims of ineffective assistance of counsel are similar but subject to different standards in a habeas review, the Court will consider them separately. The facts relevant to both claims are below.

During the State's cross-examination of the Petitioner at the penalty phase, a woman in the audience made an audible outburst in the courtroom.

Q: Let's get to the bottom line, they frame you on that too?

A: Excuse me?

Q: Let's get to the bottom line, they framed you on the teeth marks then too?

A: That's what?

Q: They framed you on the teeth marks too?

A: They framed me on the entire case, yes, they did.

Q. Remember when I stood here and said, Mr. Boyd, I'm sorry I have to ask this of you, but did you have your own sperm in your mouth when they swabbed your mouth with the Q-tip and you said no.

A. But they – you're right.

Q. Right. I know I'm right.

A. But they –

Q. Now, you said you'd never do nothing like that –

MR. LASWELL: Objection, your honor. Mr. Boyd has a right to finish his answer.

THE COURT: Mr. Loe, I'm going to give Mr. Boyd –

BY MR. LOE:

Q. I said –

A.

THE COURT: Excuse me, gentlemen. Excuse me. Mr. Boyd, finish your answer and then Mr. Loe may proceed with his next question.

THE WITNESS: I didn't have my sperm in my mouth, but my sperm was in this young lady right here that they took from me in 1998. That's where they got my sperm from, out of me. That young lady right there. That's where my sperm came from.

**J.M.: You raped me.**

THE WITNESS: Yes, sir. Not out of my mouth.

BY MR. LOE:

Q. My question was –

A. Yes, sir.

Q. -- did you have your sperm in your mouth when they swabbed you in 1998, your answer was no?

A. No, sir.

Q. That was my question, wasn't it? Your answer was no?

A. The answer is no.

[ECF No. 1] at 41-43. (emphasis in original). Defense counsel did not object or move for a mistrial. During post-conviction, the Petitioner argued that this failure to act constituted ineffective assistance of counsel which prejudiced him at the sentencing phase of his capital trial. The circuit court held an evidentiary hearing on this claim and trial counsel testified. *See* [ECF No. 33-14].

## 1.    Trial Counsel

William Laswell, Esq. testified that he had no recollection of the incident but, having refreshed his memory with a review of the transcript, he testified that a strategic reason for not objecting could be that he "probably didn't have a chance." [ECF No. 33-14] at 79. He explained that "[w]hen you have an outburst in the courtroom, you can't jump up and say excuse me. Wait. Stop. Or anything. You know. You see what's there." *Id*. Mr. Laswell testified that he had no strategic reason for not seeking a mistrial "[e]xcept that I want to get it behind me as quick as possible. Let's just move on. It's been done. The bell has rung. Let's get past it." *Id.*

Co-counsel, James Ongley, Esq. likewise testified that he did not "remember the event." [ECF No. 33-14] at 137. However, once he reviewed the record, he stated that he had no reason to refute it. Mr. Ongley offered no specific strategic reason for his failure to object or move for a mistrial. However, it was his opinion that, perhaps, this outburst would have been a window of opportunity "to show why the police were out to get Mr. Boyd." *Id*. at 138. Further, Mr. Ongley testified that sometimes letting objectionable facts "pass by" is a strategic decision that you, as an attorney, make when you determine whether "you want to make an issue of it or not." *Id*. at 148.

The circuit court denied post-conviction relief and the Florida Supreme Court affirmed. The court determined that competent, substantial evidence in the record supported the circuit court's decision that counsel had made a strategic decision "not to raise a challenge to the outburst so as to prevent it from becoming a contentious issue in front of the jury." *Boyd v. State*, 200 So. 3d 685, 701 (Fla. 2015). Further, the court found that the Petitioner's conduct "invited the asserted error." Under Florida law, a party who invites error cannot then take advantage of that error on appeal. *Id*. at 702. The Petitioner argues that the Florida Supreme Court's adjudication of this claims is "based upon both an unreasonable application of clearly established law and an unreasonable determination of facts in light of the state court record. *See* 28 U.S.C. §2254(d)(1) and (d)(2)." [ECF No. 1] at 46. Applying the clear dictates of *Strickland*, the Court disagrees.

### a. *Strickland v. Washington*, 466 U.S. 668 (1984)

There can be no doubt that the Petitioner's claim is governed by *Strickland v. Washington*. Here, however, his claims are also governed by the deferential standards of AEDPA. In *Strickland*, the United States Supreme Court set forth the two-prong test that a convicted defendant must meet to demonstrate that his or her counsel rendered ineffective assistance. First, a defendant "must show that counsel's representation fell below an objective standard of reasonableness under prevailing professional norms." *Strickland*, 466 U.S. at 688. Second, a defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. The Court defines a "reasonable probability" as one "sufficient to undermine confidence in the outcome." *Id*. "It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding." *Id*. at 693.

> In *Strickland*, this Court made clear that "the purpose of the effective assistance guarantee of the Sixth Amendment is not to improve the quality of legal

representation ... [but] simply to ensure that criminal defendants receive a fair trial." 466 U.S., at 689, 104 S.Ct. 2052. Thus, "[t]he benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Id.*, at 686, 104 S.Ct. 2052 (emphasis added). The Court acknowledged that "[t]here are countless ways to provide effective assistance in any given case," and that "[e]ven the best criminal defense attorneys would not defend a particular client in the same way." *Id.*, at 689, 104 S.Ct. 2052.

*Cullen v. Pinholster*, 131 S. Ct. 1388, 1403 (2011). The Court must consider the Petitioner's claim with the clearly established federal law of *Strickland* and its progeny while also applying deference to the state court's decisions as required by AEDPA.

The Court has reviewed the entire record, including the penalty phase testimony, and the testimony given at the state post-conviction evidentiary hearing. While the Court does not interpret trial counsel's testimony the same as the Florida Supreme Court, it does not change the result here. The state court's final determination that trial counsel was not ineffective was not an unreasonable application of clearly established federal law.

**b.      §2254(d)(2) determination**

In concluding that trial counsel made a strategic decision which would preclude a finding of ineffective assistance of counsel, the Florida Supreme Court found:

Further, defense counsel testified during the evidentiary hearing that he *immediately perceived* the outburst incident as an opportunity to exploit this theory. According to counsel, based on his prior success in obtaining an acquittal under relatively similar circumstances, *he believed the incident at issue in this case presented a rare opportunity* to allow the jury to connect law enforcement's prior failures to prosecute Boyd for unrelated sexual battery incidents with the possibility that such failures motivated police to target him in the present sexual battery case—as opposed to challenging the spectator's outburst in open court and risking it becoming a feature of the penalty phase. Thus, defense counsel *clearly considered and rejected alternative courses of action.* In addition, this decision was reasonable given that it was made under spur-of-the-moment circumstances and based on a past experience that resulted in an outcome favorable to the defense. We conclude, therefore, that defense counsel did not provide ineffective assistance by failing to object or move for a mistrial in response to the asserted

> penalty phase outburst. *See Reynolds*, 99 So.3d at 483; *Occhicone*, 768 So.2d at
> 1048.

*Boyd*, 200 So. 3d at 701–02. (emphasis added).  The court made those findings despite the faded

memories of trial counsel.  Both trial counsel testified that they had *no* specific recollection of the

outburst; both counsel had to have their recollections refreshed with the trial transcript; and both

counsel had to *guess or suppose* whether a strategic decision was made to not object.  *See* [ECF

No. 33-14] at 77-79, 137-40, & 155.  For example, trial counsel testified:

> Q. Would that have been any strategy reason why the motion for mistrial or
> objection was not made?
>
> A. I mean I can think of a reason, but I don't recall the discussion.
>
> Q. Okay. But would that just be a guess at this point on your part?
>
> A. I mean, have -- I mean, you are asking me to recall something that occurred
> over eleven years ago. And I don't have specific recollections of every moment of
> the case. I mean, I remember the ebb and flow. The tensions that were created
> during the trial. I remember some of the defense problems that we were having.
> And I somewhat remember that one of the difficulties that we were having was to
> allow to get into the jury that there was a reason for Mr. Boyd to feel that
> he was being singled out by the Sheriff 's department. And in my mind I
> remember I don't know. And I remember thinking about it, but I don't know if it
> was articulated, that this allowed a window of opportunity now to show why the
> police were out to get Mr. Boyd.
>
> Q. You are saying that an outburst by a former alleged rape victim
>
> A. Right.
>
> Q. -- who is not testifying - -
>
> MR. SILVERSHEIN: Objection. Leading.
>
> MS. KEFFER; just want to summarize what he is saying.
>
> THE COURT: That's fine. Go ahead.
>
> BY MS. KEFFER:
>
> Q. Who was testifying.
>
> A. Right.
>
> Q. Would have allowed you to get that out?

A. A trial not just what occurs as pieces paper, and the words that are in it. I mean,  I've had a trial where a man was accused of raping his daughter. Everything was bleak and looking bad. However, when the little girl walked in the room and waved to her father, that was enough and I won the trial.

And so it's little things that aren't in the record. It's those little nuances that you can take advantage of. And for some reason in my mind that was something that the jury could say when the argument was being made that this why they are out for Mr. Boyd.

Q.  Do you have a specific recollection not making an objection or moving for mistrial on that ground?

A. You know there was no objection and no motion for mistrial.

Q. Okay. And the instance that you just said with the father and young daughter that waved to him, that certainly was an emotional occurrence that was favorable to you?

A. Yes.

[ECF No. 33-14] at 138-39.  Given the above testimony, the factual determinations that defense counsel "immediately perceived the outburst incident as an opportunity to exploit", "believed the incident at issue in this case presented a rare opportunity to allow the jury to connect…," and that "defense counsel clearly considered and rejected alternative courses of actions" are not entirely supported by the record.  However, these findings are not unreasonable based on the record, and Petitioner has not rebutted them by clear and convincing evidence.

> When evaluating whether a state court's decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding" under § 2254(d)(2), "[w]e may not characterize ... state-court factual determinations as unreasonable 'merely because [we] would have reached a different conclusion in the first instance.'" *Brumfield v. Cain*, 576 U.S. ——, —— –, 135 S.Ct. 2269, 2277, 192 L.Ed.2d 356 (2015) (second alteration in original) (quoting *Wood v. Allen*, 558 U.S. 290, 301, 130 S.Ct. 841, 849, 175 L.Ed.2d 738 (2010)). Section 2254(d)(2), like § 2254(d)(1), requires that federal courts afford state court factual determinations "substantial deference." *Id*. If "[r]easonable minds reviewing the record might disagree about" the state court factfinding in question, "on habeas review that does not suffice to supersede" the state court's factual determination. *Rice v. Collins*, 546 U.S. 333, 341–42, 126 S.Ct. 969, 976,

163 L.Ed.2d 824 (2006). We also presume findings of fact made by state courts are correct, unless a petitioner rebuts that presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). "When considering a determination of a mixed question of law and fact, such as a claim of ineffective assistance of counsel, the statutory presumption of correctness applies to only the underlying factual determinations." *Tanzi v. Sec'y, Fla. Dep't of Corr.*, 772 F.3d 644, 651 (11th Cir. 2014).

*Daniel v. Comm'r, Ala Dep't of Corr.*, 822 F.3d 1248, 1259 (11th Cir. 2016). Applying substantial deference to the Florida Supreme Court's determination, Petitioner's claim must fail. Petitioner's claim also fails under a *de novo* review. "Courts can, however, deny writs of habeas corpus under § 2254 by engaging in *de novo* review when it is unclear whether AEDPA deference applies, because a habeas petitioner will not be entitled to a writ of habeas corpus if his or her claim is rejected on *de novo* review. *See* § 2254(a)." *Berghuis v. Thompkins*, 560 U.S. 370, 390 (2010).

Here, counsel failed to object to an outburst made from the gallery during the penalty phase. In order to show deficient performance, the Petitioner would have to show that "no competent counsel would have taken the action that his counsel did take." *Gissendaner v. Seaboldt*, 735 F.3d 1311, 1323 (11th Cir. 2013) (quoting *Chandler v. United States*, 218 F.3d 1305, 1315 & n.16 (11th Cir. 2000) (en banc)). He has not done so. While the Court is not convinced that counsel made a conscious decision to not object at the time of the outburst as the state court determined, the Court cannot find that no competent counsel would have taken that action. Certainly, a lawyer could choose not to object and draw attention to the matter; instead, simply continue with the testimony and keep the penalty phase going without interruption. Mr. Laswell testified that the statement was already made, and the better course was to move on from it rather than draw attention to it. A reasonable lawyer could have pursued this trial strategy.

"*Strickland* demands an 'objective inquiry into the reasonableness of counsel's performance—an inquiry which asks only whether 'some reasonable lawyer' could have pursued

the challenged course of conduct. . .'" *Bates v. Sec'y, Florida Dep't of Corr.*, 768 F.3d 1278, 1288 (11th Cir. 2014).  Moreover, Mr. Ongley testified that it is the purview of counsel as to whether you want to make an issue out of objectionable facts or let them "pass by."  [ECF No. 33-14] at 148.  The Court does not find that decision to be inherently deficient.  "Judicial scrutiny of counsel's performance must be highly deferential," indulging the "strong presumption that counsel's conduct [fell] within the wide range of reasonable professional assistance" and bearing "in mind that counsel's function ... is to make the adversarial testing process work in the particular case." *Strickland*, 466 U.S. at 689–90.

Having found that counsel's performance was not deficient, the Court need not make a determination on the prejudice prong of *Strickland*.  *See Strickland*, 466 U.S. at 697, 104 S. Ct. at 2069. ("[T]here is no reason for a court deciding an ineffective assistance claim to ... address both components of the inquiry if the defendant makes an insufficient showing on one.").  Accordingly, habeas relief is DENIED as to this issue.

## 2.    Appellate Counsel

The Petitioner's second sub-claim for federal habeas relief is that "direct appeal counsel failed to raise the fundamental error on direct appeal resulting from a highly prejudicial spectator outburst at trial." [ECF No. 1] at 63.  At issue is the same outburst which was the subject of the previous claim wherein a woman seated in the courtroom audience exclaimed that the Petitioner had "raped" her.  *See* [ECF No. 1] at 43.  The Petitioner argues that "[h]ad direct appeal counsel raised a claim alleging that the prejudicial outburst amounted to fundamental error, there is a reasonable probability that Mr. Boyd's argument 'would have won the day in [2005] on direct appeal.'" *Id.* at 66.

The State disagrees with this assessment. [ECF No. 28] at 58. The State argues that this claim "would not have been meritorious on direct appeal as the outburst was invited" because the "[d]efendant goaded J.M. into responding, when he twice pointed her out to the jury as the source of his sperm the police used to plant on DD." *Id*. at 58-59. Further, the State asserts that there was no fundamental error because there was no misconduct on the part of the prosecutor. *Id*. at 59. Finally, the State concludes with the well-known principle that "[i]f appellate counsel's informed belief is that an issue is not meritorious, he need not raise it on appeal." Therefore, the State argues the denial of relief by the Florida Supreme Court was not an unreasonable application of clearly established federal law nor was it an unreasonable determination of facts. *Id*. at 57.

In analyzing this claim, the Florida Supreme Court found that the Petitioner did not establish that there was fundamental error. The Petitioner was required, under Florida law, to show fundamental error because trial counsel did not preserve the issue for appeal during the penalty phase. *See Boyd v. State*, 200 So. 3d 685, 708 (Fla. 2015). Having established that appellate counsel would have had to show fundamental error on appeal, the court: (1) reviewed the substantive claim, (2) found it meritless, and (3) determined that "[t]he failure to raise meritless claims does not render appellate counsel's performance ineffective"). The court did not conduct a formal *Strickland* analysis.[25]

> To the contrary, Boyd goaded the spectator by partially standing while on the witness stand and twice pointing at her while insisting she was the source of

---

[25] The court did reference "prejudice" which is the second element of the two-prong *Strickland* analysis; however, the court's prejudice analysis was conducted in determining whether fundamental error occurred. "Concerning improper comments made in the penalty phase, to be fundamental error the comments 'must be so prejudicial as to taint the jury's recommended sentence." *Boyd*, 200 So. 3d at 708. (internal citations omitted). This is a different prejudice standard than the one applicable here. To establish prejudice at direct appeal, under *Strickland*, the Petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." 466 U.S. at 694. In other words, but for appellate counsel's failure to raise this claim of trial error, the Petitioner would have prevailed on direct appeal. To satisfy the prejudice prong, the "likelihood of a different result must be substantial, not just conceivable." *Harrington*, 131 S. Ct. at 792.

Boyd's semen that law enforcement officers collected in the State's attempt to convict him of a prior sexual battery charge. The record does not reflect that the spectator was causing any disruption during the penalty phase proceeding, or that observers other than the State or Boyd knew of her presence. In addition, before the asserted outburst, the jury was twice informed that Boyd was the subject of prior sexual battery charges. And, although the jury could have easily inferred that the subject spectator was the alleged victim from at least one of the charges, there was no reasonable basis upon which to believe that Boyd actually committed the offense given that the jury was also informed of his acquittals from all prior charges. In light of these circumstances, whatever prejudice that Boyd may have suffered as a result of the outburst is self-inflicted. Further, we are not convinced that the jury unanimously recommended the sentence of death only with the assistance of this particular incident. Accordingly, we deny this claim as meritless. *See Schoenwetter*, 46 So.3d at 563; *Rutherford v. Moore*, 774 So.2d 637, 644 (Fla.2000) ("The failure to raise meritless claims does not render appellate counsel's performance ineffective.").

*Id.* at 708. Here, the opinion alludes to but without explicitly finding counsel's performance was not deficient; the first prong of any *Strickland* analysis. It determined that the failure to raise a meritless claim does not constitute ineffective assistance, the hallmark of any deficient appellate performance. It is axiomatic that counsel cannot be deficient for raising a non-meritorious objection. *Owen v. Sec'y for Dep't of Corr.*, 568 F.3d 894, 915 (11th Cir. 2009). As the underlying claim lacks merit, [] counsel cannot be deficient for failing to raise it.

> In assessing an appellate attorney's performance, we are mindful that "the Sixth Amendment does not require appellate advocates to raise every non-frivolous issue." *Id*. at 1130-31. Rather, an effective attorney will weed out weaker arguments, even though they may have merit. *See id*. at 1131. In order to establish prejudice, we must first review the merits of the omitted claim. *See id*. at 1132. Counsel's performance will be deemed prejudicial if we find that "the neglected claim would have a reasonable probability of success on appeal." *Id.*

*Philmore v. McNeil*, 575 F.3d 1251, 1264-65 (11th Cir. 2009).

Moreover, when the state courts have already answered the question of how an issue would have been resolved under that state's law had appellate counsel done what the petitioner argues he should have done, "federal habeas courts should not second-guess them on such matters" because

"it is a fundamental principle that state courts are the final arbiters of state law." *Callahan v. Campbell*, 427 F.3d 897, 932 (11th Cir. 2005) (quotation marks omitted). "A state's interpretation of its own laws or rules provides no basis for federal habeas corpus relief, since no question of a constitutional nature is involved." *McCullough v. Singletary*, 967 F.2d 530, 535 (11th Cir. 1992); *Hunt v. Tucker*, 93 F.3d 735, 737 (11th Cir. 1996) (federal courts entertaining petitions for writs of habeas corpus must follow the state court's interpretation of a state law absent a constitutional violation). Given that the court reviewed the facts and made a legal determination pursuant to state law (*i.e.*: preservation of argument for appeal and invited error), the remaining task for the Court is to review the factual findings which served the basis of the Florida Supreme Court's legal determination for reasonableness. If the factual findings were reasonable, then the Petitioner is not entitled to federal habeas relief.

In denying the claim, the state court found that the claim would not have had success on appeal because: (1) the Petitioner invited the error, (2) the spectator was not causing any disruptions, (3) the jury had been unaware of her presence, and (4) that before the outburst the jury had twice been informed that the Petitioner was the subject of sexual battery investigations. The record supports these findings. While the penalty phase transcript does not indicate the physical movements of the Petitioner or the spectator during the outburst in the courtroom, the State called Ms. Daphne Bowe (the victim's mother and daily observer during the trial) to testify in post-conviction regarding what she observed on the day at issue. [ECF No. 33-14] at 166-68. In order for the Petitioner to be granted federal habeas relief, he must show that these findings of fact resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding and must rebut, by clear and convincing evidence,

the presumption of correctness given to the state court's factual findings. *See* 28 U.S.C. §§ 2254(d)(2) & (e)(1). He has not done so. Habeas relief is DENIED as to this issue.

### C.  Claim III:  Ineffective Assistance of Counsel for Failure to Conduct Adequate Voir Dire

The Petitioner's third claim for federal habeas relief is that trial counsel failed to "conduct the most rudimentary inquiry of potential jurors to inquire further into their statements." [ECF No. 1] at 80. The Petitioner asserts that "[d]efense counsel's comments, conduct, and failure to engage in any meaningful questioning and discourse with the prospective jurors was patently unreasonable." *Id.* at 78. Specifically, the Petitioner argues that his trial counsel should have conducted questioning of Juror Striggles "following vague and questionable answers regarding her prior criminal history." *Id*. at 80. Had counsel done so, the additional voir dire would have "revealed grounds for *statutory disqualification* pursuant to Florida law that would have required the trial court to *sua sponte* remove Striggles from service."   *Id*. at 79. The Petitioner contends that he was prejudiced by Juror Striggles' presence on the jury because her "untruthful and abbreviated responses do not provide confidence that she could be fair." *Id.* at 91. The Petitioner further asserts that "[w]hile juror dishonesty is not by itself sufficient to demonstrate bias, it is often a powerful indicator that it exists." *Id*. at 92. The Petitioner also contends that the Florida Supreme Court's finding that he "gave informed consent to his defense team's 'overall trial strategy' is incorrect and not supported by the record." *Id.* at 95.

The State responds that trial counsel had multiple decades of experience selecting juries and they determined that "jurors who had prior difficulties with the criminal justice system are more favorable to the defense than to the state." [ECF No. 28] at 39. Further, the State asserts that the Petitioner has not pointed to any United States Supreme Court cases that hold that counsel

may not rely on prior questioning by the state or court nor any case which indicates that an abbreviated *voir dire* strategy is disfavored." *Id*. at 41.

The Florida Supreme Court found as follows:

> Boyd first claims that defense counsel's failure during voir dire to question Juror Striggles more in depth about information she revealed concerning her juvenile delinquency record prejudicially denied him the opportunity to discover information material to excusing Striggles from jury service. However, Boyd has not proffered any additional questions that defense counsel should have asked Striggles during voir dire that would have elicited the now-complained-of information from her. *See Green v. State*, 975 So.2d 1090, 1105 (Fla. 2008) ("Second, Parker did not render ineffective assistance in failing to ask Guiles more questions, because an allegation that there would have been a basis for a for cause challenge if counsel had followed up during voir dire with more specific questions is speculative." (citing *Johnson v. State*, 903 So.2d 888, 896 (Fla.2005); *Reaves v. State*, 826 So.2d 932, 939 (Fla. 2002))). Nevertheless, as discussed above, the record in this case does not show that Striggles harbored any bias against Boyd, and thus, it is not reasonable to conclude that she rendered her duties in any manner other than fairly and impartially. *See Carratelli*, 961 So.2d at 324. The record also reflects that Boyd participated in the jury selection process, agreed to an abbreviated voir dire, and did not object to seating Striggles as a juror because he gave informed consent to his defense team's overall trial strategy. This belies Boyd's contention that he was prejudiced by Striggles' presence on his jury. *See Gamble v. State*, 877 So.2d 706, 714 (Fla.2004) ( "[I]f the defendant consents to counsel's strategy, there is no merit to a claim of ineffective assistance of counsel."). Therefore, Boyd has failed to show that counsel's declination to ask Striggles more specific voir dire questions about her criminal record affected the fairness and reliability of the trial proceedings such that our confidence in the outcome is undermined. *See Long*, 118 So.3d at 805. Accordingly, we deny Boyd any relief as to this subclaim.

*Boyd v. State*, 200 So. 3d 685, 699–700 (Fla. 2015). Here, the state court denied the claim based on the prejudice prong of *Strickland*.[26] In doing so, it considered the facts in the record and then

---

[26] The state court did not address the deficiency prong in any material way; however, this does not affect the Court's conclusion or a reasonableness analysis. The court did not need to reach a determination on the performance prong in order to deny habeas relief. *See McClain v. Hall*, 552 F.3d 1245, 1251 (11th Cir. 2008) ("We may decline to decide whether the performance of counsel was deficient if we are convinced that [the petitioner] was not prejudiced."). In fact, the Supreme Court has made clear that "[t]he object of an ineffectiveness claim is not to grade counsel's performance" and therefore, "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." *Strickland*, 466 U.S. at 697.

applied the law that the Petitioner must show that counsel's alleged deficiency would have had to have "affected the fairness and reliability of the trial proceedings such that our confidence in the outcome is undermined." *Id*. at 700. This is a reasonable application of clearly established federal law to the facts in the record. In order to establish *Strickland* prejudice, the defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. The Court defines a "reasonable probability" as one "sufficient to undermine confidence in the outcome." *Id*. And "[i]t is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding." *Id.* at 693.

The Court reviews the Petitioner's claim applying the clearly established federal law of *Strickland* and its progeny while also giving deference to the state court's decisions as required by the AEDPA. The Petitioner did not show, either in the state courts or here, that the complained of juror was biased against him. He has offered no support for his claim other than the undisputed fact that the juror at issue was, indeed, a convicted felon.[27] The Petitioner has failed to show that the juror's presence on the jury resulted in a conviction and death sentence that otherwise would have been not guilty. Without more, the Court is unable to find that the state court's decision failed to meet the standards set by the AEDPA. In other words, as a condition for obtaining habeas corpus relief from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was *so lacking in justification* that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.

---

[27] As stated in Claim I(A) above, the Petitioner requested but was denied the opportunity to interview Juror Striggles or call her to testify at the evidentiary hearing. However, the Petitioner was allowed to call his two attorneys who are the subject of this claim to testify during the hearing and could have presented and admitted evidence through them. *See* [ECF No. 33-12] at 118-39.

*See Harrington v. Richter,* 131 S. Ct. 770, 783 (2011) (emphasis added). He has not done so. Habeas relief is DENIED as to this claim.

**D.**     **Claim IV: Due Process Violation for Summary Denial of Post-Conviction Claims**

The Petitioner's fourth claim for federal habeas relief is that the "Florida Supreme Court's summary denial of several of Petitioner's claims was an unconstitutional administration of its laws that denied him a full and fair hearing in post-conviction." [ECF No. 1] at 98. The Petitioner further argues that "[b]ecause the records and files did not conclusively refute Petitioner's claims, Florida law provided that he was entitled to an evidentiary hearing." *Id*. at 99. The Petitioner also seeks relief for his counsel's: (a) failure to adequately conduct voir dire regarding jurors' personal knowledge of the case, (b) failure to challenge admissibility of evidence pursuant to *Frye*, and (c) failure to utilize forensic experts. The Petitioner seeks a "full and fair hearing on his post-conviction claims for relief." *Id*. at 141.

Review of the record shows that the actual substance of Petitioner's federal habeas claim is far from clear. First, he argues that "the state court's denial of that opportunity [evidentiary development] amounted to a denial of due process." [ECF No. 1] at 98. The underlying legal basis for this argument is a Florida Rule of Criminal Procedure and case law from the Florida Supreme Court. *See id.* at 98-100. Yet, the Petitioner also asserts that the Florida Supreme Court's merits determination of the claims that were summarily denied without hearing was an unreasonable determination of facts based on the state court record. *See id*. at 107, 123-24. This §2254 argument, however, is buttressed by his original assertion that these claims required evidentiary development so that the Petitioner "could have established entitlement to relief." *Id*. at 109. In essence, the Petitioner argues that the state court's factual findings are unreasonable because had he been able to prove the facts he alleged, he would have been entitled to relief. However, the

Florida Supreme Court's opinion indicated that no further facts need to be proved because, even if the Petitioner proved the facts as alleged, he would not be entitled to relief.

The State argues that even though the Petitioner did not receive an evidentiary hearing on his claims, the state court conducted a review of those claims and, therefore, AEDPA deference is due under §2254(d)(1). [ECF No. 28] at 60. The States then argues the merits, or lack thereof, of each underlying sub-claim. *Id*. at 63-77. The State does not address the cognizability and this Court's jurisdiction to grant habeas relief on a claim for a state court's failure to conduct an evidentiary hearing.

To begin, if the Petitioner is arguing a freestanding claim for federal habeas relief based on the denial of an evidentiary hearing in state court, it is not cognizable here.[28] *Anderson v. Sec'y, Dep't of Corr.*, 462 F.3d 1319 (11th Cir. 2006) ("It is beyond debate that Petitioner is not entitled to relief on these grounds. We have held the state court's failure to hold an evidentiary hearing on a petitioner's 3.850 motion is not a basis for federal habeas relief.") (citing *Spradley v. Dugger*, 825 F.2d 1566, 1568 (11th Cir. 1987)); *see Carroll v. Sec'y, Dep't of Corr.*, 574 F.3d 1354, 1365 (11th Cir. 2009), cert. denied, 130 S. Ct. 500 (2009).

At the conclusion of each sub-claim for federal habeas relief in the instant petition, the Petitioner does not argue the substance of the claim. Rather, he argues about the Florida Supreme

---

[28] For reasons not clear to the Court, the Petitioner cites *Staley v. Sec'y, Dep't of Corr.*, 2008 WL 2385488 (M.D. Fla. 2008). [ECF No. 1] at 98, 111, & 140. *Staley* clearly articulates why this claim must be denied. "Federal courts have jurisdiction to entertain petitions for habeas relief only from persons who are "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Claims which are not based upon a violation of the United States Constitution are not cognizable in a petition for writ of habeas corpus filed pursuant to 28 U.S.C. § 2254(a). *Barclay v. Florida,* 463 U.S. 939 (1983); s*ee also Wainwright v. Goode*, 464 U.S. 78 (1983); *Engle v. Isaac*, 456 U.S. 107, 119 (1982). Staley's claim of error in the postconviction proceeding fails to raise a claim of federal constitutional magnitude which is cognizable in a § 2254 petition. *See Spradley v. Dugger*, 825 F.2d 1566, 1568 (11th Cir. 1987) ("Neither the state court's failure to hold a hearing on petitioner's 3.850 motion nor its failure to attach the relevant portions of the record in any way undermines the validity of petitioner's conviction")."

Court's failure to provide evidentiary development of his claim. The Petitioner seeks relief in the form of a reversal of the "summary denial of these claims" and a "full and fair hearing on his post-conviction claims for relief." *Id.* at 141. While the Court finds the Petitioner's federal habeas claim, in sum and substance, to be that the state court erred when it denied him an evidentiary hearing as opposed to a substantive claim of ineffective assistance of counsel, the Court also acknowledges that it may be inarticulate drafting on the part of the Petitioner which causes the Court to reach this conclusion. Therefore, the Court will consider the merits of the underlying ineffective assistance of counsel sub-claims regardless of any possible procedural bars.

The Court has reviewed the record and the Florida Supreme Court's decision. The Court concludes that the Florida Supreme Court's decision is not an unreasonable determination of the facts in light of the state court record.

### 1.    Failure to Adequately *Voir Dire* Jurors' Personal Knowledge of the Case

The Petitioner argues that guilt phase counsel was ineffective for failing to adequately conduct *voir dire* regarding the jurors' personal knowledge of the case. *Id.* at 100. During *voir dire*, there were prospective jurors who indicated that they had prior knowledge of the case. According to the Petitioner, the jurors were questioned in front of the entire venire and certain of those jurors ultimately served on the Petitioner's jury. The Petitioner contends that his guilt phase counsel was ineffective for failing to question the jurors regarding their personal knowledge of the case and by failing to provide follow-up questions; and, therefore, the Petitioner was prejudiced as he was denied a fair and impartial jury. *Id.* at 105.

The State argues that the Petitioner must show actual bias to overcome the presumption that jurors are impartial. [ECF No. 28] at 64. The State further argues that the Petitioner approved of the voir dire as conducted by guilt phase counsel and federal law prohibits him from arguing

ineffective assistance of counsel for failing to strike a juror that he approved. *Id.*   Moreover, the

State contends that because the decision of the Florida Supreme Court was not unreasonable,

federal habeas relief must be denied. *Id.* at 66.

The Florida Supreme Court found:

The transcript in this case indicates that the State conducted its voir dire prior to
the defense and questioned the prospective jurors about pretrial publicity and their
knowledge of the case. Juror Striggles indicated that she had previously overheard
her family conversing about an aspect of the case related to the Boyd Funeral
Home, which was a business owned and operated by Boyd's family. However,
she immediately stated that she knew nothing about the business or this case.
Juror Berberich likewise stated that, although she may have learned about Boyd's
case after seeing it on television or reading about it in a newspaper, she did not
recall many details other than remembering Boyd's name. Thus, because any
follow-up questioning by defense counsel likely would have elicited minimum
information not already brought out by the State's voir dire, or otherwise would
have elicited cumulative information, Boyd has failed to prove the deficiency
prong under the *Strickland* standard. *See id.* ("The prosecutor also questioned the
prospective jurors about their exposure to news reporting. In light of this
questioning of the prospective jurors, we cannot fault trial counsel for failing to
repeat the questioning."); *Cole v. State*, 841 So.2d 409, 415 (Fla.2003).

Assuming, however, that counsel was remiss in not asking Jurors Striggles and
Berberich additional questions about pretrial publicity and their knowledge of this
case, no prejudice resulted from such inaction. When asked by the State, both
prospective jurors explicitly assured that they would not permit whatever
information concerning Boyd's case to which they may have been exposed to
affect them one way or the other during deliberations if chosen to serve on the
jury. Therefore, we find that the record positively refutes a showing that either
juror had actual bias against Boyd. *See Carratelli*, 961 So.2d at 327 ("[T]he en
banc [district] court ... held that [j]uror Inman's slight familiarity with the case did
not rise to th[e] level of actual bias necessary for post-conviction relief. We agree.
The record plainly shows that juror Inman held no firm opinion except that he
could be fair, listen to the evidence, and follow the law. Thus, Carratelli fails to
demonstrate prejudice under *Strickland*.") (internal citation omitted).
Accordingly, we affirm the trial court's summary denial of this claim and deny
Boyd any relief thereto.

*Boyd v. State*, 200 So. 3d 685, 703 (Fla. 2015).

The Florida Supreme Court cited to *Strickland v. Washington*, which is the clearly established federal law applicable to this claim, and conducted an analysis of both the deficiency and prejudice prongs of the correct standard. *See Boyd*, 200 So. 3d at 702-03. The court then applied the specific facts existing in the state court record to the *Strickland* standards. This analysis comports with the process as contemplated by AEDPA.

The trial transcript shows that during voir dire the State questioned the entire venire panel.

MR. LOE: I'm not going to get into a lot of the facts, but just to see if you might have read something or heard something in the media. I'm going to broaden it a little.

A car broke down on 95 at Hillsboro Boulevard. The lady in the car went to get gas. December of 1998.

Does that cue or key anything that might help you to remember whether or not you have been exposed to the media regarding this case? Would you raise your hand if it has?

(No response.)

MR. LOE: I don't see any additional hands. So, I'm going to address my question then to the five that are in the back row.

Ms. Striggles - -

MS. STRIGGLES: Yes.

MR. LOE: - - when was it that you felt that you've either seen or heard something in the media regarding this case?

MS. STRIGGLES: I have heard my family talk about it. I don't know if it's the same gentleman, if it was related to the Boyd Funeral Home, but my family has spoken about it.

MR. LOE: Okay. And I'm going to try to narrowly ask questions so that if you've heard something, since the rest of the people in the room haven't, we'd like the trial to take place here in the courtroom as opposed to in the media. So, I'm going to try to narrowly draft my questions to you.

Having heard discussion or had discussion with your family regarding Mr. Boyd and hearing about the Boyd Funeral Home chain, is that going to affect you one way or the other with respect to your deliberations if you are chosen as a juror?

MS. STRIGGLES: No, because I don't know.

MR. LOE: Okay. And that's fair. You don't believe everything you read in the paper, do you?

MS. STRIGGLES: No. sir.

MR. LOE: Good. Is there anything that might happen once you're back in the jury room because you have had some media exposure?

MS. STRIGGLES: No sir.

MR. LOE: Okay. You could put it out of your mind and not let it affect you in any way, shape or form?

MS. STRIGGLES: Yes, sir.

* * *

MR. LOE: Ms. Berberich, print or TV, did you have you exposure to which?

MS. BERBERICH: I don't remember seeing it on television although I might have. I read the Sun Sentinel also.

MR. LOE: Okay. Do you remember how long ago it was that you read an article or articles about this case?

MS. BERBERICH: No, and to be honest I don't remember very many details. I remember Mr. Boyd's name and some things that's all.

MR. LOE: All right. Would you be able to keep that from affecting your deliberations if you are selected as a juror in this case?

MS. BERBERICH: Yes.

MR. LOE: Would you agree with me that it would be inappropriate to allow media reports to affect the deliberations in any type of case?

MS. BERBERICH: I agree.

[ECF No. 30-4] at 60-61, 64-65.

Given the above testimony, the Court finds the Florida Supreme Court's determination on the deficiency prong of the *Strickland* analysis is reasonable. As this is a *Strickland* claim analyzed under the deferential lens of §2254(d), the Court's AEDPA determination of the Florida Supreme Court's decision is "doubly deferential." *Knowles v. Mirzayance*,129 S. Ct. 1411, 1413 (2009). [29] Review of counsel's conduct is to be highly deferential. *Spaziano v. Singletary*, 36 F.3d 1028, 1039 (11th Cir. 1994); *White v. Singletary*, 972 F.2d 1218, 1220 (11th Cir. 1992) ("Courts should at the start presume effectiveness and should always avoid second-guessing with the benefit of hindsight."); *Atkins v. Singletary*, 965 F.2d 952, 958 (11th Cir. 1992). Because a "wide range" of performance is constitutionally acceptable, "the cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between." *Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir. 1994).

As the *Harrington* decision emphasized, because the deficiency inquiry is governed by AEDPA, the question is not just if counsel's decisions were reasonable, but whether fairminded jurists could disagree about whether the state court's denial of the ineffective assistance claim was inconsistent with Supreme Court precedent or was based on an unreasonable determination of the facts. *See Harrington*, 131 S. Ct. at 785–86; 28 U.S.C. §2254(d). If fairminded jurists could reasonably disagree, then habeas relief should be denied. The issue presented is not whether counsel would have garnered different or more insightful information had he asked questions of the witnesses during voir dire but; rather, was his performance constitutionally ineffective for failing to do so based on the information he had before him at the time of voir dire. Given that the jurors were previously questioned about pretrial publicity and their knowledge of the case, it was

---

[29] There is an initial level of deference applied to counsel's performance and then a second level of deference given to the state court when evaluating the deficiency prong. *See Yarborough v. Gentry*, 540 U.S. 1, 6 (2003).

reasonable for guilt phase counsel to not ask similar questions of the same jurors. Accordingly, there is little doubt that fairminded jurists could reasonably disagree about the Florida Supreme Court's conclusion.[30] Habeas relief is DENIED on this claim.

### 2. Failure to Challenge Admissibility of Evidence pursuant to *Frye*

The Petitioner's second argument is that the Florida Supreme Court's affirmance of the summary denial of his ineffective assistance of counsel claim based on a failure to request a *Frye*[31] hearing was error. [ECF No. 1] at 111. The Petitioner argues that his counsel should have requested a *Frye* hearing to challenge the underlying scientific principles and testing procedures used on the forensic evidence at issue during trial. *Id*. at 112. The Petitioner asserts that "[a] certain field or methodology can be widely accepted within the forensic community, yet it does not relieve counsel of challenging the accuracy and reliability of the specific techniques, methodologies, and results of a given expert." *Id*. at 114.

The State argues that, in Florida, *Frye* hearings are used only when the science at issue is new or novel. [ECF No. 28] at 71. (citations omitted). As such, an attorney can never be found to be ineffective for failing to raise or preserve a meritless issue. *Id.* The State contends that the Florida Supreme Court's determinations regarding the preservation of meritless issues is not an unreasonable application of clearly established federal law and deserves deference. *Id*. at 74.

The Florida Supreme Court found:

> As Boyd concedes in his initial brief, the forensic methodologies and evidence
> presented at trial: trace and microscopic fiber analysis; forensic odontology and

---

[30] Having failed to show deficiency, the Court need not conduct a prejudice analysis. *See generally, Hall v. Head,* 310 F.3d 683, 699 (11th Cir. 2002).

[31] *Frye*, 293 F. at 1013. Since the Petitioner's trial, Florida adopted the federal standard governing the admissibility of scientific evidence first announced by the United States Supreme Court in *Daubert v. Merrell Dow Pharmaceuticals, Inc*., 509 U.S. 579, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993), which replaced the *Frye* standard. Ch. 2013–107, at 1461–63, LAWS OF FLA, consistent with *Daubert*, section 90.702, Florida Statutes (2013).

bite-mark analysis; and Short Tandem Repeat (STR) DNA technology, were neither new nor novel at the time of his 2002 trial. *See, e.g., Long v. State*, 610 So.2d 1276, 1281 (Fla. 1992) (holding State's hair, fiber, and tire-track evidence was admissible in trial for first-degree murder to establish defendant's identity and to connect him to victim); *Mitchell v. State*, 527 So.2d 179, 181 (Fla.1988) (recognizing admissibility of expert testimony concerning bite-mark analysis as an analytical methodology that is widely accepted in the scientific community); *Lemour v. State*, 802 So.2d 402, 407 (Fla. 3d DCA 2001) (holding use of STR DNA testing kit to obtain DNA test results did not present new scientific technique where kit used testing methods that were generally accepted by scientific community), review denied, 821 So.2d 297 (Fla. 2002); *Bradford v. State*, 460 So.2d 926, 929–30 (Fla. 2d DCA 1984) (approving admissibility of odontologist's expert testimony similar to bite-mark analysis (citing *Bundy v. State*, 455 So.2d 330 (Fla. 1984))). Boyd, therefore, has failed to demonstrate that a *Frye* hearing was necessary in this case and, in turn, that the trial court would have granted such a hearing had defense counsel requested one. *See Foster*, 132 So.3d at 69; *McDonald*, 952 So.2d at 495–96. As such, we conclude that defense counsel was not ineffective in this regard. *See Long*, 118 So.3d at 805 (holding defense counsel is not ineffective for failing to present meritless argument).

Boyd maintains that the 2009 National Academy of Sciences (NAS) report on forensic science, while it had not yet been published at the time of his 2002 trial, consisted of sources that were readily available at all relevant times and could have been utilized by defense counsel to challenge the methodology, procedures, and analyses of the forensic evidence for admissibility purposes at a *Frye* hearing. Because we have previously addressed this issue in principle, we are not persuaded by Boyd's argument.

In *Taylor v. State*, 62 So. 3d 1101 (Fla. 2011), we determined that trial counsel's decision not to request a *Frye* hearing to challenge the admissibility of DNA evidence was reasonable, given that the only authority proffered by the defendant that both challenged the use of DNA evidence and existed at the time of trial were academic articles and isolated, nonbinding decisions. Thus, we concluded that "[w]hile this evidence certainly could have been presented at trial, it was not essential for counsel to be determined to be effective." *Id.* at 1111 (emphasis in original).

As to the fiber and bite-mark evidence at issue here, Boyd points our attention mostly to a number of isolated articles, news reports, journals, book chapters, and other nonbinding decisions from federal circuits. While these documents were readily available at the time of his trial and could have been relied upon throughout the trial proceedings, Boyd has not cited to any authority that obligated counsel to rely upon the substance of the above documents in order to persuade the trial court to grant a *Frye* hearing. *See id*. Regarding the DNA analysis, Boyd has not articulated how or what part of the 2009 NAS report would have called into question the admissibility of the DNA expert testimony in this

case. Rather, he alleges deficiency in a conclusory fashion, asserting "counsel inexplicably failed to challenge the admissibility of DNA evidence analyzed by Bode" and "failed to seek laboratory protocols, validation studies, accreditation studies, equipment maintenance logs and operation manuals, contamination logs and laboratory error rates from any of the three DNA labs involved." Again, Boyd has not pointed to any authority which requires counsel to pursue these measures, and that indicates that counsel otherwise renders ineffective assistance if he fails to do so. *See id.*

To the extent Boyd characterizes the 2009 NAS report as newly discovered evidence, Boyd cannot show that the portions of the report upon which he relies could "not have been known by the trial court, the party, or counsel at the time of trial," and that he "or defense counsel could not have known of it by the use of diligence." *Schwab v. State*, 969 So.2d 318, 325 (Fla. 2007). As Boyd acknowledges, many of the statements in the Summary and Introduction sections of the NAS report to which Boyd cites appear in sources that were readily available at the time of his 2002 trial. Therefore, Boyd has failed to demonstrate that the NAS report constitutes newly discovered evidence. *See Johnston v. State*, 27 So.3d 11, 21–23 (Fla.2010) (finding 2009 NAS report was not newly discovered evidence, in part, because report cited existing publications, some of which were published before victim's murder).

For all of the above reasons, we find this subclaim to be without merit and deny relief thereto. *See Long*, 118 So.3d at 805.

*Boyd*, 200 So. 3d at 704–05.

While Petitioner's claim has several sub-claims and involves various scientific and technological data, its analysis pursuant to the AEDPA is straightforward. The Florida Supreme Court resolved this claim by applying state law. This application of state law is one for which the Court must defer. When the state courts have already answered the question of how an issue would have been resolved under that state's law, "federal habeas courts should not second-guess them on such matters" because "it is a fundamental principle that state courts are the final arbiters of state law." *Callahan v. Campbell*, 427 F.3d 897, 932 (11th Cir. 2005) (quotation marks omitted).

In conducting its analysis on whether the scientific evidence at issue was subject to the general acceptance of the scientific community at the time of trial sufficient to satisfy *Frye*, the Florida Supreme Court considered Florida, not federal, law regarding the admissibility of Short

Tandem Repeat DNA technology and fiber and bite-mark evidence. This Court must defer to the Florida Supreme Court. *Reaves v. Sec'y, Dep't of Corr.*, 717 F.3d 886, 903 (11th Cir. 2013) ("The Florida Supreme Court's interpretation of state law is binding on federal courts.").

The Court's only role here is to consider whether or not the Florida Supreme Court's resolution of the ineffective assistance of counsel claim pursuant to the Sixth Amendment was an unreasonable application of clearly established law. It was not. Having found that even if counsel had asked for a *Frye* hearing, the request would have been denied precludes a finding of deficiency pursuant to *Strickland*. This is consistent with federal law. It is axiomatic that counsel cannot be deficient for raising a non-meritorious objection. *See Owen v. Sec'y for Dep't of Corr.*, 568 F.3d 894, 915 (11th Cir. 2009). Since these claims were meritless, it was clearly not ineffective assistance of counsel for failing to pursue them. Moreover, even if the claim might have merit, that alone is not enough without a reasonable probability of success. *See Philmore v. McNeil*, 575 F.3d 1251, 1264-65 (11th Cir. 2009). The Court does not find the Florida Supreme Court's determination of this claim to be unreasonable. Therefore, habeas relief is DENIED as to this issue.

### 3.    Failure to Utilize Forensic Experts

The Petitioner's third sub-claim for federal habeas relief is that trial counsel was ineffective for failing to utilize forensic experts and "the Florida Supreme Court's findings constituted an unreasonable application of *Strickland* and were based upon unreasonable determinations of fact in light of the state court record." [ECF No. 1] at 124. The Petitioner asserts that "[p]roviding an effective defense necessitated rebutting that evidence with expert testimony and vigorously challenging the State's experts" and that defense counsel failed his obligation; therefore, a new trial is required if confidence in the outcome is undermined. *Id*. at 125. The Petitioner argues that

"[c]ounsel's failure to secure expert assistance to effectively challenge the State's case was not based upon any objectively reasonable strategy." *Id*. at 127.

The State argues that the Florida Supreme Court's decision "that trial counsel was not deficient for choosing to forego hiring a forensic expert was consistent with federal law as there is no requirement that forensic experts be hired." [ECF No. 28] at 75. The State contends that there was no need for a forensic expert because defense counsel was a former medical examiner with "unique qualifications." *Id.* at 77. Moreover, the State asserts that the Petitioner must do more than simply satisfy the *Strickland* standard; instead he must show that the state court applied *Strickland* to the facts of his case in an objectively unreasonable manner. *Id*.

The Florida Supreme Court denied this sub-claim on several grounds.

In this case, the record reflects that defense counsel filed a pretrial motion to grant defendant the concluding argument to the jury pursuant to then-applicable Florida Rule of Criminal Procedure 3.250. Throughout the course of trial, defense counsel was vigilant in ensuring that the defense did not admit any exhibits in order to preserve the trial court's grant of the closing argument "sandwich." And, other than Boyd's testimony, the defense did not admit any evidence. The record further shows that, using his experience as a former medical examiner, defense counsel Ongley thoroughly cross-examined each of the State's forensic expert witnesses to expose the shortcomings of their conclusions, and echoed those points during the defense's first closing argument. Also, as previously discussed, Boyd stressed during direct examination of his own testimony, and defense counsel Laswell reiterated in the second closing argument the defense's theory, that law enforcement planted incriminating evidence against Boyd in an attempt to frame him for the kidnapping, rape, and murder of Dacosta in this case. Likewise, the defense elicited cross-examination testimony from the State's witness that law enforcement personnel ordered Boyd's girlfriend to vacate the apartment unit where the murder occurred and the forensic evidence was collected, and also that law enforcement maintained unfettered control of the premises for several days.

In light of the above, Boyd failed to show from the record evidence that, in exercising a reasonable trial strategy, counsel did not perform the minimum requirements of professional conduct. *See Branch v. State*, 952 So.2d 470, 478–79 (Fla.2006) (agreeing with trial counsel that his ability to cross-examine the State's witnesses coupled with the importance of the right to present first and last closing arguments were sufficient reasons to avoid the presentation of pathologist and blood splatter expert, especially given that defense emphasized at trial that

> defendant did not commit the crime, and that neither post-conviction expert identified any substantial factual mistakes made by State's experts). Because, therefore, he cannot establish the deficiency prong under the *Strickland* standard, we deny Boyd relief as to this subclaim.

*Boyd v. State*, 200 So. 3d 685, 705–06 (Fla. 2015). In sum, the court found: (1) trial counsel's defense strategy was to not admit any evidence so as to retain its right to present a rebuttal closing argument pursuant to the Florida Rules of Criminal Procedure and (2) that defense counsel, also a licensed medical examiner, thoroughly cross-examined the State's experts. Therefore, the court found that counsel's performance was not deficient as required for a successful *Strickland* claim. Having conducted an independent review of the state court record, the Court does not find this to be an unreasonable application of clearly established federal law or an unreasonable determination of the facts. In order for the Petitioner to be granted federal habeas relief, he must show: (1) the determination that counsels' decision was strategic was an unreasonable determination of the facts *and* (2) the determination that counsels' strategic decision was a reasonable decision was an unreasonable application of clearly established federal law. *See Horton v. Zant*, 941 F.2d 1449, 1462 (11th Cir. 1991) ("The question of whether a decision was a tactical one is a question of fact. . . . [h]owever, whether this tactic was reasonable is a question of law.") (internal citation omitted)

.       The record reflects that Dr. James Ongley, Esq. was one of two attorneys assigned to represent the Petitioner during his capital case. Before Dr. Ongley was an Assistant Public Defender, he was an Associate Medical Examiner with the Medical Examiner's Office in Broward County. [ECF No. 33-14] at 140. Prior to his becoming a lawyer, he had testified as an expert witness in "many cases" including homicide cases. *Id.* at 141. In post-conviction, Dr. Ongley testified that he had "particularized knowledge about things such as DNA." *Id.* He further testified that he was "principally used to take on a lot of the technical witnesses and a lot of serious cases

in the office because of [his] background." *Id.* at 121. Dr. Ongley considered "technical witnesses" to be: "Expert witnesses. Medical examiners. Crime scene personnel. Lab personnel. Anyone who was offering expert witness opinions." *Id.* When dividing the workload with his co-counsel, Dr. Ongley was "given basically the expert, the technical witnesses to prep for, and to be responsible for during trial." *Id.*

Here, the Court reviewed the expert witness testimony and confirmed that Dr. Ongley did cross-examine those experts during the guilt phase. *See* [ECF No. 30-13] at 6-221. As such, the factual determinations of the Florida Supreme court are supported by the record. Moreover, the point when counsel determines "[w]hich witnesses, if any, to call, and when to call them, is the epitome of a strategic decision, and it is one that we will seldom, if ever, second guess,'" *Evans v. Sec'y, Fla. Dep't of Corr.*, 699 F.3d 1249, 1268 (11th Cir. 2012) (quoting *Waters v. Thomas*, 46 F.3d 1506, 1512 (11th Cir. 1995) (en banc)).

Based on the facts above, it was not unreasonable for the Florida Supreme Court to conclude that, because defense counsel was also an experienced forensic medical examiner, a reasonable trial strategy was to not call any rebuttal experts in order to preserve closing argument as provided in Fla. R. Crim. P. 3.250. Having found that counsel employed a sound trial strategy, it was likewise reasonable to conclude that counsel's performance was not deficient. Habeas relief is DENIED as to this issue.

### E.    Claim V:  Ineffective Assistance of Appellate Counsel for Failing to Challenge the Admissibility of the Petitioner's Statements.

The Petitioner's fifth claim for federal habeas relief is that his appellate counsel was ineffective for failing to assert a claim for a violation of the Petitioner's "rights against self-incrimination and due process" when his alleged inculpatory statement was admitted at trial. [ECF No. 1] at 147. The factual basis for this claim includes testimony from Detective Bukata. During

trial, the detective testified that during the interrogation, the Petitioner asked him "What took you so long to catch me?" *Id.* at 147.

The State argues that the denial of the suppression motion was proper because the record shows "that Defendant was given his *Miranda* warnings, he acknowledged he understood by stating 'all right' and talked with the detectives for a period during which time he was given breaks and offered sustenance and an opportunity to use the restroom." [ECF No. 28] at 83. The State further argued that the decision of the Florida Supreme Court was not contrary to or an unreasonable application of federal law as there was no reasonable probability of a different result. *Id.* at 84. Moreover, the State argues that on federal habeas review, the standard is not whether the *Strickland* standard was met but rather whether the Florida Supreme Court's determination and application was unreasonable. *Id.* at 85.

The Florida Supreme Court denied state habeas relief as follows:

Assuming trial counsel properly preserved the alleged error and that appellate counsel's failure to raise it satisfied the deficiency prong, such lack in performance does not undermine our confidence in the correctness of the result of the direct appeal proceedings. As indicated in our direct appeal decision, we found competent, substantial evidence to support Boyd's conviction of sexual battery:

The State presented substantial evidence that Boyd sexually battered Dacosta, including evidence that Boyd and Dacosta did not know each other before she encountered Boyd while looking for a ride back to her vehicle after obtaining gas at the Texaco station; that Boyd's semen was on Dacosta's inner thighs; that Dacosta's blood was in Boyd's apartment; and that Boyd's DNA was in material found under Dacosta's fingernails. The State also presented testimony establishing the chain of custody of the evidence collected, providing evidence against Boyd's theory that Detective Bukata planted evidence so that it would match Boyd's and Dacosta's DNA. Bruising on Dacosta's inner thighs and vaginal area was consistent with either consensual or nonconsensual intercourse. Dacosta was last seen alive with Boyd.

*Boyd*, 910 So. 2d at 181.

This same evidence, in addition to evidence "that Dacosta was stabbed with a Torx screwdriver thirty-six times in the chest and four times in the head" and "had twelve wounds on her right hand that were consistent with defensive wounds," supported our determination that there was also competent, substantial evidence to uphold the jury's guilty verdicts for armed kidnapping and premeditated murder. *Id*. at 182–84. Finally, we determined that, based on Boyd's convictions of sexual battery and armed kidnapping, the record on appeal further supported the first-degree murder conviction on the basis of felony murder. *Id*. at 182. Therefore, even had Boyd's statement: "What took you so long to catch me?" not be adduced at trial, his convictions and sentence of death would have been upheld, given the overwhelming amount of remaining evidence establishing Boyd's guilt. *See Williamson v. State*, 123 So.3d 1060, 1065–66 (Fla.2013) ("[T]o establish prejudice under *Strickland*, ... a court hearing an ineffectiveness claim must consider the totality of the evidence before the judge or jury, and a verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support." (citation omitted)); *Simmons v. State*, 105 So.3d 475, 492 (Fla.2012) (holding that, even if trial counsel's stipulation that defendant was source of semen found inside victim's body constituted deficient performance, no prejudice could be shown in light of overwhelming evidence of guilt, including evidence of victim's blood found inside defendant's car; testimony of eyewitnesses who had seen victim screaming for help from defendant's car on the night of the murder; and the fact that tire tracks of defendant's car were found near the location where victim's body was found). Accordingly, Boyd is not entitled to relief on this claim.

*Boyd*, 200 So. 3d at 707. Here, the Florida Supreme Court declined to conduct an analysis of the deficiency prong of *Strickland* because the claim could be resolved on the prejudice prong. The court concluded, after consideration of the other evidence that was admitted at trial in support of the Petitioner's conviction, that even if the Petitioner's statement had "not be adduced at trial, his convictions and sentence of death would have been upheld, given the overwhelming amount of remaining evidence…" *Id*.

Prior to trial, defense counsel filed a motion to suppress. [ECF No. 30-1] at 37- 38. Counsel argued that the Petitioner's statement was "elicited without the benefit of *Miranda* warnings" and was "obtained illegally, but also, . . .it is not relevant." *Id*. A pre-trial hearing on the motion to suppress was held on November 2, 2001. [ECF No. 31-12] at 117. Defense counsel began the

hearing by advising the court that "I don't think this would be dispositive to the case, your Honor, but I don't want the supremes to think I slept through this whole thing." *Id*. at 118. The defense made no argument and called no witnesses; rather, counsel "rest[ed] on the motion." *Id*. at 119. The State presented the testimony of Broward Sherriff's Detective Glenn Bukata. *Id*. The trial court denied the motion and the Petitioner's statement was admitted at trial. [ECF No. 30-12] at 93. On direct appeal, appellate counsel did not raise the admission of this statement into evidence as a violation of the Petitioner's rights against self-incrimination and due process. Here, the Petitioner argues that failure constitutes ineffective assistance of counsel. [ECF No. 1] at 148.

The task before this Court is to determine whether or not the Florida Supreme Court's conclusion was an unreasonable application of clearly established federal law. Here, trial counsel filed the motion to suppress which was denied, and appellate counsel failed to raise the issue on direct appeal. Assuming that failure was deficient, to have prevailed at the Florida Supreme Court, the Petitioner must have shown that had his appellate counsel raised the claim on direct appeal that there would have been a reasonable likelihood of success. The Florida Supreme Court, the court which would have decided the claim on its merit on direct appeal, has said it would not have. This Court cannot find that to be unreasonable. Absent a finding that the underlying claim would have had a reasonable likelihood of success on appeal, the Petitioner cannot prevail on a claim of ineffective assistance of appellate counsel.

Nonetheless, the Petitioner does raise an argument worthy of discussion. When the Florida Supreme Court conducted its analysis, it determined that Petitioner was not prejudiced based on the other evidence admitted at trial and that the Petitioner would have been convicted of first-degree murder even if the statement at issue had not been admitted. Even so, Petitioner argues that the prejudice to him exists in the admission of the statement itself because the admission

undermined his credibility when he later testified in his own defense, showed a lack of remorse, and discredited the entire defense theory. [ECF No. 1] at 157.

It is noteworthy that Petitioner elected to testify in his defense. Therefore, he ran the risk that the jury might disbelieve his testimony, in light of the other evidence, and conclude that the opposite was true. *See Atkins v. Singletary*, 965 F.2d 952, 961, n.7 (11th Cir. 1992). As his testimony was contradicted by the overwhelming weight of the evidence, he cannot show prejudice. Habeas relief is DENIED as to this claim.

## F. Claim VI: Trial Court Error in Refusing to Conduct Adequate Inquiry of Jurors and Denial of Motion for Mistrial

The Petitioner's final claim for federal habeas relief is that the trial court's refusal to question individual jurors or have a motion for mistrial granted after information was provided by a friend of the Petitioner's family, Margaret Woods-Alcide, that she overheard some of the jurors discussing extrajudicial information during the guilt phase, was clear error. [ECF No. 1] at 165, 168. The Petitioner argues that the denial of this claim on direct appeal was based on an unreasonable determination of facts, in particular, that "the testimony provided by Ms. Alcide was not sufficient to establish a mere colorable inference of extrinsic influence sufficient enough to warrant more extensive inquiry by the trial court was objectively unreasonable." *Id*. at 168. The Petitioner takes issue with certain factual findings of the court and argues that they are inapposite of the record. The Petitioner argues that the extrajudicial information discussed by certain of the jurors discredited his "constitutional right to a presumption of innocence" and "was highly destructive to his ability to present a viable defense." *Id.* at 173. The Petitioner concludes by asserting that when considering the cumulative effect of the errors made at trial by both the trial judge and counsel, it "raises grave concerns for purposes of the Eighth Amendment and the requirement of an individualized sentencing determinations [sic]." *Id*. at 176.

The State responds that the Florida Supreme Court determined that the trial court's credibility findings were supported by competent, substantial evidence. This determination, the State argues, should not be disturbed and deserves deference. [ECF No. 28] at 89. Moreover, the State argues that the record reflects that the trial court did conduct an inquiry of the jurors and they responded that they had not received any outside information regarding the trial or the Petitioner. *Id*. Further, the State asserts that the decision to conduct a hearing is discretionary and does not violate the federal constitution. *Id*. at 90.

On direct appeal, the Florida Supreme Court denied this claim:

Dealing with allegations of juror misconduct is within the discretion of the trial court. *Doyle v. State*, 460 So.2d 353, 357 (Fla.1984). Before making an inquiry, a court is to determine whether the allegations of juror misconduct constitute "matters that inhere in the verdict and are subjective in nature, or are extrinsic to the verdict and objective." *Marshall v. State*, 854 So.2d 1235, 1240 (Fla.2003). Once it is determined that the misconduct does not inhere in the verdict, the trial court may make a judicial inquiry. However, the trial court may also decide not to make an inquiry when the allegations are "frivolous or incredible." *Id*. at 1244 (quoting *State v. Brown*, 235 Conn. 502, 668 A.2d 1288, 1305 (1995)).

We hold that the trial court did not err in refusing to question the jury about Woods–Alcide's allegations. The trial court made a judicial inquiry into the alleged incident by taking testimony from Woods–Alcide. That testimony revealed that Woods–Alcide was confused about which jurors had been involved in the incident, when the incident had occurred, and why she had waited so long to come forward with these allegations. The trial court also could have concluded Woods–Alcide was not credible because the standard procedure was to prohibit the jury from mingling with the public during their breaks. The trial court continued to inquire as to whether the jurors had discussed the trial with or in the presence of third parties, or whether they had received any outside information. The jurors always responded that they had not. The trial court did not entertain any "serious doubt" as to whether juror misconduct had occurred because of the incredibility of the witness and the circumstances of the alleged incident. *See Baptist Hosp. of Miami, Inc. v. Maler*, 579 So.2d 97, 100 (Fla.1991). The trial court did not abuse its discretion in coming to this decision, because a trial court has the discretion to not make an inquiry when it concludes that misconduct allegations are not credible. *See Shere v. State*, 579 So.2d 86, 95 (Fla.1991) (trial court did not abuse its discretion in not making inquiry of jurors or granting mistrial when anonymous letter to newspaper alleged juror misconduct). Competent, substantial evidence supports this decision because

Woods–Alcide's testimony regarding the incident was neither coherent nor credible. We therefore find no error in the trial court's denial of Boyd's motion to make an inquiry of the jury.

Boyd also argues that the trial court should have granted a mistrial. A new trial may be granted following a conviction if "[n]ew and material evidence, which, if introduced at the trial would probably have changed the verdict or finding of the court, and which the defendant could not with reasonable diligence have discovered and produced at the trial, has been discovered." Fla. R.Crim. P. 3.600(a)(3). For the above-stated reasons regarding the trial court's assessment of Woods–Alcide's credibility, we hold that the trial court did not abuse its discretion in denying Boyd's motion for a mistrial.

*Boyd v. State*, 910 So. 2d 167, 178–79 (Fla. 2005).

While the Petitioner attempts to paint this claim as one of federal constitutional import, it is, in fact, a claim regarding the denial of an evidentiary hearing and a motion for mistrial by the state court. A review of the Petitioner's direct appeal shows that no reference to the federal constitutional issues raised here were made before the state court. *See* [ECF No. 31-5] at 28-36. Therefore, the claim is procedurally barred.[32] *Zeigler v. Crosby*, 345 F.3d 1300, 1308 (11th Cir. 2003) ("To present a federal constitutional claim properly in state court, 'the petitioner must make the state court aware that the claims asserted present federal constitutional issues.'") (internal citation omitted).

On direct appeal, the Petitioner argued that the trial court "should have either inquired of the jurors about the bathroom incident or granted a mistrial." He also analogizes the facts of his

---

[32] If this claim were not subject to a procedural bar, the claim would have likely failed on the merits because the denial of relief based on the credibility of a witness is the purview of the trial court. The trial court's determination is entitled to "great deference" and "must be sustained unless it is clearly erroneous," *Snyder v. Louisiana*, 552 U.S. 472, 477 (2008). On federal habeas review, AEDPA "imposes a highly deferential standard for evaluating state-court rulings" and "demands that state-court decisions be given the benefit of the doubt." *Renico v. Lett*, 130 S.Ct. 1855, 1862 (2010) (internal quotation marks omitted). The Florida Supreme Court reviewed the record and upheld the trial court's findings. The Florida Supreme Court's decision was plainly not unreasonable. *See Felkner v. Jackson*, 562 U.S. 594 (2011) (per curiam) ("The trial court's determination is entitled to 'great deference'" and 'must be sustained unless it is clearly erroneous.'").

case to cases in Florida wherein a new trial was ordered on remand due to a failure of the trial court to conduct an adequate inquiry of the jurors or due to an incorrect denial of a motion for mistrial by the trial court. In making his arguments to the Florida Supreme Court, the Petitioner cited solely to state law and referred to a federal constitutional violation in a generic and cursory fashion by simply concluding that "[a]ppellant's conviction and sentences were obtained contrary to the Due Process, Jury, and Cruel and/or Unusual Punishment Clause of the state and federal constitutions." [ECF No. 31-5] at 36. This is not sufficient to satisfy the exhaustion requirement. "It is not enough that all the facts necessary to support the federal claim were before the state courts, or that a somewhat similar state-law claim was made." *Anderson v. Harless*, 459 U.S. 4 (1982) (citations omitted). "[T]o exhaust state remedies, petitioners must do more than present 'the state courts only with the facts necessary to state a claim for relief' and must additionally articulate the constitutional theory serving as the basis for relief." *Henry v. Dep't of Corr.*, 197 F.3d 1361, 1366 (11th Cir. 1999) (quoting *Gray v. Netherland*, 518 U.S. 152 (1996)). Habeas relief is also DENIED as to this claim.

## VI.        CONCLUSION

Accordingly, after due consideration, it is

ORDERED AND ADJUDGED that Petitioner, Lucious Boyd's Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. §2254 [ECF No. 1] is DENIED. All pending motions are DENIED as moot. A Certificate of Appealability is GRANTED, in part, as to Claim A(1) (Juror Striggles). The Court finds that there is a substantial showing of a denial of a constitutional right and "jurists of reason could disagree with the district court's resolution of his constitutional claim or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further."

*Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (citation omitted).  The Clerk of the Court is instructed to CLOSE the case.

      **DONE AND ORDERED** in Chambers at Miami, Florida, this 10th day of July, 2019.

                                                  DARRIN P. GAYLES
                                                UNITED STATES DISTRICT JUDGE

Copies provided to:
All counsel of record